## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

TROY STACY ENTERPRISES INC.,
individually and on behalf of all others
similarly situated,

                    Plaintiff,

      v.

THE CINCINNATI INSURANCE
COMPANY,

                  Defendant.

Judge: _____

Civil Action No. _____

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Troy Stacy Enterprises Inc. (d/b/a Craft & Vinyl) ("Craft & Vinyl"), individually and on behalf of the other members of the below-defined nationwide classes (collectively, the "Class"), brings this class action against Defendant The Cincinnati Insurance Company ("Cincinnati"), and in support thereof states the following:

### I.     NATURE OF THE ACTION

1.     Plaintiff owns and operates Craft & Vinyl, located in Columbus, Ohio. One of Columbus's most unique destinations, Craft & Vinyl is a craft beer pub, vinyl record shop, and live music venue, all under one roof. Craft & Vinyl's existence, however, is now threatened by SARS-CoV-2, sometimes called "Coronavirus" or by one of the names of the disease that it causes and that spreads it "COVID-19." For ease of reference, SARS-CoV-2 will be referred to as COVID-19 herein.

2.     To protect its businesses in the event that it suddenly had to suspend operations for reasons outside of its control, or if it had to act in order to prevent further property damage, Plaintiff

purchased insurance coverage from Cincinnati, including property coverage, as set forth in Cincinnati's Building and Personal Property Coverage Form (Form No. FM 101 05 16) ("Special Property Coverage Form").

3.      Cincinnati's Special Property Coverage Form provides "Business Income" coverage, which promises to pay for loss due to the necessary suspension of operations following loss to property.

4.      Cincinnati's Special Property Coverage Form also provides "Civil Authority" coverage, which promises to pay for loss caused by the action of a civil authority that prohibits access to the insured premises because of damage at other property.

5.      Cincinnati's Special Property Coverage Form also provides "Extra Expense" coverage, which promises to pay the expense incurred to minimize the suspension of business and to continue operations.

6.      Cincinnati's Special Property Coverage Form, under a section entitled "Duties in the Event of Loss or Damage" mandates that Cincinnati's insureds "must see that the following are done in order for coverage to apply. . . [t]ake all reasonable steps to protect the Covered Property from further damage . . . . [and] [k]eep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim."  This is commonly referred to as "Sue and Labor" coverage.

7.      Unlike many policies that provide Business Income coverage (also referred to as "business interruption" coverage), Cincinnati's Special Property Coverage Form does not include, and is not subject to, any exclusion for losses caused by the viruses.

8.      Plaintiff was forced to suspend or reduce business at Craft & Vinyl due to COVID-19 and the resultant closure orders issued by civil authorities in Ohio.

9.      Upon information and belief, Cincinnati has, on a widescale and uniform basis, refused to pay its insureds under its Business Income, Civil Authority, Extra Expense, and Sue and Labor coverages for losses suffered due to COVID-19, any orders by civil authorities that have required the necessary suspension of business, and any efforts to prevent further property damage or to minimize the suspension of business and continue operations. Indeed, Cincinnati has denied Plaintiff's claim under its Cincinnati policy.

## II.      JURISDICTION AND VENUE

10.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Defendant and at least one member of the Class are citizens of different states and because: (a) the Class consists of at least 100 members; (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (c) no relevant exceptions apply to this claim.

11.      Venue is proper in this District under 28 U.S.C. § 1391, because Defendant resides in this District and a substantial portion of the acts and conduct giving rise to the claims occurred within the District.

## III.      THE PARTIES

*Plaintiff*

*12.*      Plaintiff Craft & Vinyl is an Ohio corporation, with its principal place of business in Columbus, Ohio.

*Defendant*

13.      Defendant Cincinnati is an insurance company organized under the laws of Ohio, with its principal place of business in Fairfield, Ohio. It is authorized to write, sell, and issue insurance policies providing property and business income coverage in Ohio. At all times material hereto, Cincinnati conducted and transacted business through the selling and issuing of insurance

policies within Ohio, including, but not limited to, selling and issuing property coverage to Plaintiff.

## IV.    FACTUAL BACKGROUND

### A.    *The Special Property Coverage Form*

14.    In return for the payment of a premium, Cincinnati issued Policy No. EPP 049 46 35 to Plaintiff for a policy period of June 26, 2018 to June 26, 2021, including a Businessowners Special Property Coverage Form.  Policy No. EPP 049 46 35 is attached hereto as Exhibit A. Plaintiff has performed all of its obligations under Policy No. EPP 049 46 35, including the payment of premiums.  The Covered Property, with respect to the Special Property Coverage Form, is Craft & Vinyl at 1806 West Fifth Avenue, Columbus, Ohio  43212.

15.    In many parts of the world, property insurance is sold on a specific peril basis.  Such policies cover a risk of loss if that risk of loss is specifically listed (e.g., hurricane, earthquake, H1N1, etc.).  Most property policies sold in the United States, however, including those sold by Cincinnati, are all-risk property damage policies.  These types of policies cover all risks of loss except for risks that are expressly and specifically excluded.  In the Special Property Coverage Form provided to Plaintiff, under the heading "Covered Causes of Loss," Cincinnati agreed to pay for direct loss to Covered Property "unless the loss is excluded or limited" by the policy.

16.    In the policy, Cincinnati did not exclude or limit coverage for losses from the spread of viruses.

17.    Losses due to COVID-19 are a Covered Cause of Loss under Cincinnati policies with the Special Property Coverage Form.

18.    In the Special Property Coverage Form, Cincinnati agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration" caused by direct physical loss or damage.  A "slowdown or cessation"

of business activities at the Covered Property is a "suspension" under the policy, for which Cincinnati agreed to pay for loss of Business Income during the "period of restoration" that begins at the time of loss.

19.     "Business Income" means net income (or loss) before tax that Plaintiff and the other Class members would have earned or incurred, as well as continuing normal operating expenses incurred.

20.     The presence of virus or disease can constitute physical damage to property, as the insurance industry has recognized since at least 2006.  When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm, ISO, circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property.  When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses.  Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

21.     In the Special Property Coverage Form, Cincinnati also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct loss to the Covered Property.

22.     "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

23.     Cincinnati also agreed to "pay for the actual loss of Business Income" that Plaintiff sustains and necessary Extra Expense "caused by action of civil authority that prohibits access to"

the Covered Property when a Covered Cause of Loss causes damage to property other than the Covered Property, the civil authority prohibits access to property immediately surrounding the damaged property, the Covered Property is within the prohibited area, and the civil authority action is taken "in response to dangerous physical conditions."

24.     Cincinnati's Special Property Coverage Form, under a section entitled "Duties in the Event of Loss or Damage" mandates that Cincinnati's insureds "must see that the following are done in order for coverage to apply. . . [t]ake all reasonable steps to protect the Covered Property from further damage . . . . [and] [k]eep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim."  This is commonly referred to as "Sue and Labor" coverage.

25.     Losses caused by COVID-19 and the related orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, Civil Authority, and Sue and Labor provisions of the Cincinnati policy.

**B.     *The Covered Cause of Loss***

26.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's business (the "Closure Orders").

27.     On March 15, 2020, the State of Ohio issued a civil authority order requiring the closure of bars in Ohio and banning dine-in eating in Ohio.  This order has been in effect since March 15, 2020.

28.     On March 22, 2020, the State of Ohio issued a civil authority order requiring the closure of non-essential businesses, which includes pubs, record stores, and live music venues. This order has been in effect since March 22, 2020.

6

29.     The Ohio Closure Orders were issued in response to the rapid spread of COVID-19 throughout Ohio.

30.     The presence of COVID-19 caused direct physical loss of or damage to the covered property under the Plaintiff's policies, and the policies of the other Class members, by denying use of and damaging the covered property, and by causing a necessary suspension of operations during a period of restoration.

31.     The Closure Orders, including the issuance of the Ohio Closure Orders, prohibited access to Plaintiff's and the other Class members' Covered Property, and the area immediately surrounding Covered Property, in response to dangerous physical conditions resulting from a Covered Cause of Loss.

32.     As a result of the presence of COVID-19 and the Closure Orders, Plaintiff and the other Class members lost Business Income and incurred Extra Expense.

33.     Craft & Vinyl submitted a claim for loss to Cincinnati under its policy due to the presence of COVID-19 and the Closure Orders, and Cincinnati denied that claim.

## V.     CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.

35.     Plaintiff seeks to represent nationwide classes defined as:

- All persons and entities that: (a) had Business Income coverage under a property insurance policy issued by Cincinnati; (b) suffered a suspension of business related to COVID-19, at the premises covered by their Cincinnati property insurance policy; (c) made a claim under their property insurance policy issued by Cincinnati; and (d) were denied Business Income coverage by Cincinnati for the suspension of business resulting from the presence or threat of COVID-19 (the "Business Income Breach Class").

- All persons and entities that: (a) had Civil Authority coverage under a property insurance policy issued by Cincinnati; (b) suffered loss of Business Income and/or Extra Expense caused by action of a civil authority; (c) made a claim under their property insurance policy issued by Cincinnati; and (d) were denied Civil Authority coverage by Cincinnati for the loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Breach Class").

- All persons and entities that: (a) had Extra Expense coverage under a property insurance policy issued by Cincinnati; (b) sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Cincinnati property insurance policy; (c) made a claim under their property insurance policy issued by Cincinnati; and (d) were denied Extra Expense coverage by Cincinnati despite their efforts to minimize the suspension of business caused by COVID-19 (the "Extra Expense Breach Class").

- All persons and entities that: (a) had a Sue and Labor provision under a property insurance policy issued by Cincinnati; (b) sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their Cincinnati property insurance policy; (c) made a claim under their property insurance policy issued by Cincinnati; and (d) were denied Sue and Labor coverage by Cincinnati in connection with the suspension of business caused by COVID-19 (the "Sue and Labor Breach Class").

- All persons and entities with Business Income coverage under a property insurance policy issued by Cincinnati that suffered a suspension of business due to COVID-19 at the premises covered by the business income coverage (the "Business Income Declaratory Judgment Class").

- All persons and entities with Civil Authority coverage under a property insurance policy issued by Cincinnati that suffered loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

- All persons and entities with Extra Expense coverage under a property insurance policy issued by Cincinnati that sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Cincinnati property insurance policy (the "Extra Expense Declaratory Judgment Class").

- All persons and entities with a Sue and Labor provision under a property insurance policy issued by Cincinnati that sought to prevent property damage caused by COVID-19 by suspending or

reducing business operations, at the premises covered by their Cincinnati property insurance policy (the "Sue and Labor Declaratory Judgment Class").

36.     Excluded from each defined Class is Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members.  Plaintiff reserves the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

37.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

38.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).**  The members of each defined Class are so numerous that individual joinder of all Class members is impracticable.  While Plaintiff is informed and believes that there are thousands of members of each Class, the precise number of Class members is unknown to Plaintiff but may be ascertained from Defendant's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

39.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

    a.  Cincinnati issued all-risk policies to the members of the Class in exchange for payment of premiums by the Class members;

    b.  whether the Class suffered a covered loss based on the common policies issued to members of the Class;

    c.  whether Cincinnati wrongfully denied all claims based on COVID-19;

    d.   whether Cincinnati's Business Income coverage applies to a suspension of business caused by COVID-19;

    e.   whether Cincinnati's Civil Authority coverage applies to a loss of Business Income caused by the orders of state governors requiring the suspension of business as a result of COVID-19;

    f.   whether Cincinnati's Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

    g.   whether Cincinnati's Sue and Labor provision applies to require Cincinnati to pay for efforts to reduce damage caused by COVID-19;

    h.   whether Cincinnati has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to COVID-19 and the related closures; and

    i.   whether Plaintiff and the Class are entitled to an award of reasonable attorney fees, interest and costs.

40.    **Typicality—Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members are all similarly affected by Defendant's refusal to pay under its Business Income, Civil Authority, Extra Expense, and Sue and Labor coverages.  Plaintiff's claims are based upon the same legal theories as those of the other Class members.  Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

41.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because its interests do not conflict with the interests of the other Class members who it seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases

similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiff intends to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiff and their counsel.

42.     **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).** Plaintiff seeks class-wide adjudication as to the interpretation, and resultant scope, of Defendant's Business Income, Civil Authority, Extra Expense, and Sue and Labor coverages. The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant. Moreover, the adjudications sought by Plaintiff could, as a practical matter, substantially impair or impede the ability of other Class members, who are not parties to this action, to protect their interests.

43.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendant acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members.

44.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.     CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT -- BUSINESS INCOME COVERAGE
**(Claim Brought on Behalf of the Business Income Breach Class)**

45.     Plaintiff Craft & Vinyl ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-44 as if fully set forth herein.

46.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Breach Class.

47.     Plaintiff's Cincinnati policy, as well as those of the other Business Income Breach Class members, are contracts under which Cincinnati was paid premiums in exchange for its promise to pay Plaintiff's and the other Business Income Breach Class members' losses for claims covered by the policy.

48.     In the Special Property Coverage Form, Cincinnati agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

49.     A "slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Cincinnati agreed to pay for loss of Business Income during the "period of restoration" that begins at the time of loss.

50.     "Business Income" means net income (or loss) before tax that Plaintiff and the other Class members would have earned or incurred, as well as continuing normal operating expenses incurred.

51.     COVID-19 caused direct loss to Plaintiff's and the other Business Income Breach Class members' Covered Properties, requiring suspension of operations at the Covered Properties. Losses caused by COVID-19 thus triggered the Business Income provision of Plaintiff's and the other Business Income Breach Class members' Cincinnati policies.

52.     Plaintiff and the other Business Income Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Cincinnati or Cincinnati is estopped from asserting them, and yet Cincinnati has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

53.     By denying coverage for any Business Income losses incurred by Plaintiff and the other Business Income Breach Class members in connection with the COVID-19 pandemic, Cincinnati has breached its coverage obligations under the policies.

54.     As a result of Cincinnati's breaches of the policies, Plaintiff and the other Business Income Breach Class members have sustained substantial damages for which Cincinnati is liable, in an amount to be established at trial.

**COUNT II**
**BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Breach Class)**

55.     Plaintiff Craft & Vinyl ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-44 as if fully set forth herein.

56.     Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Breach Class.

57.     Plaintiff's Cincinnati insurance policy, as well as those of the other Civil Authority Breach Class members, are contracts under which Cincinnati was paid premiums in exchange for its promise to pay Plaintiff's and the other Civil Authority Breach Class members' losses for claims covered by the policy.

58.     Cincinnati agreed to "pay for the actual loss of Business Income" that Plaintiff sustains "and any Extra Expense caused by action of civil authority that prohibits access to" the Covered Property when a Covered Cause of Loss causes damage to property other than Covered Property, the civil authority prohibits access to property immediately surrounding the damaged

13

property, the Covered Property is within the prohibited area, and the civil authority action is taken "in response to dangerous physical conditions."

59.     The Closure Orders triggered the Civil Authority provision under Plaintiff's and the other members of the Civil Authority Breach Class's Cincinnati insurance policies.

60.     Plaintiff and the other members of the Civil Authority Breach Class have complied with all applicable provisions of the policies and/or those provisions have been waived by Cincinnati or Cincinnati is estopped from asserting them, and yet Cincinnati has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

61.     By denying coverage for any business losses incurred by Plaintiff and other members of the Civil Authority Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Cincinnati has breached its coverage obligations under the policies.

62.     As a result of Cincinnati's breaches of the policies, Plaintiff and the other members of the Civil Authority Breach Class have sustained substantial damages for which Cincinnati is liable, in an amount to be established at trial.

**COUNT III**
**BREACH OF CONTRACT – EXTRA EXPENSE COVERAGE**
**(Claim Brought on Behalf of the Extra Expense Breach Class)**

63.     Plaintiff Craft & Vinyl ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-44 as if fully set forth herein.

64.     Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Breach Class.

65.     Plaintiff's Cincinnati insurance policy, as well as those of the other Extra Expense Breach Class members, are contracts under which Cincinnati insurance was paid premiums in exchange for its promise to pay Plaintiff's and the other Extra Expense Breach Class members' losses for claims covered by the policy.

14

66.     In the Special Property Coverage Form, Cincinnati also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the Covered Property.

67.     "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

68.     Due to COVID-19 and the Closure Orders, Plaintiff and the other members of the Extra Expense Breach Class incurred Extra Expense at Covered Property

69.     Plaintiff and the other members of the Extra Expense Breach Class have complied with all applicable provisions of the policies and/or those provisions have been waived by Cincinnati or Cincinnati is estopped from asserting them, and yet Cincinnati has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

70.     By denying coverage for any business losses incurred by Plaintiff and the other members of the Extra Expense Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Cincinnati has breached its coverage obligations under the policies.

71.     As a result of Cincinnati's breaches of the policies, Plaintiff and the other members of the Extra Expense Breach Class have sustained substantial damages for which Cincinnati is liable, in an amount to be established at trial.

**COUNT IV**
**BREACH OF CONTRACT – SUE AND LABOR COVERAGE**
**(Claim Brought on Behalf of the Sue and Labor Breach Class)**

72.     Plaintiff Craft & Vinyl ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-44 as if fully set forth herein.

73.     Plaintiff brings this Count individually and on behalf of the other members of the Sue and Labor Breach Class.

74.     Plaintiff's Cincinnati policy, as well as those of the other Sue and Labor Breach Class members, are contracts under which Cincinnati was paid premiums in exchange for its promise to pay Plaintiff's and the other Sue and Labor Breach Class members' losses for claims covered by the policy.

75.     In the Special Property Coverage Form, Cincinnati agreed to give due consideration in settlement of a claim to expenses incurred in taking all reasonable steps to protect Covered Property from further damage.

76.     In complying with the Closure Orders and otherwise suspending or limiting operations, Plaintiff and other members of the Sue and Labor Breach Class incurred expenses in connection with reasonable steps to protect Covered Property.

77.     Plaintiff and the other members of the Sue and Labor Breach Class have complied with all applicable provisions of the policy and/or those provisions have been waived by Cincinnati or Cincinnati is estopped from asserting them, and yet Cincinnati has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

78.     By denying coverage for any Sue and Labor expenses incurred by Plaintiff and the other members of the Sue and Labor Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Cincinnati has breached its coverage obligations under the policies.

79.     As a result of Cincinnati's breaches of the policies, Plaintiff and the other members of the Sue and Labor Breach Class have sustained substantial damages for which Cincinnati is liable, in an amount to be established at trial.

**COUNT V**
**DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE**
**(Claim Brought on Behalf of the Business Income Declaratory Judgment Class)**

80.     Plaintiff Craft & Vinyl ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-44 as if fully set forth herein.

81.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Declaratory Judgment Class.

82.     Plaintiff's Cincinnati policy, as well as those of the other Business Income Declaratory Judgment Class members, are contracts under which Cincinnati was paid premiums in exchange for its promise to pay Plaintiff's and the other Business Income Declaratory Judgment Class members' losses for claims covered by the policy.

83.     Plaintiff and the other Business Income Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Cincinnati or Cincinnati is estopped from asserting them, and yet Cincinnati has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Business Income Declaratory Judgment Class members are entitled.

84.     Cincinnati has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

85.     An actual case or controversy exists regarding Plaintiff's and the other Business Income Declaratory Judgment Class members' rights and Cincinnati's obligations under the policies to reimburse Plaintiff for the full amount of Business Income losses incurred by Plaintiff and the other Business Income Declaratory Judgment Class members in connection with the suspension of their businesses stemming from the COVID-19 pandemic.

86.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Business Income Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

      i.    Plaintiff's and the other Business Income Declaratory Judgment Class members' Business Income losses incurred in connection with the Closure Orders and the

necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

ii.    Cincinnati is obligated to pay Plaintiff and the other Business Income Declaratory Judgment Class members for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT VI**
**DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)**

87.    Plaintiff Craft & Vinyl ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-44 as if fully set forth herein.

88.    Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

89.    Plaintiff's Cincinnati insurance policy, as well as those of the other Civil Authority Declaratory Judgment Class members, are contracts under which Cincinnati was paid premiums in exchange for its promise to pay Plaintiff's and the other Civil Authority Declaratory Judgment Class members' losses for claims covered by the policy.

90.    Plaintiff and the other Civil Authority Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Cincinnati or Cincinnati is estopped from asserting them, and yet Cincinnati has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class members are entitled.

18

91.    Cincinnati has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

92.    An actual case or controversy exists regarding Plaintiff's and the other Civil Authority Declaratory Judgment Class members' rights and Cincinnati's obligations under the policies to reimburse Plaintiff and the other Civil Authority Declaratory Judgment Class members for the full amount of covered Civil Authority losses incurred by Plaintiff and the other Civil Authority Declaratory Judgment Class members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

93.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Civil Authority Declaratory Judgment Class members seek a declaratory judgment from this

Court declaring the following:

i.     Plaintiff's and the other Civil Authority Declaratory Judgment Class members' Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

ii.    Cincinnati is obligated to pay Plaintiff and the other Civil Authority Declaratory Judgment Class members the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT VII**
**DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE**
**(Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)**

94.     Plaintiff Craft & Vinyl ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-44 as if fully set forth herein.

95.     Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

96.     Plaintiff's Cincinnati insurance policy, as well as those of the other Extra Expense Declaratory Judgment Class members, are contracts under which Cincinnati was paid premiums in exchange for its promise to pay Plaintiff's and the other Extra Expense Declaratory Judgment Class members' losses for claims covered by the policy.

97.     Plaintiff and the other Extra Expense Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Cincinnati or Cincinnati is estopped from asserting them, and yet Cincinnati has abrogated its insurance coverage obligations pursuant to the policies clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class members are entitled.

98.     Cincinnati has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

99.     An actual case or controversy exists regarding Plaintiff's and the other Extra Expense Declaratory Judgment Class members' rights and Cincinnati's obligations under the policies to reimburse Plaintiff and the other Extra Expense Declaratory Judgment Class members

20

for the full amount of Extra Expense losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

100.   Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

i.   Plaintiff's and the other Extra Expense Declaratory Judgment Class members' Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

ii.   Cincinnati is obligated to pay Plaintiff and the other Extra Expense Declaratory Judgment Class members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT VIII**
**DECLARATORY JUDGMENT – SUE AND LABOR COVERAGE**
**(Claim Brought on Behalf of the Sue and Labor Declaratory Judgment Class)**

101.   Plaintiff Craft & Vinyl ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-44 as if fully set forth herein.

102.   Plaintiff brings this Count individually and on behalf of the other members of the Sue and Labor Declaratory Judgment Class.

103.   Plaintiff's Cincinnati insurance policy, as well as those of the other Sue and Labor Declaratory Judgment Class members, are contracts under which Cincinnati was paid premiums in exchange for its promise to pay Plaintiff's and the other Sue and Labor Declaratory Judgment Class members' reasonably incurred expenses to protect Covered Property.

104.    Plaintiff and the other Sue and Labor Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Cincinnati or Cincinnati is estopped from asserting them, and yet Cincinnati has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

105.    Cincinnati has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

106.    An actual case or controversy exists regarding Plaintiff's and the other Sue and Labor Declaratory Judgment Class members' rights and Cincinnati's obligations under the policies to reimburse Plaintiff and the other Sue and Labor Declaratory Judgment Class members for the full amount Plaintiff and the other members of the Sue and Labor Declaratory Judgment Class reasonably incurred to protect Covered Property from further damage by COVID-19.

107.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Sue and Labor Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

   i.    Plaintiff's and the other Sue and Labor Declaratory Judgment Class members' reasonably incurred expenses to protect Covered Property from further damage by COVID-19 are insured losses under their policies; and

   ii.    Cincinnati is obligated to pay Plaintiff and the other Sue and Labor Declaratory Judgment Class members for the full amount of the expenses they reasonably incurred to protect Covered Property from further damage by COVID-19.

## VII.    <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

a.        Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

b.        Entering judgment on Counts I-IV in favor of Plaintiff Craft & Vinyl and the members of the Business Income Breach Class, the Civil Authority Breach Class, the Extra Expense Breach Class, and the Sue and Labor Breach Class; and awarding damages for breach of contract in an amount to be determined at trial;

c.        Entering declaratory judgments on Counts V-VIII in favor of Plaintiff and the members of the Business Income Declaratory Judgment Class, the Civil Authority Declaratory Judgment Class, the Extra Expense Declaratory Judgment Class, and the Sue and Labor Declaratory Judgment Class as follows:

i.        Business Income, Civil Authority, Extra Expense, and Sue and Labor losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

ii.       Cincinnati is obligated to pay for the full amount of the Business Income, Civil Authority, Extra Expense, and Sue and Labor losses incurred and to be incurred related to COVID-19, the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic;

      d.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

      e.      Ordering Defendant to pay attorneys' fees and costs of suit; and

      f.      Ordering such other and further relief as may be just and proper.

## VIII.   **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated:  April 19, 2020             Respectfully submitted,

                                 */s/ Kenneth P. Abbarno*
                                 Kenneth P. Abbarno
                                 Mark A. DiCello
                                 Mark Abramowitz
                                 **DICELLO LEVITT GUTZLER LLC**
                                 7556 Mentor Avenue
                                 Mentor, Ohio  44060
                                 Telephone:  440-953-88
                                 kabbarno@dicellolevitt.com
                                 madicello@dicellolevitt.com
                                 mabramowitz@dicellolevitt.com

                                 Adam J. Levitt*
                                 Amy E. Keller*
                                 Daniel R. Ferri*
                                 Mark Hamill*
                                 Laura E. Reasons*
                                 **DICELLO LEVITT GUTZLER LLC**
                                 Ten North Dearborn Street, Sixth Floor
                                 Chicago, Illinois  60602
                                 Telephone:  312-214-7900
                                 alevitt@dicellolevitt.com
                                 akeller@dicellolevitt.com
                                 dferri@dicellolevitt.com
                                 mhamill@dicellolevitt.com
                                 lreasons@dicellolevitt.com

                                 Mark Lanier*
                                 Alex Brown*
                                 Skip McBride*
                                 **THE LANIER LAW FIRM PC**
                                 10940 West Sam Houston Parkway North
                                 Suite 100

Houston, Texas  77064
Telephone:  713-659-5200
WML@lanierlawfirm.com
alex.brown@lanierlawfirm.com
skip.mcbride@lanierlawfirm.com

Timothy W. Burns*
Jeff J. Bowen*
Jesse J. Bair*
Freya K. Bowen*
**BURNS BOWEN BAIR LLP**
One South Pinckney Street, Suite 930
Madison, Wisconsin 53703
Telephone: 608-286-2302
tburns@bbblawllp.com
jbowen@bbblawllp.com
jbair@bbblawllp.com
fbowen@bbblawllp.com

Douglas Daniels*
**DANIELS & TREDENNICK**
6363 Woodway, Suite 700
Houston, Texas  77057
Telephone:  713-917-0024
douglas.daniels@dtlawyers.com

*Counsel for Plaintiff
and the Proposed Classes*

*Applications for admission *pro hac vice* to be filed