# EXHIBIT A

# e-CLAS Banner Page

## Environment: PRODUCTION

**Policy Number:**  EPP 049 46 35

**Effective Date:**  06-26-2018

**Named Insured:**  TROY STACY ENTERPRISES INC. DBA CRAFT-N-VINYL

```
34-272

ASSOCIATED INSURANCE
AGENCIES, INC.
63 COMMERCE PARK DR
WESTERVILLE, OH 43082-8348
```

**Thank you for placing this coverage with The Cincinnati Insurance Companies!**

# Commission Schedule

**Policy Number:**     EPP 049 46 35                    **Effective Date:** 06-26-2018

**Named Insured:**

TROY STACY ENTERPRISES INC. DBA CRAFT-N-VINYL

| Premium | Commission |
| --- | --- |
| 1,458 ANNUAL/INST | 20% |
| CYBER RISK 143 ANNUAL | 15% |

**IA 4991 06 17**



**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

**Policy Number:** EPP 049 46 35

**Effective Date:** 06-26-2018

**Named Insured:** TROY STACY ENTERPRISES INC. DBA CRAFT-N-VINYL

For professional advice and policy questions or changes, please contact your local independent agency:

ASSOCIATED INSURANCE AGENCIES, INC.
63 COMMERCE PARK DR
WESTERVILLE, OH 43082-8348

614-882-2335

Dear Policyholder:

**Thank you**
Thank you for trusting The Cincinnati Insurance Companies with your commercial insurance coverage. We recognize that locally based independent agents have the working knowledge to help you choose the right insurance company for your needs. Together with your local independent insurance agency, we are committed to providing you with the highest level of service.

Please review your enclosed policy information to verify your coverage details, as well as deductibles and coverage amounts. Should your needs change, your agent is available to review and update your policy.

**Please promptly report claims**
If you experience a policy-related loss, you may report it by contacting your local professional independent agency representing The Cincinnati Insurance Companies or by directly calling us toll-free at **877-242-2544** and providing your policy number and claim-related information.

Sincerely,

Steve Spray
Senior Vice President - Commercial Lines

**IA 4443 04 14**



THE CINCINNATI
INSURANCE COMPANIES

The Cincinnati Insurance Company ■ The Cincinnati Indemnity Company
The Cincinnati Casualty Company

Today's Date:   07-12-2018

To:  TROY STACY ENTERPRISES INC. DBA CRAFT-N-VINYL

Policy Number:   EPP 049 46 35
Expiration Date: 06-26-2021
Agency:          ASSOCIATED INSURANCE AGENCIES, INC. 34-272

**Data breach and identity recovery support and resources included with your insurance policy**

Dear Policyholder:

Your policy includes Cincinnati Data Defender™ coverage for an additional premium, helping to safeguard your business against the rising costs of a data breach and offering services to assist you in the event of identity theft. Please save this information so you can access all the tools and resources that come with your cyber protection coverage. Refer to Cincinnati Data Defender Coverage Form, HC102, for a complete statement of coverages, exclusions and limits of insurance.

## Policyholder tools and resources

*Data breach portal* - You gain access to *www.eriskhub.com/cic*, a website that provides you with the comprehensive, on-demand resources you need to:
* Prepare in advance:
    - Access online resources when you need them
    - Create your breach response plan from the template
    - Learn about breach laws that apply to your business
* Review risk management resources:
    - Use the compliance reference guide and notification letter examples
    - Locate credit bureau and government agency notification information
    - Learn how to contact data risk management experts for more help
* Manage your breach response:
    - Call the help line for breach information and assistance
    - Arrange assistance with notification letters
    - Access public relations resources to help you respond to the media

The first time you visit this website, please complete new user registration using this information:

**Access code = 12116-868**

*Identity theft services* – You also receive case management services and reimbursement for covered expenses if you, as a business owner, become the victim of identity theft or account takeover. If you suspect that you may be an identity theft victim or you have questions, please call our Identity Recovery Help Line, 866-219-9831.

**IA4463 (01/16)**

Page 2 of 2

**Claims services**

If you suspect or know that a data breach may have exposed or compromised your organization's private, customer or personal data, a swift response is critical for your protection. Please note that the Web portal and help line provide advice and information, and using them does not satisfy any notice of claim requirement. The only way to report a claim is to contact your independent agent or call us directly, 877-242-2544. Your agent and Cincinnati Insurance will work with you to preserve your company's goodwill, prevent regulatory sanctions or fines, avoid civil litigation and safeguard your business reputation.

Please contact your agent representing Cincinnati with questions about this valuable coverage.

Thank you for trusting your agent and Cincinnati to protect your business.

Sincerely,

COMMERCIAL LINES DEPARTMENT

Commercial Lines

**IA4463 (01/16)**

# NOTICE TO POLICYHOLDERS
# DIRECT BILL ACCOUNT CREDIT PROCEDURE

This is a notice of how an account credit will be applied to your policy or to all of the policies being billed as single account.

**Account Credits**

**A.** If your account is comprised of **a single policy** and an endorsement or premium audit results in a credit (return premium), the credit is applied to that policy. If your account does not have a future installment due at the time the endorsement or audit is processed, the credit is refunded to the payor listed for your account. If you do not wish for credits to be automatically applied to future unpaid installments, please contact us to request a refund. Please note that the amount of the refund may vary based upon the date you contact us and your billing schedule.

**B.** If your account is comprised of **more than one policy** and an endorsement or premium audit results in a credit (return premium), the credit is applied in the following manner:

- Payments previously applied to your account are deferred.

- The credit that results from the endorsement or audit is applied to the policy generating the credit.

- The payments that were deferred are then reapplied to the account in order to satisfy the amount due.

- Any excess payment that results from the credit is applied proportionately to your policies with a future payment or installment due.

- If you do not wish for credits to be automatically applied to future unpaid installments, please contact us to request a refund. Please note that the amount of the refund may vary based upon the date you contact us and your billing schedule.

- If your account does not have a future installment or payment due at the time the endorsement or audit is processed, the credit is refunded to the payor listed for your account.

(Does not apply to audit return premium for payors located in New York; Does not apply to premiums due more than 30 days from the date of processing for payors located in New Hampshire. These credits are automatically refunded to the payor)

To request a refund, contact us at:

| Mailing Address | Toll free phone number | Electronic mail |
|---|---|---|
| The Cincinnati Insurance Company<br>PO Box 14529<br>Cincinnati, OH 45250-0529 | 877-942-2455 | CinciBill@cinfin.com |

**IA 4407 03 13**

# DISCLOSURE OF DIRECT BILL FEES AND CHARGES

NO COVERAGE IS PROVIDED BY THIS DISCLOSURE, nor can it be construed to replace any provision of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE CAREFULLY for complete information on the coverages provided.

Your insurance premium is being paid directly to us rather than to your insurance agency. We appreciate your prompt payment of the premium. Please note that these fees apply only in the event your payment is late, is returned to us for insufficient funds, or if your policy was previously canceled for nonpayment of premium and has been reinstated at either your or your agents request. We are not required to reinstate a policy once cancellation for nonpayment of premium has become effective. The decision to reinstate coverage is solely at the discretion of the company.

Not all fees are applicable in all states. The types of fees are listed below. Following the description of each fee, we list the states where the fee applies and the amount of the fee. Fees are not levied in KY, MD, MT and NC.

**Non-Sufficient Funds (NSF) Charge:** The first time a premium payment is returned due to Non-Sufficient Funds (NSF), the premium due is the installment amount. For each succeeding return of payment while continuously insured with The Cincinnati Insurance Companies, a charge is added to your next account statement. The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, FL, NJ, RI, and SC;

$15 MA;

$20 NY; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA, WI, WV and WY.

**Reinstatement Charge:** The first time your account is reinstated for nonpayment of premium, the premium due is the installment amount. For each succeeding reinstatement due to nonpayment of premium while continuously insured with The Cincinnati Insurance Companies, a charge is added to your next account statement. The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, RI, and SC;

$15 MA;

$20 NY; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA and WY.

**Late Charge:** A charge is added to your next account statement each time your payment is received and processed after the due date as shown on the account statement. This fee will not apply to Electronic Funds Transfer (EFT). The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, FL, RI, and SC;

$15 MA; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA, WI and WY.

**IA 4421 03 13**



# The Cincinnati Insurance Company
A Stock Insurance Company

**Headquarters**: 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address**: P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# COMMON POLICY DECLARATIONS

Billing Method: **DIRECT BILL**

| POLICY NUMBER | EPP 049 46 35 |
| --- | --- |

**NAMED INSURED** TROY STACY ENTERPRISES INC. DBA CRAFT-N-VINYL
1810 LYNNHAVEN DR
**ADDRESS** COLUMBUS, OH 43221-1412
(Number & Street,
Town, County,
State & Zip Code)

**Previous Policy Number:**
NEW

**Policy Period:** At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
Policy number: **EPP 049 46 35**   FROM: **06-26-2018**   TO: **06-26-2021**

**Automobile and / or Garage**
Policy number:   FROM:   TO:

Agency   ASSOCIATED INSURANCE AGENCIES, INC. 34-272
City   WESTERVILLE, OH

**Legal Entity / Business Description**

ORGANIZATION (ANY OTHER)

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:

| | | |
| --- | --- | --- |
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4121OH | 01/16 | OHIO CHANGES - CANCELLATION AND NONRENEWAL |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IL0021 | 11/85 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| FM502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GA532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| GA539 | 07/08 | LIQUOR LIABILITY COVERAGE PART DECLARATIONS |
| HC502 | 01/18 | CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS |

07-12-2018 17:58

Countersigned _____   By _____
(Date)   (Authorized Representative)

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections and Surveys**

**1.** We have the right to:

**a.** Make inspections and surveys at any time;

**b.** Give you reports on the conditions we find; and

**c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**a.** Are safe or healthful; or

**b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums we pay.

**F. Transfer of Your Rights and Duties Under this Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

# SUMMARY OF PREMIUMS CHARGED

Attached to and forming part of
POLICY NUMBER: **EPP 049 46 35**                          Effective Date: **06-26-2018**

Named Insured: **TROY STACY ENTERPRISES INC. DBA CRAFT-N-VINYL**

## THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | |
|---|---|
| Commercial Property Coverage Part | $ 579 |
| Commercial General Liability Coverage Part | $ 500 |
| Commercial Auto Coverage Part | $ |
| Commercial Umbrella / Excess Liability Coverage Part | $ |
| **DATA DEFENDER COVERAGE PART** | $ 143 |
| **LIQUOR LIABILITY** | $ 354 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| Terrorism Coverage | $ 25 |
| Installment Charge | $ |
| **ANNUAL TOTAL** | $ 1,601 |

**PAYMENTS**

| | First Installment | Remaining Installment(s) |
|---|---|---|
| **MONTHLY** | * | * |

**\*SEE BILLING STATEMENT MAILED SEPARATELY**

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

IA 102 A 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SCHEDULE OF LOCATIONS

| LOC. | STREET ADDRESS | CITY | STATE | ZIP CODE |
|------|----------------|------|-------|----------|
| 1 | 1806 W 5TH AVE | | | |
| | COLUMBUS, OH 43212-2321 | | | |

IA 904 04 04

# POLICYHOLDER NOTICE
# TERRORISM INSURANCE COVERAGE

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

Your policy may contain coverage for certain losses caused by terrorism.

**<u>Premium:</u>**

In accordance with the federal Terrorism Risk Insurance Act, we are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act.

- Refer to the SUMMARY OF PREMIUMS CHARGED or DECLARATIONS PAGE for the portion of your premium that is attributable to coverage for terrorist acts certified under the Act.

**<u>Federal Participation:</u>**

The Act also requires us to provide disclosure of federal participation in payment of terrorism losses.

- Under your policy, any losses caused by certified acts of terrorism would be partially reimbursed by the United States Government, Department of Treasury, under a formula established by federal law. Under this formula, the federal share equals a percentage, as specified in the Schedule below, of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

- **<u>Schedule:</u>**

| Federal Share of Terrorism Losses | |
|---|---|
| **Percentage** | **Calendar Year** |
| 85% | 2015 |
| 84% | 2016 |
| 83% | 2017 |
| 82% | 2018 |
| 81% | 2019 |
| 80% | 2020 |

**<u>Cap on Insurer Participation:</u>**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**<u>NOTE:</u>** **IF YOUR POLICY IS A RENEWAL POLICY, THIS NOTICE IS PROVIDED TO SATISFY THE REQUIREMENTS UNDER THE TERRORISM RISK INSURANCE ACT FOR POLICYHOLDER DISCLOSURE: (1) AT THE TIME OF OUR OFFER TO RENEW THE POLICY <u>AND</u> (2) AT THE TIME THE RENEWAL IS COMPLETED.**

**IA 4236 01 15**

# THE CINCINNATI INSURANCE COMPANY
# THE CINCINNATI CASUALTY COMPANY
# THE CINCINNATI INDEMNITY COMPANY

## NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company.  The information disclosed in the application and all information subsequently collected by any of these companies may be shared among all three.

**IP 446 08 01**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

> BUSINESSOWNERS POLICY
> CHEMICAL DRIFT LIMITED LIABILITY COVERAGE PART - CLAIMS-MADE
> CINCINNATI CYBER DEFENSE™ COVERAGE PART
> CINCINNATI DATA DEFENDER™ COVERAGE PART
> CINCINNATI NETWORK DEFENDER™ COVERAGE PART
> CLAIMS - MADE EXCESS LIABILITY COVERAGE PART
> COMMERCIAL AUTO COVERAGE PART
> COMMERCIAL CRIME AND FIDELITY COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
> CONTRACTOR'S ERRORS AND OMISSIONS COVERAGE FORM CLAIMS-MADE
> CONTRACTOR'S LIMITED POLLUTION LIABILITY COVERAGE PART
> ELECTRONIC DATA LIABILITY COVERAGE FORM
> EMPLOYMENT PRACTICES LIABILITY COVERAGE PART
> EMPLOYEE BENEFIT LIABILITY COVERAGE PART
> EXCESS LIABILITY COVERAGE PART
> EXCESS WORKERS COMPENSATION AND EMPLOYERS LIABILITY COVERAGE FORM
> FARM COVERAGE PART
> GOLF COURSE CHEMICAL APPLICATION LIMITED LIABILITY COVERAGE PART
> HOLE-IN-ONE COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> MACHINERY AND EQUIPMENT COVERAGE PART
> MANUFACTURER'S ERRORS AND OMISSIONS COVERAGE FORM - CLAIMS-MADE
> POLLUTION LIABILITY COVERAGE PART
> PRODUCT WITHDRAWAL COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART
> PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART
> PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE

**A.** With respect to a policy which has been in effect for more than 90 days, or is a renewal of a policy we issued, or is a policy for medical malpractice professional liability, the **Cancellation** Common Policy Condition is replaced by the following:

    **1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    **2.** We may cancel this policy only for one or more of the following reasons, except as provided in Paragraph **6.** below.

        **a.** Nonpayment of premium;

        **b.** Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

        **c.** Discovery of a moral hazard or willful or reckless acts or omissions on your part which increases any hazard insured against;

        **d.** The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed except to the extent the insurer could reasonably have foreseen the change or contemplated the risk in writing the contract;

        **e.** Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the Superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage;

**f.** Failure of an insured to correct material violations of safety codes or to comply with reasonable written loss control recommendations; or

**g.** A determination by the Superintendent of Insurance that the continuation of the policy would create a condition that would be hazardous to the policyholders or the public.

**3.** We will mail written notice of cancellation to the first Named Insured, and agent if any, at the last mailing addresses known to us. Proof of mailing will be sufficient proof of notice.

**4.** We will mail the notice of cancellation at least:

**a.** 10 days from the effective date of cancellation, if we cancel for nonpayment of premium; or

**b.** 30 days from the effective date of cancellation, if we cancel for a reason stated in the **2.b.** through **2.g.** above; or

**c.** 60 days from the effective date of cancellation, if we cancel for a reason stated in **2.b.** through **2.g.** above, applicable to medical malpractice professional liability coverage.

**5. a.** The notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**b.** The notice will also contain the date of the notice and the policy number, and will state the reason for cancellation.

**6.** Policies written for a term of more than one year may be cancelled by us for any reason at an anniversary date, upon 30 days' written notice of cancellation or upon 60 days' written notice of cancellation applicable to medical malpractice professional liability coverage.

**7.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we or the first Named Insured cancels, the refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the Common Policy Conditions and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail written notice of nonrenewal to the first Named Insured, and agent if any, at the last mailing addresses known to us. The notice will contain the date of the notice and the policy number, and will state the expiration date of the policy. We will state the reason for nonrenewal for medical malpractice professional liability coverage.

**2.** We will mail the notice of nonrenewal at least 30 days before:

**a.** The expiration date of the policy; or

**b.** The anniversary date of this policy, if the policy is written for a term of more than one year.

**3.** We will mail the notice of nonrenewal at least 60 days before:

**a.** The expiration date of the policy; or

**b.** The anniversary date of this policy, if the policy is written for a term of more than one year,

for medical malpractice professional liability.

**4.** Proof of mailing will be sufficient proof of notice.

**C. 1.** Paragraph **A.2.a.** of the **Businessowners** Common Policy Conditions is deleted.

**2.** Paragraph **E.2.** of the **Cancellation** Common Policy Condition in the **Standard Property Policy** is deleted. Paragraph **E.2.** is deleted in its entirety and is replaced by the following (unless Item **A.** of this endorsement applies):

We may cancel this policy by mailing or delivering to the first Named Insured, and agent if any, written notice of cancellation at least:

**a.** 10 days before the effective date of the cancellation, if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date, if we cancel for any other reason.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**All Commercial Lines Coverage Parts, Coverage Forms, Policies and Endorsements subject to the federal Terrorism Risk Insurance Act and any amendments and extensions thereto**

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B. Cap On Losses from Certified Acts of Terrorism**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that ex-

ceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**C. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability, omission or absence of a terrorism exclusion, does not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part, Coverage Form, Policy or Endorsement such as losses excluded by:

**1.** Exclusions that address war, warlike action, insurrection, rebellion, revolution, military action, nuclear hazard, nuclear materials, nuclear reaction, radiation, or radioactive contamination;

**2.** Exclusions that address pollutants, contamination, deterioration, fungi or bacteria; or

**3.** Any other exclusion,

regardless if the "certified act of terrorism" contributes concurrently or in any sequence to the loss.

**D. Sunset Clause**

If the federal Terrorism Risk Insurance Act expires or is repealed, then this endorsement is null and void for any act of terrorism that takes place after the expiration or repeal of the Act.

Includes copyrighted material of ISO
Properties, Inc. and American Association
of Insurance Services, with their permission.

**IA 4238 01 15**

# SIGNATURE ENDORSEMENT

IN WITNESS WHEREOF, this policy has been signed by our President and Secretary in the City of Fairfield, Ohio, but this policy shall not be binding upon us unless countersigned by an authorized representative of ours. The failure to countersign does not void coverage in Arizona, Virginia and Wisconsin.

Secretary                                            President

The signature on any form, endorsement, policy, declarations, jacket or application other than the signature of the President or Secretary named above is deleted and replaced by the above signatures.

IA 4338 05 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following;

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage:"

        (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

        (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

        (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured;" or

        (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" include radioactive, toxic or explosive properties;

    "Nuclear material," means "source material," "Special nuclear material" or "by-product material;"

    "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

    "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

    "Nuclear facility" means:

        (a) Any "nuclear reactor;"

        (b) Any equipment or device designed or used for (1) separating the iso-

topes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams or uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

# THE **CINCINNATI INSURANCE COMPANY**

### A Stock Insurance Company

## COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER:     **EPP 049 46 35**

Named Insured is the same as it appears on the Common Policy Declarations unless otherwise stated here.

**Loc.**   **(address)**
REFER TO IA904

**OPTIONAL COVERAGES**
**Applicable only when an entry is made**

**COVERAGE PROVIDED**

| Item | Coverage | Limits | Coin-surance | Covered Cause Of Loss | Inflation Guard (%) | Replace-ment Cost (x) | Replace-ment Cost Incl. Stock (x) | Agreed Value (x) | Monthly Limit (fraction) | Maximum Period (X) | Extended Period (Days) |
|------|----------|--------|--------------|-----------------------|---------------------|-----------------------|-----------------------------------|------------------|--------------------------|--------------------|------------------------|
| 1-1 | BUSINESS PERSONAL PROPERTY INCLUDING IMPROVEMENTS AND BETTERMENTS | 60,000 | 100% | SPECIAL | | X | | | | | |

(Business Income Indemnity)

DEDUCTIBLE:  $500.00 unless otherwise stated $

**MORTGAGE HOLDER**

| Item | Name and Address |
|------|------------------|
| | |

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|------|------|----------------------------------------------------------------------|
| FM101 | 05/16 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS) |
| FA4053 | 04/06 | CINCIPLUS™ COMMERCIAL PROPERTY EXPANDED COVERAGE (XC™) PLUS ENDORSEMENT SUMMARY OF COVERAGE LIMITS |
| FA4078OH | 05/17 | OHIO CHANGES - COMMERCIAL PROPERTY |
| FA450 | 05/16 | COMMERCIAL PROPERTY CONDITIONS |
| FA250 | 05/16 | CINCIPLUS® COMMERCIAL PROPERTY  XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT |

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS)

## TABLE OF CONTENTS

**Begins on Page**

SECTION A. COVERAGE ................................................................................................3
1. Covered Property ...............................................................................................3
   a. Building .......................................................................................................3
   b. Outdoor Signs ............................................................................................3
   c. Outdoor Fences .........................................................................................3
   d. Business Personal Property.......................................................................3
2. Property Not Covered ........................................................................................4
   a. Accounts, Deeds, Money or Securities .....................................................4
   b. Animals.......................................................................................................4
   c. Automobiles ...............................................................................................4
   d. Contraband ................................................................................................4
   e. Electronic Data...........................................................................................4
   f. Excavations, Grading & Backfilling ............................................................4
   g. Foundations ...............................................................................................4
   h. Land, Water or Growing Crops ..................................................................4
   i. Paved Surfaces ..........................................................................................4
   j. Property While Airborne or Waterborne .....................................................4
   k. Pilings or Piers...........................................................................................4
   l. Property More Specifically Insured ............................................................4
   m. Retaining Walls ..........................................................................................4
   n. Underground Pipes, Flues or Drains..........................................................4
   o. Valuable Papers & Records and Cost to Research.....................................5
   p. Vehicles or Self-Propelled Machines.........................................................5
   q. Property While Outside of Buildings...........................................................5
3. Covered Causes of Loss ...................................................................................5
   a. Covered Causes of Loss............................................................................5
   b. Exclusions..................................................................................................5
   c. Limitations ................................................................................................11
4. Additional Coverages ......................................................................................13
   a. Change in Temperature or Humidity ........................................................13
   b. Debris Removal.........................................................................................13
   c. Fire Department Service Charge...............................................................14
   d. Fire Protection Equipment Recharge........................................................14
   e. Inventory or Appraisal ..............................................................................14
   f. Key and Lock Expense .............................................................................15
   g. Ordinance or Law .....................................................................................15
   h. Pollutant Clean Up and Removal .............................................................16
   i. Preservation of Property...........................................................................16
   j. Rewards....................................................................................................16

**TABLE OF CONTENTS (CONT'D)**

Begins on Page

5. Coverage Extensions ...................................................................................................16
   a. Accounts Receivable................................................................................................17
   b. Business Income and Extra Expense.......................................................................18
   c. Collapse ...................................................................................................................21
   d. Electronic Data........................................................................................................22
   e. Exhibitions, Fairs or Trade Shows...........................................................................23
   f. Fences .....................................................................................................................23
   g. Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage.....................................23
   h. Glass .......................................................................................................................24
   i. Newly Purchased, Leased or Constructed Property.................................................25
   j. Nonowned Building Damage.....................................................................................26
   k. Outdoor Property......................................................................................................26
   l. Personal Effects.......................................................................................................26
   m. Property Off Premises..............................................................................................27
   n. Signs........................................................................................................................27
   o. Trailers (Nonowned Detached).................................................................................27
   p. Transportation..........................................................................................................27
   q. Utility Services..........................................................................................................27
   r. Valuable Papers and Records..................................................................................28
   s. Water Damage, Other Liquids, Powder or Molten Material Damage.........................29

SECTION B. LIMITS OF INSURANCE.............................................................................29
SECTION C. DEDUCTIBLE................................................................................................29
   1. Deductible Examples................................................................................................30
   2. Glass Deductible......................................................................................................30
SECTION D. LOSS CONDITIONS.....................................................................................30
   1. Abandonment...........................................................................................................30
   2. Appraisal..................................................................................................................30
   3. Duties in the Event of Loss or Damage....................................................................30
   4. Loss Payment...........................................................................................................31
   5. Recovered Property..................................................................................................34
   6. Vacancy....................................................................................................................34
      a. Description of Terms............................................................................................34
      b. Vacancy Provisions.............................................................................................34
   7. Valuation..................................................................................................................34
SECTION E. ADDITIONAL CONDITIONS..........................................................................35
   1. Coinsurance.............................................................................................................35
   2. Mortgage Holders ...................................................................................................36
SECTION F. OPTIONAL COVERAGES..............................................................................36
   1. Agreed Value............................................................................................................37
   2. Inflation Guard.........................................................................................................37
   3. Replacement Cost....................................................................................................37
SECTION G. DEFINITIONS...............................................................................................38

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM
# (INCLUDING SPECIAL CAUSES OF LOSS)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION G. DEFINITIONS.**

### SECTION A. COVERAGE

We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

1. **Covered Property**

   Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

   a. **Building**

      Building, means the building or structure described in the Declarations, including:

      (1) Completed additions;

      (2) Fixtures, including outdoor fixtures;

      (3) Permanently installed:

         (a) Machinery and equipment;

         (b) Building glass, including any lettering and ornamentation;

         (c) Signs attached to a building or structure that is Covered Property;

         (d) Awnings and canopies;

      (4) Personal property owned by you that is used to maintain or service a covered building or its "premises", including:

         (a) Fire extinguishing equipment;

         (b) Outdoor furniture;

         (c) Floor coverings; and

         (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

      (5) If not covered by other insurance:

         (a) Additions under construction, alterations and repairs to a covered building;

         (b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the "premises", used for making additions, alterations or repairs to a covered building.

   b. **Outdoor Signs**

      Your outdoor signs permanently installed and not attached to a covered building, and located within 1,000 feet of the "premises".

   c. **Outdoor Fences**

      Your outdoor fences.

   d. **Business Personal Property**

      Your Business Personal Property consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater. Your Business Personal Property consists of the following unless otherwise specified in the Declarations or on the **BUSINESS PERSONAL PROPERTY - SEPARATION OF COVERAGE ENDORSEMENT.**

      (1) Furniture;

      (2) Machinery and equipment;

      (3) "Stock";

      (4) All other personal property owned by you and used in your business;

      (5) The cost of labor, materials or services furnished or arranged by you on personal property of others;

      (6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

         (a) Made a part of the building or structure you occupy but do not own; and

         (b) You acquired or made at your expense but cannot legally remove;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(7)** Leased personal property used in your business for which you have a contractual responsibility to insure. Such leased property is not considered personal property of others in your care, custody or control;

**(8)** Personal Property of Others that is in your care, custody or control or for which you are legally liable.

**(a)** This does not include personal effects owned by you, your officers, your partners, or if you are a limited liability company, your members or your managers, or your employees (including leased and temporary workers), except as provided in **5. Coverage Extensions, l. Personal Effects**;

**(b)** This does not include property of others for which you are legally liable as:

**1)** A carrier for hire; or

**2)** An arranger of transportation, including car loaders, consolidators, brokers, freight forwarders, or shipping associations; and

**(9)** Sales samples.

## 2. Property Not Covered

Covered Property does not include:

**a. Accounts, Deeds, Money or Securities**

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable,** Accounts, bills, currency, deeds, food stamps or other evidences of debt, "money", notes or "securities";

**b. Animals**

Animals, unless

**(1)** Owned by others and boarded by you; or

**(2)** Owned by you and covered as "stock" while inside of buildings;

and then only as provided in **3. Covered Causes of Loss, c. Limitations**.

**c. Automobiles**

Automobiles held for sale;

**d. Contraband**

Contraband, or property in the course of illegal transportation or trade;

**e. Electronic Data**

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data,** "Electronic data". This Paragraph **e.** does not apply to your "stock" of prepackaged software or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**f. Excavations, Grading & Backfilling**

The cost of excavations, grading, backfilling or filling;

**g. Foundations**

Foundations of buildings, structures, machinery or boilers, if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground, if there is no basement.

**h. Land, Water or Growing Crops**

Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetative roof);

**i. Paved Surfaces**

Bridges, roadways, walks, patios or other paved surfaces;

**j. Property While Airborne or Waterborne**

Personal property while airborne or waterborne;

**k. Pilings or Piers**

Pilings, piers, bulkheads, wharves or docks;

**l. Property More Specifically Insured**

Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except as provided in **G. Other Insurance** of the **COMMERCIAL PROPERTY CONDITIONS**;

**m. Retaining Walls**

Retaining walls that are not part of any building described in the Declarations;

**n. Underground Pipes, Flues or Drains**

Underground pipes, flues or drains;

**o.** **Valuable Papers & Records and Cost to Research**

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records,** the cost to research, replace or restore the information on "valuable papers and records", including those which exist as "electronic data".

This does not apply to "valuable papers and records" held for sale by you.

**p.** **Vehicles or Self-Propelled Machines**

Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the "premises".

This paragraph does not apply to:

**(1)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

**(2)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(3)** Rowboats or canoes out of water and located at the "premises"; or

**(4)** Trailers, but only as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, o. Trailers (Nonowned Detached).**

**q.** **Property While Outside of Buildings**

The following property while outside of buildings (except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions**):

**(1)** Grain, hay, straw or other crops;

**(2)** Signs, except:

**(a)** Signs attached to a covered building or structure;

**(b)** Signs for which a Limit of Insurance is shown in the Declarations.

**(3)** Outdoor fences, except outdoor fences for which a Limit of Insurance is shown in the Declarations;

**(4)** Radio antennas, television antennas or satellite dishes; including their lead-in wiring, masts, and towers; and

**(5)** Trees, shrubs or plants (other than trees, shrubs or plants that are "stock" or part of a vegetative roof).

**3.** **Covered Causes of Loss**

**a.** **Covered Causes of Loss**

Covered Causes of Loss means direct "loss" unless the "loss" is excluded or limited in this Coverage Part.

**b.** **Exclusions**

**(1)** We will not pay for "loss" caused directly or indirectly by any of the following, unless otherwise provided. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**(a)** **Ordinance or Law**

Except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law**, the enforcement of or compliance with any ordinance or law:

**1)** Regulating the construction, use or repair of any building or structure; or

**2)** Requiring the tearing down of any building or structure, including the cost of removing its debris.

This exclusion applies whether "loss" results from:

**1)** An ordinance or law that is enforced even if the building or structure has not been damaged; or

**2)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of any building or structure, or removal of its debris, following a direct "loss" to that building or structure.

**(b)** **Earth Movement**

**1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**2)** Landslide, including any earth sinking, rising or shifting related to such event;

**3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**4)** Earth sinking (other than "sinkhole collapse"), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **(b)1)** through **4)** above, results in fire or explosion, we will pay for the "loss" caused by that fire or explosion.

**5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the "loss" caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct "loss" resulting from the eruption of a volcano when the "loss" is caused by:

**a)** Airborne volcanic blast or airborne shock waves;

**b)** Ash, dust or particulate matter; or

**c)** Lava flow.

With respect to coverage for Volcanic Action, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct "loss" to the described property.

This Earth Movement exclusion applies regardless of whether any of the above, in paragraphs **1)** through **5),** is caused by an act of nature or is otherwise caused.

**(c) Governmental Action**

Seizure or destruction of property by order of governmental authority. However, we will pay for "loss" caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**(d) Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

**(e) Utility Services**

**1)** Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, q. Utility Services**, the failure of power, communication, water or other utility services supplied to the "premises", however caused, if the failure:

**a)** Originates away from the "premises"; or

**b)** Originates at the "premises", but only if such failure involves equipment used to supply the utility service to the "premises" from a source away from the "premises".

Failure of any utility service includes lack of sufficient capacity and reduction in supply. "Loss" caused by a surge of power is also excluded if the surge would not have occurred but for an event causing the failure of power.

However, if the failure or surge of power, or the failure of communication, water, wastewater removal or other utility service results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss.

Communication services include but are not limited to

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

service relating to Internet access or access to any electronic, cellular or satellite network.

**(f) War and Military Action**

**1)** War, including undeclared or civil war;

**2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**(g) Water**

**1)** Flood, meaning the partial or complete inundation of normally dry land areas due to:

**a)** The unusual or rapid accumulation or runoff of rain or surface waters from any source; or

**b)** Waves, tidal waters, tidal waves (including tsunami); or

**c)** Water from rivers, ponds, lakes, streams, or any other body of water that rises above, overflows from, or is not contained within its natural or man-made boundary;

and all whether driven by wind or not, including storm surge.

**2)** Mudslides or mudflows, which are caused by flooding as defined above in Paragraph **(g)1** above. Mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current;

**3)** Water that has entered and then backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment; or

**4)** Water under the ground surface pressing on, or flowing or seeping through:

**a)** Foundations, walls, floors or paved surfaces;

**b)** Basements, whether paved or not; or

**c)** Doors, windows or other openings.

**5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraphs **(g)1), 3)** or **4),** or material carried or otherwise moved by mudslide or mudflow as described in Paragraph **(g)2).**

This exclusion applies regardless of whether any of the above in Paragraphs **(g)1)** through **(g)5)** is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

However, if any of the above, as described in Paragraphs **(g)1)** through **(g)5),** results in fire, explosion or sprinkler leakage, we will pay for that portion of "loss" caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**(h) "Fungi", Wet Rot, Dry Rot, and Bacteria**

**1)** Presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria. But if "fungi", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**2)** This exclusion does not apply:

**a)** When "fungi", wet or dry rot or bacteria results from fire or lightning; or

**b)** To the extent that coverage is provided in **SECTION A. COVERAGE, 5. Coverage Extensions, g. "Fungi", Wet Rot, Dry Rot and Bacteria - Limited Coverage** with respect to "loss" from a cause of loss other than fire or lightning.

Exclusions **b.(1)(a)** through **b.(1)(h)** apply whether or not the "loss" event results in widespread damage or affects a substantial area.

**(2)** We will not pay for "loss" caused by or resulting from any of the following:

**(a) Electrical Current**

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**1)** Electrical or electronic wire, device, appliance, system or network; or

**2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**1)** Electrical current, including arcing;

**2)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**3)** Pulse of electromagnetic energy; or

**4)** Electromagnetic waves or microwaves.

However, if fire results, we will pay for "loss" caused by that fire.

**(b) Delay or Loss of Use**

Delay, loss of use or loss of market.

**(c) Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**(d) Miscellaneous Causes of Loss**

**1)** Wear and tear;

**2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**3)** Smog;

**4)** Settling, cracking, shrinking or expansion;

**5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. However, if mechanical breakdown results in elevator collision, we will pay for that portion of "loss" caused by that elevator collision; or

**7)** The following causes of loss to personal property:

**a)** Marring or scratching;

**b)** Except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, a. Change in Temperature or Humidity** and **5. Coverage Extensions, q. Utility Services;**

**i)** Dampness or dryness of atmosphere; and

**ii)** Changes in or extremes of temperature.

However, if an excluded cause of loss listed in **(2)(d)1** through **7)** results in a "specified cause of "loss" or building glass breakage, we will pay for that portion of "loss" caused by that "specified cause of loss" or building glass breakage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(e) Explosion of Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. However, if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for that portion of "loss" caused by that fire or combustion explosion. We will also pay for "loss" caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(f) Water Seepage**

Continuous or repeated seepage or leakage of water or the presence or condensation of humidity, moisture, or vapor that occurs over a period of 14 days or more.

**(g) Freezing of Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protection systems) caused by or resulting from freezing, unless:

**1)** You did your best to maintain heat in the building or structure; or

**2)** You drained the equipment and shut off the supply if the heat was not maintained.

**(h) Dishonest or Criminal Acts**

Dishonest or criminal acts (including theft) by you, any of your partners, members (if a limited liability company), officers, managers, employees (including leased workers or temporary employees) directors, trustees, or authorized representatives; whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion applies whether or not an act occurs during the hours of operation.

This **Dishonest or Criminal Acts** exclusion does not apply to acts of destruction by your employees (including leased workers or temporary employees) or by authorized representatives; except theft by employees (including leased workers or temporary employees) is not covered.

**(i) Voluntary Parting Under False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**(j) Exposure to Weather**

Rain, snow, ice or sleet to personal property in the open.

**(k) Collapse**

Collapse, including any of the following conditions of property or any part of the property:

**1)** An abrupt falling down or caving in;

**2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph **(k)1)** or **2)** above.

But if collapse results in a Covered Cause of Loss at the "premises", we will pay for "loss" caused by that Covered Cause of Loss.

This exclusion **Collapse** does not apply:

**1)** To the extent that coverage is provided under the **SECTION A. COVERAGE, 5. Coverage Extensions, c. Collapse**; or

**2)** To collapse caused by one or more of the following:

**a)** The "specified causes of loss";

**b)** Breakage of building glass;

**c)** Weight of rain that collects on a roof; or

**d)** Weight of people or personal property.

**(l) Pollutants**

Discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" unless the discharge, dispersal, seepage, migration, release, escape or emission is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

This exclusion does not apply to "loss" to glass caused by chemicals applied to the glass.

**m) Loss or Damage to Product**

We will not pay for "loss" to Covered Property consisting of merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for "loss" caused by that Covered Cause of Loss.

**(n) Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of "loss".

**(3)** We will not pay for "loss" caused by or resulting from any of the following in Paragraphs **(3)(a)** through **(3)(c)**. However, if an excluded cause of loss that is listed in Paragraphs **(3)(a)** through **(3)(c)** results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss:

**(a) Weather Conditions**

Weather conditions, but this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(a)** through **(1)(h)** to produce the "loss".

**(b) Acts or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**(c) Defects, Errors, and Omissions**

**1)** An act, error, or omission (negligent or not) relating to:

**a)** Land use;

**b)** Design, specifications, construction, workmanship;

**c)** Planning, zoning, development, surveying, siting, grading, compaction; or

**d)** Maintenance, installation, renovation, repair, or remodeling

of part or all of any property on or off the "premises";

**2)** A defect, weakness, inadequacy, fault, or unsoundness in materials used in construction or repair of part or all of any property on or off the "premises"; or

**3)** The cost to make good any error in design.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(4) Special Exclusions**

The Special Exclusions apply only to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense**; and if attached to this policy, the following coverage forms: **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM, BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM,** and **EXTRA EXPENSE COVERAGE FORM.**

We will not pay for:

**(a)** Any "loss" caused by or resulting from:

**1)** Damage or destruction of "finished stock"; or

**2)** The time required to reproduce "finished stock".

This Exclusion **(4)(a)** does not apply to Extra Expense.

**(b)** Any "loss" caused by or resulting from damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(c)** Any increase of "loss" caused by or resulting from:

**1)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**2)** Suspension, lapse or cancellation of any license, lease or contract. However, if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such "loss" that affects your "Business Income" during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period of Indemnity Optional Coverage or any variation of these.

**(d)** Any Extra Expense caused by or resulting from suspension, lapse

or cancellation of any license, lease or contract beyond the "period of restoration".

**(e)** Any other indirect "loss".

**c.** <u>Limitations</u>

The following limitations apply to all policy forms and endorsements shown on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS**, unless otherwise stated:

**(1) Limitations - Various Types of Property**

We will not pay for "loss" to property as described and limited in this section. In addition, we will not pay for any "loss" that is a consequence of "loss" as described and limited in this section.

**(a) Steam Apparatus**

Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for "loss" to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(b) Hot Water Boilers**

Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**(c) Building Interiors**

The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**2)** The "loss" is caused by or results from thawing of

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

snow, sleet or ice on the building or structure.

**(d) Theft of Building Materials**

Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

**1)** Building materials and supplies held for sale by you; or

**2)** "Business Income" coverage or Extra Expense coverage.

**(e) Missing Property**

Property that is missing, where the only evidence of the "loss" is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**(f) Transferred Property**

Property that has been transferred to a person or to a place outside the "premises" on the basis of unauthorized instructions.

**(g) Vegetative Roofs**

Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**2)** Changes in or extremes of temperature;

**3)** Disease;

**4)** Frost or hail; or

**5)** Rain, snow, ice or sleet.

**(2) Limitations - Various Property for Specified Causes**

We will not pay for "loss" to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**(a)** Animals, and then only if they are killed or their destruction is deemed necessary.

**(b)** Contractors equipment, machinery and tools owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

**1)** If the property is located on or within 1,000 feet of the "premises"; or

**2)** To Business Income coverage or to Extra Expense coverage.

**(3) Limitation - Personal Property Theft**

This Limitation does not apply to "Business Income" coverage or to Extra Expense coverage. For each category described in Paragraph **c.(3)(a)** through **(3)(d)** below, the most we will pay for "loss" in any one occurrence of theft to all property in that category, regardless of the types or number of articles for that category that are lost or damaged in that occurrence, are the following special limits:

**(a)** $2,500 for Furs, fur garments and garments trimmed with fur.

**(b)** $2,500 for Jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limitation does not apply to jewelry and watches worth $100 or less per item.

**(c)** $2,500 for Patterns, dies, molds and forms.

**(d)** $250 for Stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are not additional Limits of Insurance.

**(4) Limitation - System or Appliance Defects**

**(a)** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes; and

**(b)** We will not pay to replace the substance that escapes as described in Paragraph **c.(4)(a)** above.

But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage results in discharge of any substance from an automatic fire protection system, or is directly caused by freezing.

However, this Limitation **c.(4)(a)** does not apply to "Business Income" Coverage or to Extra Expense Coverage.

**4.** **Additional Coverages**

Unless stated otherwise, **SECTION C. DEDUCTIBLE** does not apply to Paragraph **4. Additional Coverages.**

Unless stated otherwise, these Paragraph **4. Additional Coverages** apply on a per location basis.

**a.** **Change in Temperature or Humidity**

We will pay for direct "loss" to your covered Business Personal Property caused by a change in temperature or humidity or contamination by refrigerant resulting from damage by a Covered Cause of Loss to equipment used for refrigerating, cooling, humidifying, dehumidifying, air conditioning, heating, generating or converting power (including their connections and supply or transmission lines and pipes) when located on the "premises".

This Coverage is included within the Limits of Insurance shown in the Declarations.

**b.** **Debris Removal**

**(1)** Subject to Paragraphs **b.(2)**, **(3)** and **(4)** of this Additional Coverage, we will pay your expense to remove debris of Covered Property and other debris that is on the "premises", when such debris is caused by or results from a Covered Cause of Loss that occurs during the "coverage term". The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct "loss".

**(2)** Debris Removal does not apply to costs to:

**(a)** Extract "pollutants" from land or water;

**(b)** Remove, restore or replace polluted land or water;

**(c)** Remove debris of property of yours that is not insured under this Coverage Part, or property in your possession that is not Covered Property;

**(d)** Remove debris of property owned by or leased to the landlord of the building where your "premises" are located, unless you have a contractual responsibility to insure such property and it is insured under this Coverage Part;

**(e)** Remove any property that is Property Not Covered, including property addressed under **5. Coverage Extensions, k. Outdoor Property**.

**(f)** Remove property of others of a type that would not be Covered Property under this Coverage Part;

**(g)** Remove deposits of mud or earth from the grounds of the "premises".

**(3)** Subject to the exceptions in Paragraph **b.(4)** below, the following provisions apply:

**(a)** The most we will pay for the total of direct "loss" plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained "loss".

**(b)** Subject to Paragraph **b.(3)(a)**, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct "loss" to the Covered Property that has sustained "loss".

**(4)** We will pay up to an additional $10,000 for debris removal expense for each "premises", in any one occurrence of direct "loss" to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct "loss" exceeds the Limit of Insurance on the Covered Property that has sustained "loss".

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct "loss" to the Covered Property that has sustained "loss".

Therefore, if Paragraph **b.(4)(a)** and/or **(4)(b)** apply, our total payment for direct

"loss" and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained "loss", plus $10,000.

**(5) Examples**

The following examples assume that there is no coinsurance penalty.

**Example #1**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of "Loss" | $50,000 |
| Amount of "Loss" Payable ($50,000 - $500) | $49,500 |
| Debris Removal Expense | $10,000 |
| Debris Removal Expense Payable ($10,000 is 20% of $50,000) | $10,000 |

The debris removal expense is less than 25% of the sum of the "loss" payable plus the deductible. The sum of the "loss" payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

**Example #2**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of "Loss" | $80,000 |
| Amount of "Loss" Payable ($80,000 - $500) | $79,500 |
| Debris Removal Expense | $30,000 |
| Debris Removal Expense Payable | |
| Basic Amount | $10,500 |
| Additional Amount | $10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the "loss" payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4),** because the debris removal expense ($30,000) exceeds 25% of the "loss" payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the "loss" payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4).** Thus the total payable for debris removal ex-

pense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**c.** **Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $5,000 in any one occurrence for your liability, which is determined prior to the direct "loss", for fire department service charges:

**(1)** Assumed by contract or agreement; or

**(2)** Required by local ordinance.

Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**d.** **Fire Protection Equipment Recharge**

**(1)** We will pay for the expenses you incur to recharge your automatic fire suppression system or portable fire extinguishers when the equipment is discharged:

**(a)** To combat a covered fire to which this insurance applies;

**(b)** As a result of another covered Cause of Loss other than fire; or

**(c)** As a result of an accidental discharge.

**(2)** We will not pay your expenses to recharge fire protection equipment as a result of a discharge during testing or installation.

**(3)** If it is less expensive to do so, we will pay your costs to replace your automatic fire suppression system or portable fire extinguishers rather than recharge that equipment.

The most we will pay in any one occurrence under this Additional Coverage is $25,000. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**e.** **Inventory or Appraisal**

**(1)** We will pay the necessary expenses you incur to prepare claim information as required by this Coverage Part. Expenses must result from:

**(a)** Taking inventories;

**(b)** Making appraisals; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(c)** Preparing a statement of loss and other supporting exhibits.

**(2)** We will not pay for any expenses:

**(a)** Incurred to prove that "loss" is covered;

**(b)** Incurred under **SECTION D. LOSS CONDITIONS, 2. Appraisal;**

**(c)** Incurred for examinations under oath;

**(d)** Billed by and payable to independent or public adjusters; or

**(e)** To prepare claims not covered by this Coverage Part.

The most we will pay for any one occurrence under this Additional Coverage is $10,000. This Coverage is in addition to the shown in the Declarations.

**f.** **Key and Lock Expense**

**(1)** If a key or master key is lost, stolen, or damaged, we will pay for:

**(a)** The actual expense of the new keys; and

**(b)** The adjustment of locks to accept new keys; or

**(c)** If required, new locks, including the expense of their installation;

but only for locks at buildings or structures covered by this Coverage Part.

**(2)** This Coverage does not apply to keys that were given to former employees.

The most we will pay in any one occurrence under this Additional Coverage is Limit of Insurance $1,000. This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**g.** **Ordinance or Law**

**(1)** If a covered building or structure sustains direct "loss" from a Covered Cause of Loss, resulting in the enforcement of or compliance with an ordinance or law that is in force at the time of "loss" and regulates the demolition, construction or repair of buildings or structures, or establishes zoning or land use requirements at the "premises", then subject to **SECTION D, LOSS CONDITIONS, 4. Loss Payment,** we will pay:

**(a)** **Loss of Use of Undamaged Parts of Buildings**

The costs you incur to rebuild at the same "premises" any undamaged portion of your building or structure caused by enforcement of or compliance with an ordinance or law requiring demolition of undamaged parts of the same building or structure. We will only pay the costs to satisfy the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered.

**(b)** **Demolition Costs**

The costs you incur to demolish and clear the site of undamaged parts of the same building or structure as a result of Paragraph **g.(1)(a)** above.

**(c)** **Increased Costs of Construction**

**1)** For buildings or structures to which **SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies, the increased costs to comply with the minimum standards of an ordinance or law to:

**a)** Repair or reconstruct damaged portions of that building or structure; and

**b)** Reconstruct or remodel undamaged portions of that building or structure whether or not demolition is required;

However, this increased cost of construction applies only if the building or structure is repaired, reconstructed or remodeled and is intended for occupancy similar to the building or structure it replaces, unless such occupancy is not permitted by zoning or land use ordinance or law.

**2)** For this Paragraph **g.(1)(c)** only, the increased costs to repair or reconstruct the following:

**FM 101 05 16**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 15 of 40**

    **a)** The cost of excavations, grading, backfilling and filling;

    **b)** Foundation of the building;

    **c)** Pilings;

    **d)** Underground pipes, flues and drains.

    The items listed in Paragraphs **g.2)a)** through **g.2)d)** above are deleted from **SECTION A. COVERAGE, 2. Property Not Covered**;

**(2)** We will not pay for:

    **(a)** Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria; or

    **(b)** The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

**(3)** We will not pay for "loss" due to any ordinance or law that:

    **(a)** You were required to comply with before the "loss", even if the building or structure was undamaged; and

    **(b)** With which you failed to comply.

**(4)** The terms of this Additional Coverage apply separately to each building or structure covered by this Coverage Part.

The most we will pay under this Additional Coverage is $10,000 per building. This is in addition to the Limit of Insurance shown in the Declarations for the building suffering "loss".

**h. Pollutant Clean Up and Removal**

We will pay your expenses to extract "pollutants" from land or water at the "premises" if the discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the "coverage term". The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each "premises" is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss during each "coverage term". This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**i. Preservation of Property**

If it is necessary to move Covered Property from the "premises" to preserve it from imminent "loss" by a Covered Cause of Loss, we will pay for any direct "loss" to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the "loss" occurs within 60 days after the property is first moved.

This Coverage is included within Limit of Insurance shown in the Declarations for such Covered Property.

**j. Rewards**

We will pay to provide a reward for information that leads to a conviction for arson, theft, vandalism, or burglary. The conviction must involve a covered "loss" caused by arson, theft, vandalism, or burglary.

The most we will pay for "loss" in any one occurrence under this Additional Coverage is $10,000. This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**5. Coverage Extensions**

Unless amended within a particular Coverage Extension, each Extension applies to property located in or on the building described in the Declarations or in the open (or in a vehicle or portable storage unit) within 1,000 feet of the "premises".

The limits applicable to the Coverage Extensions are in addition to the Limit of Insurance shown in the Property Declarations. Limits of Insurance specified in these Extensions apply per location unless stated otherwise.

**SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**, does not apply to these Coverage Extensions.

a. <u>Accounts Receivable</u>

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

(1) When you sustain direct "loss" to your accounts receivable records caused by a Covered Cause of Loss, we will pay:

(a) All amounts due from your customers that you are unable to collect;

(b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

(c) Collection expenses in excess of your normal collection expenses that are made necessary by the "loss"; and

(d) Other reasonable expenses that you incur to re-establish your records of accounts receivable.

(2) Coverage does not apply to:

(a) Records of accounts receivable in storage away from the "premises"; or

(b) Contraband, or property in the course of illegal transportation or trade.

(3) We will extend coverage to include:

(a) Removal

If you give us written notice within 30 days of removal of your records of accounts receivable because of imminent danger of direct "loss" from a Covered Cause of Loss, we will pay for "loss" while they are:

1) At a safe place away from your "premises"; or

2) Being taken to and returned from that place.

This Removal coverage is included within the Limit of Insurance applicable to this Coverage Extension.

(b) Away From Your Premises

The most we will pay in any one occurrence is $5,000, regardless of the number of locations, for "loss" caused by a Covered Cause of Loss to Accounts Receivable while they are away from your "premises".

This Away From Premises Limit is in addition to the Limit of Insurance applicable to this Coverage Extension.

(4) **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension, except as follows:

(a) **Exclusion (1)(c) Governmental Action;**

(b) **Exclusion (1)(d) Nuclear Hazard;**

(c) **Exclusion (1)(f) War and Military Action.**

(5) In addition to Paragraph **a.(4)** of this Coverage Extension, we will not pay for "loss" resulting from any of the following:

(a) Dishonest or criminal acts by:

1) You, your partners, employees, directors, trustees or authorized representatives;

2) A manager or a member if you are a limited liability company;

3) Anyone else with an interest in the records of accounts receivable, or their employees or authorized representatives; or

4) Anyone else entrusted with the records of accounts receivable for any purpose.

This Paragraph **a.(5)(a)** applies whether or not such persons are acting alone or in collusion with other persons or such act occurs during the hours of employment.

However, this Paragraph **a.(5)(a)** does not apply to dishonest acts of a carrier for hire or to acts of destruction by your employees. However, theft by employees is still not covered.

(b) Alteration, falsification, concealment or destruction of records of

**FM 101 05 16**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 17 of 40**

accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**(c)** Bookkeeping, accounting or billing errors or omissions.

**(d)** Electrical or magnetic injury, disturbance or erasure of "electronic data" that is caused by or results from:

**1)** Programming errors or faulty machine instructions;

**2)** Faulty installation or maintenance of data processing equipment or component parts;

**3)** An occurrence that took place more than 100 feet from your "premises"; or

**4)** Interruption of electrical power supply, power surge, blackout or brownout if the cause of such occurrence took place more than 100 feet from your "premises".

But we will pay for direct "loss" caused by lightning.

**(e)** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**(f)** A "loss" that requires any audit of records or any inventory computation to prove its factual existence.

**(6) Determination of Receivables:**

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of direct "loss", the following method will be used:

**1)** Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the direct "loss" occurs; and

**2)** Adjust that total for any normal fluctuations in the amount of accounts receiv-

able for the month in which the direct "loss" occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**1)** The amount of the accounts for which there is no direct "loss"; and

**2)** The amount of the accounts that you are able to reestablish or collect; and

**3)** An amount to allow for probable bad debts that you are normally unable to collect; and

**4)** All unearned interest and service charges.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $25,000.

**b.** **Business Income and Extra Expense**

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

**(1) Business Income**

We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss. With respect to "loss" to personal property in the open or personal property in a vehicle or portable storage unit, the "premises" include the area within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

With respect to the requirements of the preceding paragraph, if you are a tenant and occupy only part of the site at which the "premises" are located, for the purpose of this Coverage Extension only, your "premises" is the portion of the building that you rent, lease or occupy, including:

**(a)** Any area within the building or on the site at which the "premises" are located if that area ser-

vices or is used to gain access to the "premises"; and

**(b)** Your personal property in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

**(2) Extra Expense**

**(a)** We will pay Extra Expense you sustain during the "period of restoration". Extra Expense means necessary expenses you sustain (as described in Paragraphs **(2)(b), (c)** and **(d)**) during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

**(b)** If these expenses reduce the otherwise payable "Business Income" "loss", we will pay expenses (other than the expense to repair or replace property as described in Paragraph **(2)(c)**) to:

**1)** Avoid or minimize the "suspension" of business and to continue "operations" either:

**a)** At the "premises"; or

**b)** At replacement "premises" or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location; or

**2)** Minimize the "suspension" of business if you cannot continue "operations".

**(c)** We will also pay expenses to:

**1)** Repair or replace property; or

**2)** Research, replace or restore the lost information on damaged "valuable papers and records";

but only to the extent this payment reduces the otherwise payable "Business Income" "loss". If any property obtained for temporary use during the "period of restoration" remains after the resumption of normal "operations", the amount we will pay under this Coverage will be reduced by the salvage value of that property.

**(d)** Extra Expense does not apply to "loss" to Covered Property as described in the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**.

**(3) Civil Authority**

When a Covered Cause of Loss causes damage to property other than Covered Property at a "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

**(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

**(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

This Civil Authority coverage for "Business Income" will begin immediately after the time of that action and will apply for a period of up to 30 days from the date of that action.

This Civil Authority coverage for Extra Expense will begin immediately after the time of that action and will end:

**1)** 30 consecutive days after the time of that action; or

**2)** When your "Business Income" coverage ends;

whichever is later.

**(4) Alterations and New Buildings**

We will pay for the actual loss of "Business Income" you sustain and Extra Expense you incur due to direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss to:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(a)** New buildings or structures, whether complete or under construction;

**(b)** Alterations or additions to existing buildings or structures; and

**(c)** Machinery, equipment, supplies or building materials located on or within 1,000 feet of the "premises" and:

    **1)** Used in the construction, alterations or additions; or

    **2)** Incidental to the occupancy of new buildings.

If such direct "loss" delays the start of "operations", the "period of restoration" for "Business Income" Coverage will begin on the date "operations" would have begun if the direct "loss" had not occurred.

**(5) Newly Purchased or Leased Locations**

We will pay the actual loss of "Business Income" you sustain and Extra Expense you incur due to direct "loss" to Covered Property at any location you purchase or lease caused by or resulting from a Covered Cause of Loss. This coverage for the Newly Purchased or Leased Locations will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** You report values to us;

**(c)** 90 days pass from the date you acquire or begin to construct the Covered Property.

**(6) Extended Business Income**

**(a)** For "Business Income" Other Than "Rental Value", if the necessary "suspension" of your "operations" produces a "Business Income" or Extra Expense "loss" payable under this Coverage Part, we will pay for the actual loss of "Business Income" you sustain and Extra Expense you incur during the period that:

    **1)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

    **2)** Ends on the earlier of:

        **a)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct "loss" had occurred; or

        **b)** 60 consecutive days after the date determined in **b.(6)(a)1)** above.

However, Extended Business Income does not apply to loss of "Business Income" sustained or Extra Expense incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Business Income" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(b)** For "Rental Value", if the necessary "suspension" of your "operations" produces a "Rental Value" "loss" payable under this Coverage Part, we will pay for the actual loss of "Rental Value" you incur during the period that:

    **1)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

    **2)** Ends on the earlier of:

        **a)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct "loss" had occurred; or

        **b)** 60 consecutive days after the date determined in **b.(6)(b)1)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of

Loss in the area where the "premises" are located.

Loss of "Rental Value" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(7) Interruption of Computer Operations**

(a) Subject to all provisions of this Coverage Extension, you may extend the insurance that applies to "Business Income" and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" as described in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data.**

(b) Paragraph **b.(7)(a)** does not apply to "loss" sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in Paragraph **b.(7)(c)** has not been exhausted.

(c) The most we will pay under Paragraph **b.(7)** of this Coverage Extension is $2,500 for all "loss" sustained and expense incurred in the "coverage term", regardless of the number of interruptions or the number of "premises" or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for subsequent interruptions in that "coverage term". A balance remaining at the end of a "coverage term" does not carry over to the next "coverage term". With respect to an interruption that begins in a "coverage term" and continues or results in additional "loss" or expense in a subsequent "coverage term", all "loss" and expense is deemed to be sustained in the "coverage term" in which the interruption began.

This $2,500 coverage for Interruption of Computer Operations does not increase the Limit of Insurance provided in this Coverage Extension.

The most we will pay for "loss" in any one occurrence under this "Business Income" and Extra Expense Coverage Extension is $25,000.

c. **Collapse**

The coverage provided under this Coverage Extension applies only to an abrupt collapse as described and limited in Paragraphs **c.(1)** through **c.(7)** below.

(1) For the purpose of this Coverage Extension only, abrupt collapse means an abrupt falling down or caving in of a building or structure or any part of a building or structure with the result that the building or structure or part of the building or structure cannot be occupied for its intended purpose.

(2) We will pay for direct "loss" to Covered Property, caused by abrupt collapse of a building or structure or any part of a building or structure insured under this Coverage Part, or that contains Covered property insured under this Coverage Part, if such collapse is caused by one or more of the following:

(a) Building or structure decay that is hidden from view, unless the presence of such decay is known or should reasonably have been known to an insured prior to collapse;

(b) Insect or vermin damage that is hidden from view, unless the presence of such damage is known or should reasonably have been known to an insured prior to collapse;

(c) Use of defective material or methods in construction, remodeling, or renovation if the abrupt collapse occurs during the course of the construction, remodeling, or renovation.

(d) Use of defective materials or methods in construction, remodeling, or renovation if the abrupt collapse occurs after construction, remodeling, or renovation is complete but only if the collapse is caused in part by:

1) A cause of loss listed in Paragraph **c.(2)(a)** or **c.(2)(b)** of this Coverage Extension;

2) One or more of the "specified causes of loss";

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**3)** Breakage of building glass;

**4)** Weight of people or personal property; or

**5)** Weight of rain that collects on a roof.

**(3)** This Coverage Extension does not apply to:

**(a)** A building or structure or any part of a building or structure that is in danger of falling down or caving in;

**(b)** A part of a building or structure that is standing, even if it has separated from another part of the building or structure; or

**(c)** A building or structure that is standing or any part of a building or structure that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(4)** With respect to the following property:

**(a)** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

**(b)** Awnings, gutters and downspouts;

**(c)** Yard fixtures;

**(d)** Outdoor swimming pools;

**(e)** Fences;

**(f)** Piers, wharves and docks;

**(g)** Beach or diving platforms; including their appurtenances;

**(h)** Retaining walls; and

**(i)** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraph **c.(2)(a)** through **c.(2)(d)**, we will pay for "loss" to that property only if:

**(a)** Such "loss" is a direct result of the abrupt collapse of a building or structure insured under this Coverage Part; and

**(b)** The property is Covered Property under this Coverage Part.

**(5)** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building or structure, we will pay for direct "loss" to Covered Property caused by such collapse of personal property only if:

**(a)** The collapse of personal property was caused by a Cause of Loss listed in **c.(2)(a)** through **c.(2)(d)** of this Coverage Extension;

**(b)** The personal property that collapses is inside a building; and

**(c)** The property that collapses is not of a kind listed in Paragraph **c.(4)** above of this Coverage Extension, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **c.(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**(6)** This Coverage Extension does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(7)** This Coverage Extension shall not increase the Limit of Insurance provided in this Coverage Part.

**(8)** The term Covered Cause of Loss includes Collapse as described and limited in Paragraphs **c.(1)** through **c.(7)**.

**d.** <u>Electronic Data</u>

**(1)** This Coverage Extension does not apply to your "stock" of prepackaged software, or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** We will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss that applies to **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property.** To the extent that "electronic data" is not replaced or restored, the "loss" will be valued at the cost of replacement of the me-

dia on which the "electronic data" was stored with blank media of substantially identical type.

**(3)** For the purposes of this Coverage Extension only, Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, that is designed to damage or destroy any part of the system or disrupt its normal operation. However, there is no coverage for "loss" caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system or "electronic data".

**(4)** The most we will pay for all direct "loss" under this Coverage Extension, regardless of the number of "premises" or computer systems involved, is $2,500. This limit is the most we will pay for the total of all direct "loss" arising out of all occurrences that take place in the "coverage term". If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent "loss" sustained in the "coverage term". A balance remaining in a "coverage term" does not carry over to the next "coverage term". With respect to an occurrence which begins in the "coverage term" and continues or results in additional "loss" in a subsequent "coverage term", all "loss" is deemed to be sustained in the "coverage term" in which the occurrence began.

**e.** **Exhibitions, Fairs or Trade Shows**

We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered property of others, while it is located at exhibitions, fairs or trade shows. This Coverage Extension does not apply while Covered Property is in transit to or from the exhibition, fair or trade show.

The most we will pay for "loss" in any one occurrence is $10,000.

The Limit of Insurance provided under this Coverage Extension does not apply per location.

**f.** **Fences**

We will pay for direct "loss" caused by a Covered Cause of Loss to your outdoor fences that are located within 1,000 feet of the "premises" and not otherwise insured as Covered Property in this Coverage Part.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

**g.** **Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage**

**(1)** The coverage described in Paragraphs **g.(2)** and **g.(3)** of this Coverage Extension only apply when the "fungi", wet or dry rot or bacteria is the result of a Covered Cause of Loss that occurs during the "coverage term" and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

**(2)** We will pay for "loss" by "fungi", wet or dry rot or bacteria. As used in this Coverage Extension, the term "loss" means:

**(a)** Direct "loss" to Covered Property caused by "fungi", wet or dry rot or bacteria, including the cost of removal of the "fungi", wet or dry rot or bacteria;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet or dry rot or bacteria; and

**(c)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet or dry rot or bacteria are present.

**(3)** For the coverage described under Paragraph **g.(2)** of this Coverage Extension, the most we will pay for "loss", regardless of the number of claims, is $15,000. This limit is the most we will pay for the total of all "loss" arising out of all occurrences that take place in the "coverage term". With respect to a particular occurrence of "loss" which results in "fungi", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungi", wet or dry rot or bacteria continues to be pre-

sent or active, or recurs, in a subsequent "coverage term".

**(4)** The coverage provided under this Coverage Extension does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in "loss" by "fungi", wet or dry rot or bacteria, and other "loss", we will not pay more, for the total of all "loss" than the applicable Limit of Insurance on the affected Covered Property.

If there is covered "loss" to Covered Property, not caused by "fungi", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Coverage Extension, except to the extent that "fungi", wet or dry rot or bacteria causes an increase in the "loss". Any such increase in the "loss" will be subject to the terms of this Coverage Extension.

**(5)** The terms of this Coverage Extension do not increase or reduce the coverage provided under:

**(a)** **SECTION A. COVERAGE, 5. Coverage Extensions, c. Collapse;**

**(b)** **SECTION A. COVERAGE, 5. Coverage Extensions, s. Water, Other Liquids, Powder or Molten Material Damage**

**(6)** The following **(6)(a)** or **(6)(b)** apply only if "Business Income", "Rental Value", or Extra Expense Coverage applies to the "premises" and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable "Business Income", "Rental Value", or Extra Expense Coverage.

**(a)** If the "loss" which resulted in "fungi", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to "loss" to property caused by "fungi", wet or dry rot or bacteria, then our payment under "Business Income" and/or Extra Expense is limited to the amount of "loss" and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**(b)** If a covered "suspension" of "operations" was caused by "loss" other than "fungi", wet or dry rot or bacteria but remedia-

tion of "fungi", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for "loss" and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**(7)** This Coverage Extension does not apply to lawns, trees, plants or shrubs that are part of any vegetative roof.

**h.** **Glass**

**(1)** If a Covered Cause of Loss occurs to building glass that is Covered Property, we will also pay necessary expenses you incur to:

**(a)** Put up temporary plates or board up openings if repair or replacement of damaged glass is delayed;

**(b)** Repair or replace encasing frames;

**(c)** Remove or replace obstructions (except expenses to remove or replace window displays); and

**(d)** Repair or replace alarm tapes.

**(2)** If you are a tenant at a covered "premises" and:

**(a)** The building you occupy is not Covered Property; and

**(b)** You are legally liable for direct "loss" to the building glass in that building;

such building glass, for the purposes of this Paragraph **h.(2)**, is Covered Property. The most we will pay for "loss" in any one occurrence is $5,000. This building glass is subject to the building deductible as described in **SECTION C. DEDUCTIBLE.**

**(3)** For the purposes of this Coverage Extension only, **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply except as follows:

**(a)** **Exclusion (1)(b) Earth Movement;**

**(b)** **Exclusion (1)(c) Governmental Action;**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(c)** Exclusion (1)(d) Nuclear Hazard;

**(d)** Exclusion (1)(f) War and Military Action;

**(e)** Exclusion (2)(d)1 Wear and tear; and

**(f)** As listed in **Exclusion (2)(d)2**: Rust or other corrosion, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

**i.** **Newly Purchased, Leased or Constructed Property**

**(1)** **Buildings**

If buildings are Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to:

**(a)** Your new buildings or additions while being built on the "premises";

**(b)** Buildings you newly purchase or become newly required to insure by written contract that are:

**1)** Intended for use by you as a warehouse; or

**2)** Similarly used by you as buildings insured under this Coverage Part.

The most we will pay for "loss" in any one occurrence to a building under this Coverage Extension is 1,000,000 for each building.

**(2)** **Business Personal Property**

**(a)** If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to business personal property you newly purchase or are required to insure by written contract:

**1)** While located at buildings described in Paragraph **a.(1)** of this Coverage Extension; or

**2)** While located in a leased building or space therein that you are not required to insure. Such lease must be for a period of 12 consecutive months or longer.

**(b)** Paragraph **a.(2)(a)** of this Coverage Extension does not apply to:

**1)** Any business personal property covered under **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, e. Exhibitions, Fairs, or Trade Shows** or **m. Property Off Premises;**

**2)** Any business personal property that is covered under **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, p. Transportation** or is otherwise considered to be in-transit to or from a "premises".

**3)** Business personal property of others that is temporarily in your possession in the course of installing or performing work on such property, or temporarily in your possession in the course of your manufacturing or wholesaling activities.

The most we will pay for "loss" in any one occurrence to your Business Personal Property under this Coverage Extension is $500,000 at each building.

**(3)** **Period of Coverage**

Coverage provided under this Coverage Extension will end when any of the following first occurs:

**(a)** This policy expires,

**(b)** For buildings described in Paragraph **(1)(a)** of this Coverage Extension, 90 days pass from the date you begin construction on that part of the building that would qualify as Covered Property;

**(c)** For business property described in Paragraph **(1)(b)** and Paragraph **(2)(a)1)**, 90 days after your purchase or lease;

**(d)** For business personal property described in Paragraph **(2)(a)2)**, 90 days from the effective date

of the lease of the building space in the building; or

**(e)** You report values to us.

We will charge you additional premium for values reported from the date you lease or purchase the property, or begin construction on that part of the building that would qualify as Covered Property.

**j.** **Nonowned Building Damage**

If you are a tenant at a covered "premises" and:

**(1)** The building you occupy is not Covered Property; and

**(2)** You are legally liable for direct "loss" to that building;

We will pay for direct "loss" to that building caused by burglary, robbery, theft or attempted theft.

This Coverage Extension does not apply to:

**(1)** Glass, including lettering and ornamentation, and also necessary:

**(a)** Repair or replacement of encasing frames or alarm tapes; and

**(b)** Expenses incurred to board up openings or remove or replace obstruction.

**(2)** Building materials and equipment removed from the "premises".

This Coverage Extension does not apply if you have purchased other insurance in your name on the building you occupy as required by the lease.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $25,000.

**k.** **Outdoor Property**

We will pay for direct "loss" caused by a Covered Cause of Loss to the following types of your Covered Property:

**(1)** Radio antennas, television antennas or satellite dishes (including their lead-in wiring, masts and towers);

**(2)** Trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or part of a vegetative roof), including debris removal ; and

**(3)** If you are a tenant, to your awnings that are attached to a building you occupy;

but only if caused by or resulting from any of the following causes of loss if they are included as Covered Causes of Loss under this Coverage Part:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion;

**(5)** Aircraft; or

**(6)** Falling objects.

We will pay for the debris removal expenses of the above type property that are not your Covered Property if such debris is on your "premises" due to the Covered Causes of Loss described in this Coverage Extension. If you are a tenant, we do not pay debris removal expenses for trees, plants or shrubs owned by the landlord or owner of the building you occupy.

No other coverage for debris removal expenses provided in this Coverage Part applies to this Outdoor Property Coverage Extension.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000, but not more than $1,000 for any one tree, shrub or plant.

**l.** **Personal Effects**

If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to personal effects owned by:

**(1)** You, your officers, or your partners, or if you are a limited liability company, your members or your managers; or

**(2)** Your employees (including temporary and leased employees), including tools owned by your employees that are used in your business. However, employee tools are not covered for theft.

This Coverage Extension does not apply to "money" or "securities".

If theft is included as a Covered Cause of Loss under this Coverage Part, then this Coverage Extension has a $500 per occurrence limitation for direct "loss" by theft.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $10,000.

**m.** **Property Off Premises**

(1) We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered personal property of others, while it is away from the "premises", if it is:

(a) Temporarily at a location you do not own, lease or operate; or

(b) In storage at a location you lease, provided the lease was executed for the first time after the beginning of the current "coverage term".

(2) This Coverage Extension does not apply to Covered Property at exhibitions, fairs, trade show, or in transit.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $10,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**n.** **Signs**

We will pay for direct "loss" caused by a Covered Cause of Loss, including debris removal expense, to signs not otherwise insured by this Coverage Part.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**o.** **Trailers (Nonowned Detached)**

(1) If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to trailers that you do not own, provided that:

(a) The trailer is used in your business;

(b) The trailer is temporarily in your care, custody or control at the "premises"; and

(c) You have a contractual responsibility to pay for "loss" to the trailer.

(2) We will not pay for any direct "loss" that occurs:

(a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

(b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) This insurance is excess over the amount due, whether you can collect on it or not, from any other insurance covering such property.

(4) This Coverage Extension does not apply to any property inside or on the trailer.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

**p.** **Transportation**

We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered personal property of others while it is in or on a vehicle, including loading and unloading of the property.

The most we will pay for "loss" in any one occurrence is $10,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**q.** **Utility Services**

We will pay for:

(1) Direct "loss" to Covered Property at your "premises" except for direct "loss" resulting from the partial or complete failure of Wastewater Removal Services; and

(2) Loss of "Business Income" you sustain and Extra Expenses you incur as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense;**

caused by or resulting from the partial or complete failure of utility services to the "premises".

The partial or complete failure of the utility services listed below must be caused by direct "loss" caused by a Covered Cause of Loss to the following property:

(1) Power Supply Property, meaning the following types of property supplying

electricity, steam or natural gas to the "premises":

**(a)** Utility generating plants;

**(b)** Switching stations;

**(c)** Substations;

**(d)** Transformers; and

**(e)** Transmission, distribution, service, or similar lines, excluding all such overhead lines of any type.

**(2)** Water Supply Property, meaning the following types of property supplying water to the "premises":

**(a)** Pumping stations; and

**(b)** Water mains.

**(3)** Wastewater Removal Property, meaning a utility system for removing wastewater and sewage from the "premises", other than a system designed primarily for draining storm water. The utility property includes sewer mains, pumping stations and similar equipment for moving the effluent to a holding, treatment or disposal facility, and includes such facilities. Coverage under this Coverage Extension does not apply to interruption in service caused by or resulting from a discharge of water or sewage due to heavy rainfall or flooding.

**(4)** Communication Supply Property, meaning property supplying communication services, including service relating to Internet access or access to any electronic, cellular or satellite network; telephone, radio, microwave or television services to the "premises", such as:

**(a)** Communication transmission, distribution, service or similar lines, including fiber optic lines, excluding all such overhead lines of any type;

**(b)** Coaxial cables; and

**(c)** Microwave radio relays, excluding satellites.

This Coverage Extension does not apply to "loss" to "electronic data", including destruction or corruption of "electronic data".

The most we will pay for all direct "loss" and loss of "Business Income" and Extra Expense in any one occurrence is $25,000.

**r.** **Valuable Papers and Records**

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

**(1)** Subject to Paragraph **r.(3)** of this Coverage Extension, we will pay necessary costs you incur to research, replace or restore lost or damaged information on "valuable papers and records" that are your property or the property of others in your care, custody or control; resulting from direct "loss" caused by a Covered Cause of Loss.

**(2)** Coverage does not apply to:

**(a)** Property that cannot be replaced with other property of like kind and quality;

**(b)** Property held as samples or for delivery after sale;

**(c)** Property in storage away from the "premises", except as provided in Paragraph **r.(4)(b)** of this Coverage Extension;

**(d)** Contraband, or property in the course of illegal transportation or trade;

**(e)** "Valuable papers and records" in the form of "electronic data", including the materials on which the "electronic data" is recorded.

**(3)** The most we will pay for "loss" is the least of the following amounts:

**(a)** The cost of reasonably restoring the damaged property to its condition immediately before the "loss";

**(b)** The cost of replacing the damaged property with substantially identical property; or

**(c)** The actual cash value of the damaged property at the time of "loss".

However, we will not pay for "loss" unless or until the damaged property is actually replaced or restored; and then only if such replacement or restoration occurs within 36 months from the date of direct "loss".

**(4)** We will extend coverage to include:

**(a)** **Removal**

If you give us written notice within 30 days of removal of your "valuable papers and records"

because of imminent danger of direct "loss" from a Covered Cause of Loss, we will pay for direct "loss" while they are:

**1)** At a safe place away from your "premises"; or

**2)** Being taken to and returned from that place.

This Removal coverage is included within the Limits of Insurance applicable to this Coverage Extension.

**(b) Away From Your Premises**

We will pay up to $5,000 in any one occurrence, regardless of the number of locations, for direct "loss" caused by a Covered Cause of Loss to "valuable papers and records" while they are away from your "premises".

This Away From Premises limit is in addition to the Limit of Insurance applicable to this Coverage Extension.

**(5) SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension except as follows:

**(a) Exclusion (1)(c) Governmental Action;**

**(b) Exclusion (1)(d) Nuclear Hazard; and**

**(c) Exclusion (1)(f) War and Military Action.**

**(6)** In addition to Paragraph **r.(5)** of this Coverage Extension, we will not pay for direct "loss" resulting from any of the following:

**(a)** Dishonest or criminal acts by:

**1)** You, your partners, employees, directors, trustees or authorized representatives;

**2)** A manager or a member if you are a limited liability company;

**3)** Anyone else with an interest in the records of accounts receivable, or their employees or authorized representatives; or

**4)** Anyone else entrusted with the records of accounts receivable for any purpose.

This Paragraph **r.(6)(a)** applies whether or not such persons are acting alone or in collusion with other persons or such act occurs during the hours of employment.

However, this Paragraph **r.(6)(a)** does not apply to dishonest acts of a carrier for hire or to acts of destruction by your employees. However, theft by employees is still not covered.

**(b)** Errors or omissions in processing or copying. However, we will pay for that portion of direct "loss" caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Part.

**(c)** Electrical or magnetic injury, disturbance or erasure of electronic recordings. But we will pay for direct "loss" caused by lightning.

**(d)** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

The most we will pay for "loss" in any one occurrence is $25,000.

**s. Water Damage, Other Liquids, Powder or Molten Material Damage**

If a covered direct "loss" to which this insurance applies was caused by or resulted from water or other liquid, powder or molten material damage, we will also pay the cost to tear out and replace any otherwise undamaged part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

**SECTION B. LIMITS OF INSURANCE**

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations, except as amended in **SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations, 4. Additional Coverages,** and **5. Coverage Extensions.**

**SECTION C. DEDUCTIBLE**

Except as otherwise provided; in any one occurrence of direct "loss" we will first reduce the amount of "loss" if required by **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance** or **SECTION F. OPTIONAL COVERAGES, 1. Agreed Value.** If the adjusted amount of direct "loss" is less than or equal to the Deductible, we will not pay for that direct "loss". If the adjusted amount of direct "loss" exceeds the Deductible, we will then

**FM 101 05 16**

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

**Page 29 of 40**

subtract the Deductible from the adjusted amount of direct "loss", and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves direct "loss" to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

### 1. Deductible Examples

#### Example No. 1:

(This example assumes there is no coinsurance penalty as outlined in **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**).

Deductible: $250

Limit of Insurance - Bldg. 1: $60,000
Limit of Insurance - Bldg. 2: $80,000

"Loss" to Bldg. 1: $60,100
"Loss" to Bldg. 2: $90,000

The amount of "loss" to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

The Deductible will be subtracted from the amount of "loss" in calculating the "loss" payable for Bldg. 1:

$60,100 - $250 = $59,850 "Loss" Payable - Bldg. 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of "loss" payable for Bldg. 2. "Loss" payable for Bldg. 2 is the Limit of Insurance of $80,000.

Total amount of "loss" payable: $59,850 + 80,000 = $139,850.

#### Example No. 2:

(This example also assumes there is no coinsurance penalty).

The Deductible and Limits of Insurance are the same as those in Example No. 1:

"Loss" to Bldg. 1: $70,000 (Exceeds Limit of Insurance plus Deductible)

"Loss" to Bldg. 2: $90,000 (Exceeds Limit of Insurance plus Deductible)

"Loss" Payable - Bldg. 1: $60,000 (Limit of Insurance)

"Loss" Payable - Bldg. 2: $80,000 (Limit of Insurance)

Total amount of "loss" payable: $140,000.

### 2. Glass Deductible

When direct "loss" to the building you occupy only involves building glass, the Deductible for that "loss" will be the lesser of:

**a.** $500; or

**b.** The Deductible shown in the Declarations for that Covered Property.

## SECTION D. LOSS CONDITIONS

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

### 1. Abandonment

There can be no abandonment of any property to us.

### 2. Appraisal

If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the amount of "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense, and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we still retain our right to deny the claim.

### 3. Duties in the Event of Loss or Damage

**a.** In the event of "loss" to Covered Property, you must see that the following are done in order for coverage to apply:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the "loss". Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the "loss" occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Keep a

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

record of your expenses necessary to protect the Covered Property for consideration in the settlement of the claim. This will not increase your limit of insurance. However, in no event will we pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of "loss" claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the "loss" and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis and permit us to make copies from your books and records.

**(7)** Submit a signed sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**(9)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of "loss" insured by this Coverage Part, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of **SECTION D. LOSS CONDITIONS, 7. Valuation** or any applicable provision that amends or supercedes this valuation condition.

**b.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property, except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.**

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust "losses" with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** Our payment for "loss" to personal property of others and personal effects will only be for the account of the owner of the property.

**g.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**h.** We will pay for insured "loss" within 30 days after we receive the sworn proof of loss if you have complied with all of the terms of this Coverage Part; and

**(1)** We have reached agreement with you on the amount of "loss"; or

**(2)** An appraisal award has been made.

**i.** **Loss Payment - Ordinance or Law.**

With respect to **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law:**

**(1)** **Loss of Use of Undamaged Parts of Building**

When there is a loss in value of an undamaged portion of a building or structure to which this coverage applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

**FM 101 05 16**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 31 of 40**

**(a)** If **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies and the property is repaired or replaced, on the same "premises" or another "premises"; we will not pay more than the lesser of:

**1)** The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same "premises" and to the same height, floor area, style and comparable quality of the original property insured; or

**2)** The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages g. Ordinance or Law** for **Loss of Use of Undamaged Parts of Building** for the building that has suffered "loss".

**(b)** If **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies and the property is not repaired or replaced, or if the Replacement Cost Coverage Option does not apply, we will not pay more than the lesser of:

**1)** The "actual cash value" of the building at the time of "loss"; or

**2)** The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Loss of Use of Undamaged Parts of Building** for the building that has suffered "loss".

**(2) Demolition Costs**

Loss payment for Demolition Costs will be determined as follows:

We will not pay more than the lesser of the following:

**(a)** The amount you actually spend to demolish and clear the site of the "premises"; or

**(b)** The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Demolition Costs** for the building that has suffered "loss".

**(3) Increased Costs of Construction**

Loss payment for **Increased Costs of Construction** will be determined as follows:

**(a)** We will not pay for the increased cost of construction until the property is actually repaired or replaced, at the same "premises" or another location and unless the repairs or replacement are made as soon as reasonably possible after the direct "loss", not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same "premises", or if you elect to rebuild at another "premises", the most we will pay for the **Increased cost of construction** is the lesser of:

**1)** The increased cost of construction at the same "premises"; or

**2)** The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Increased Costs of Construction** for the building that has suffered "loss".

**(c)** If the ordinance or law requires relocation to another location the most we will pay for the increased cost of construction is the lesser of:

**1)** The increased cost of construction at the new location; or

**2)** The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Increased Costs of Construction** for the building that has suffered "loss".

**(4) Proportional Payments**

If the building or structure sustains both direct "loss" that is covered un-

**FM 101 05 16**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 32 of 40**

der this Coverage Part and direct "loss" that is not covered under this Coverage Part; and as a result of the direct "loss" in its entirety you are required to comply with the ordinance or law, we will not pay the full amount of direct "loss" otherwise payable under the terms of **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law**. Instead, we will pay a proportion of such direct "loss"; meaning the proportion that the covered direct "loss" bears to the total direct "loss".

**j.     Loss Determination - Business Income and Extra Expense**

With respect to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense,**

**(1)** The amount of "Business Income" and "Rental Value" "loss" will be determined based on:

**(a)** The Net Income of the business before the direct "loss" occurred;

**(b)** The likely Net Income of the business if no direct "loss" had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(c)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct "loss"; and

**(d)** Other relevant sources of information, including;

**1)** Your financial records and accounting procedures;

**2)** Bills, invoices and other vouchers; and

**3)** Deeds, liens or contracts.

**(2)** The amount of Extra Expense will be determined based on:

**(a)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct "loss"

had occurred. We will deduct from the total of such expenses:

**1)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

**2)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(b)** Necessary expenses that reduce the "Business Income" and "Rental Value" "loss" that otherwise would have been incurred.

**(3) Resumption of Operations**

We will reduce the amount of your:

**(a)** "Business Income" and "Rental Value" "loss", other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or "stock") at the "premises" or elsewhere.

**(b)** Extra Expense "loss" to the extent you can return "operations" to normal and discontinue such Extra Expense.

**(4)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**k.     Party Walls**

A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the "loss" to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the "loss" to the party wall, subject to all applicable policy provisions all other provisions of this **SECTION D. LOSS CONDITIONS, 4. Loss Payment** including:

**(1)** Limit of Insurance shown in the Declarations;

**(2)** **SECTION D. LOSS CONDITIONS, 7. Valuation**; and

**(3)** **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**.

Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of **COMMERCIAL PROPERTY CONDITIONS, I. Transfer Of Rights Of Recovery Against Others To Us** in this Coverage Part.

**5.** **Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6.** **Vacancy**

**a.** **Description of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this Coverage Part is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this Coverage Part is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**1)** Rented to a lessee or sublessee and used by them to conduct their customary operations; or

**2)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b.** **Vacancy Provisions**

If the building where direct "loss" occurs has been vacant for more than 60 consecutive days before that "loss", we will:

**(1)** Not pay for any "loss" caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** Reduce the amount we would otherwise pay for the "loss" by 15% with respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** of this Loss Condition.

**7.** **Valuation**

We will determine the value of Covered Property in the event of direct "loss" as follows:

**a.** At "Actual Cash Value" as of the time of direct "loss", except as provided in **b., c., d.,** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance,** and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at actual cash value even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**d.** Glass at the cost of replacement with safety glazing material if required by law.

**e.** Tenant's Improvements and Betterments at:

**(1)** Replacement Cost of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the "loss" or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**(4)** For the purposes of valuation, tenants' improvements and betterments are not considered to be the personal property of others.

## SECTION E. ADDITIONAL CONDITIONS

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

**1.** <u>Coinsurance</u>

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any "loss" if the value of Covered Property at the time of direct "loss" times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of direct "loss" by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in step **(1)**;

**(3)** Multiply to the total amount of "loss", before the application of any deductible, by the figure determined in step **(2)**; and

**(4)** Subtract the deductible from the figure determined in step **(3)**.

We will pay the amount determined in step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the "loss" yourself.

**Example No. 1 (Underinsurance):**

| | |
|---|---|
| The value of the property is: | $250,000 |
| The coinsurance percentage is: | 80% |
| The Limit of Insurance is: | $100,000 |
| The Deductible is: | $250 |
| The amount of "loss" is: | $40,000 |

Step (1):

$250,000 X 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2):

$100,000 divided by $200,000 = .50

Step (3):

$40,000 X .50 = $20,000

Step (4):

$20,000 - $250 = $19,750.

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**

| | |
|---|---|
| The value of the property is: | $250,000 |
| The coinsurance percentage is: | 80% |
| The Limit of Insurance is: | $200,000 |
| The Deductible is: | $250 |
| The amount of "loss" is: | $40,000 |

Step (1):

$250,000 X 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2):

$200,000 : $200,000 = 1.00

Step (3):

$40,000 X 1.00 = $40,000

Step (4):

$40,000 - $250 = $39,750.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

We will pay no more than $39,750 "loss" in excess of the Deductible. No penalty applies.

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

### Example No. 3:

The values of the property are:

| | |
|---|---|
| Bldg. at Location No. 1: | $75,000 |
| Bldg. at Location No. 2: | $100,000 |
| Personal Property at Location No. 2: | $75,000 |
| | 250,000 |

| | |
|---|---|
| The coinsurance percentage is: | 90% |
| The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is: | $180,000 |
| The Deductible is: | $1,000 |

The amount of "loss" is:

| | |
|---|---|
| Bldg. at Location No. 2: | $30,000 |
| Personal Property at Location No. 2: | $20,000 |
| | $50,000 |

Step (1):

$250,000 X 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2):

$180,000 : $225,000 = .80

Step (3):

$50,000 X .80 = $40,000

Step (4):

$40,000 - $1,000 = $39,000.

We will pay no more than $39,000. The remaining $11,000 is not covered.

### 2. Mortgage Holders

**a.** The term "mortgage holder" includes trustee.

**b.** We will pay for covered "loss" to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply

with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this Coverage Part will then apply directly to the mortgage holder.

**e.** If we pay the mortgage holder for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgage holder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgage holder at least ten days before the expiration date of this policy.

## SECTION F. OPTIONAL COVERAGES

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

1. **Agreed Value**

   a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for direct "loss" to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Limit of Insurance indicated in the most current Statement of Values that applies to this Coverage Part.

   b. If the Agreed Value Optional Coverage is deleted from the policy, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage does not apply.

   c. The terms of this Optional Coverage apply only to "loss" that occurs:

      (1) On or after the effective date of this Optional Coverage; and

      (2) Before the policy expiration date.

   d. This Agreed Value Optional Coverage does not apply to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense.**

2. **Inflation Guard**

   a. The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

   b. The amount of increase will be:

      (1) The Limit of Insurance that applied on the beginning of the current "coverage term" or any other Coverage Part change amending the Limit of Insurance, multiplied by

      (2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), multiplied by

      (3) The number of days since the beginning of the current "coverage term" or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365. In the event of "loss", this number of days ends at the original date of "loss".

      Example:

      If: The applicable Limit of Insurance is: $100,000

      The Annual percentage increase is: 8%

      The number of days since the beginning of the policy year (or last policy change) is: 146

      The amount of increase is $100,000 X .08 X (146/365) = $3,200

3. **Replacement Cost**

   a. Replacement Cost (without deduction for depreciation) replaces "Actual Cash Value" in **SECTION D. LOSS CONDITIONS, 7. Valuation** of this **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**.

   b. This Optional Coverage does not apply to:

      (1) Personal Property of others, except leased personal property as described in **SECTION A. COVERAGE, 1. Covered Property, d.(7).** The valuation of such leased personal property will be based on the amount for which you are liable under the lease, but not to exceed the replacement cost of the leased item.

      (2) Personal effects;

      (3) Contents of a residence;

      (4) Manuscripts;

      (5) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac;

      (6) "Stock" unless the Replacement Cost including "Stock" option is shown in the Declarations; or

      (7) Property, that at the time of "loss":

         (a) Is outdated, or obsolete and is stored or not being used; or

         (b) Has no practical value to you.

   c. You may make a claim for "loss" covered by this insurance on an "Actual Cash Value" basis instead of on a replacement cost basis. In the event you elect to have "loss" settled on an "Actual Cash Value" basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the "loss".

   d. We will not pay on a replacement cost basis for any "loss":

      (1) Until the lost or damaged property is actually repaired or replaced with other property of generally the same construction and used for the same

purpose as the lost or damaged property; and

**(2)** Unless the repairs or replacement have been completed or at least underway within 2 years following the date of "loss".

**e.** We will not pay more for "loss" on a replacement cost basis than the least of:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace, on the same "premises", the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount you actually spend that is necessary to repair or replace the lost or damaged property.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use, or repair of any building or structure except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.**

## SECTION G. DEFINITIONS

**1.** "Actual cash value" means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

**2.** "Business Income" means the:

**a.** Net Income (net profit or loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses sustained, including payroll.

**3.** "Computer programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**4.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 A.M. standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if

any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 A.M. standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**5.** "Electronic data" means information, facts or "computer programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

**6.** "Finished stock" means stock you have manufactured, except "stock" you have manufactured that is held for sale on the "premises" of any retail outlet insured under this Coverage Part.

**7.** "Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**8.** "Loss" means accidental physical loss or accidental physical damage.

**9.** "Money" means:

**a.** Currency, coins and bank notes whether or not in current use; and

**b.** Travelers checks, registered checks and money orders held for sale to the public.

**10.** "Operations" means:

**a.** Your business activities occurring at the "premises"; and

**b.** The tenantability of the "premises", if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

**11.** "Period of restoration" means the period of time that:

**a.** Begins at the time of direct "loss".

**b.** Ends on the earlier of:

**(1)** The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

**c.** "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

**d.** The expiration date of the policy will not cut short the "period of restoration".

**12.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** You are regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** You use, generate or produce the "pollutant".

**13.** "Premises" means the Locations and Buildings described in the Declarations.

**14.** "Rental Value" means "Business Income" that consists of :

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the "premises" described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the "premises" which is occupied by you; and

**b.** Continuing normal operating expenses incurred in connection with that "premises", including:

**(1)** Payroll; and

**(2)** The amount of charges, which are the legal obligation of the tenant(s) but would otherwise be your obligations.

**15.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

**a.** Tokens, tickets, revenue and other stamps whether or not in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which are not of your own issue; but does not include "money". Lottery tickets held for sale are not "securities" or evidences of debt.

**16.** "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the Covered Property into subterranean voids created by the action of water on a limestone or similar rock formation. This does not include:

**a.** The cost of filling sinkholes;

**b.** Sinking or collapse of land into man-made subterranean cavities; or

**c.** The value of the land.

**17.** "Specified causes of loss" means fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; "sinkhole collapse"; volcanic action; falling objects; weight of snow, ice or sleet; and water damage.

**a.** Falling objects does not include "loss" to:

**(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**b.** Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the "premises" and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

But water damage does not include "loss" otherwise excluded under the terms of **BUILDING AND BUSINESS PERSONAL PROPERTY, SECTION A. COVERAGE, 3. Covered Causes of Loss, (g) Water**. Therefore, for example, there is no coverage under this Coverage Part in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Exclusion **(g) Water**, there is no coverage for "loss" caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **18.b.(1)** or **18.b.(2)** of this definition of "Specified causes of loss", such water is not subject to the provisions of Exclusion **(g) Water.**

**18.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

**19.** "Suspension" means:

   **a.** The slowdown or cessation of your business activities; and

   **b.** That a part or all of the "premises" is rendered untenantable.

**20.** "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, card index systems, deeds, drawings, films, maps, mortgages, or proprietary information.

But "valuable papers and records" does not mean "money" or "securities" or "electronic data", including the materials on which the "electronic data" is recorded.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# CinciPlus™

# COMMERCIAL PROPERTY EXPANDED COVERAGE (XC™ ) PLUS ENDORSEMENT

## SUMMARY OF COVERAGE LIMITS

This is a summary of the Coverages and the Limits of Insurance provided by the Commercial Property Expanded Coverage (XC™) Plus Endorsement, **FA 250**, in combination with the Commercial Property Coverage Form, **FM101**, which is included in this policy. **No coverage is provided by this summary.** Refer to endorsement **FA 250** and the Commercial Property Coverage Form, **FM 101**, to determine the scope of your insurance protection.

| **Blanket Coverages:** | **Blanket Coverage Limit:** | Page No. (FA 250): |
|---|---|---|
| | $150,000 in total for all loss arising from all Blanket Coverages arising from a single occurrence, except as noted otherwise in the form. | |
| Accounts Receivable | | 1 |
| Debris Removal | | 8 |
| Electronic Data Processing Property (EDP): | | 3 |
|    Duplicate and Backup Electronic Data | $2,000 Outside of the Blanket Coverage Limit | 3 |
|    Newly Acquired EDP | $10,000 Outside of the Blanket Coverage Limit | 4 |
|    In Transit or Away From Premises | $10,000 Outside of the Blanket Coverage Limit | 4 |
|    Worldwide Laptop Coverage | | 4 |
| Ordinance or Law (Increased Construction Costs and Demolition) | | 6 |
| Peak Season | | 8 |
| Personal Property of Others | | 8 |
| Tenant Move Back Expenses | | 7 |
| Valuable Papers and Records | | 6 |

| **Other Coverages** (not subject to Blanket Coverage Limit): | **Limit of Insurance:** | Page No. (FA 250): |
|---|---|---|
| Brands and Labels | $25,000 | 11 |
| Business Income and Extra Expense: | $100,000 | 1 |
|    Business Income From Dependent Properties | $5,000 (sub-limit, subject to a 24 hour deductible) | 1 |
|    Interruption of Computer Operations | $25,000 (sub-limit, subject to a 24 hour deductible) | 2 |

**FA 4053 04 06**                                                                          **Page 1 of 2**

| Other Coverages<br>(not subject to Blanket Coverage Limit): | Limit of Insurance: | Page No.<br>(FA 250): |
|---|---|---|
| Fine Arts | $25,000 | 5 |
| Fire Department Service Charge | $25,000 | 7 |
| Fire Protection Equipment Recharge | $50,000 | 8 |
| Inflation Guard | 4% on all Building Property referenced in the Declarations | 11 |
| Non-Owned Building Damage: | | 10 |
|     Loss caused by theft, burglary or robbery | Up to the Business Personal Property (BPP) Limit of Insurance | 10 |
|     Loss by any other Covered Cause of Loss | $25,000 or the BPP Limit of Insurance (whichever is less) | 10 |
| Ordinance or Law (other than Increased Construction Costs and Demolition) | Subject to the Building Limit of Insurance | 6 |
| Outdoor Property | $25,000 ($1,000 for any one tree, shrub or plant) | 7 |
| Paved Surfaces | $20,000 | 9 |
| Personal Effects | $25,000 ($1,000 for loss by theft) | 7 |
| Pollutant Clean Up and Removal | $25,000 | 6 |
| Signs | $10,000 | 7 |
| Temperature Change | $5,000 | 9 |
| Underground Property | Subject to the Building Limit of Insurance | 6 |
| Water Backup from Sewers, Drains or Sumps | $10,000 | 7 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO CHANGES - COMMERCIAL PROPERTY

This endorsement modifies insurance provided under the following:

### COMMERCIAL PROPERTY COVERAGE PART

**A.** Paragraphs **c.** and **h.** of the **Loss Payment** Condition are replaced by the following, except as provided in Paragraph **B.**:

    **c.** We will give you notice, within 21 days after we receive a properly executed proof of loss, that we:

        **(1)** Accept your claim;

        **(2)** Deny your claim; or

        **(3)** Need more time to investigate your claim.

    If we need more time to investigate your claim, we will provide an explanation for our need for more time. We will continue to notify you again in writing, at least every 45 days, of the status of the investigation and of the continued time needed for the investigation.

    **h.** Provided you have complied with all the terms of this Coverage Part, we will pay for covered "loss" or damage within:

        **(1)** 10 days after we accept your claim if such acceptance occurs within the first 21 days after we receive a properly executed proof of loss, unless the claim involves an action by a probate court or other extraordinary circumstances as documented in the claim file; or

        **(2)** Five days after we accept your claim if such acceptance occurs more than 21 days after we receive a properly executed proof of loss, and

            **(a)** An appraisal award has been made; or

            **(b)** We have reached an agreement with you on the amount of "loss" that was in dispute.

**B.** Paragraph **A.** does not apply to the **Loss Payment** Loss Condition in the following forms:

    **1.** Business Income (And Extra Expense) Coverage Form;

    **2.** Business Income (Without Extra Expense) Coverage Form;

    **3.** Extra Expense Coverage Form; and

    **4.** Leasehold Interest Coverage Form; and

    **5.** Mortgage Interest Coverage Form.

In the forms listed above, the **Loss Payment** Loss Condition is replaced by the following:

### LOSS PAYMENT

    **a.** We will give you notice, within 21 days after we receive a properly executed proof of loss, that we:

        **(1)** Accept your claim;

        **(2)** Deny your claim; or

        **(3)** Need more time to investigate your claim.

    If we need more time to investigate your claim, we will provide an explanation for our need for more time. We will continue to notify you again in writing, at least every 45 days, of the status of the investigation and of the continued time needed for the investigation.

    **b.** Provided you have complied with all the terms of this Coverage Part, we will pay for covered "loss" or damage within:

        **(1)** 10 days after we accept your claim if such acceptance occurs within the first 21 days after we receive a properly executed proof of loss, unless the claim involves an action by a probate court or other extraordinary circumstances as documented in the claim file; or

        **(2)** Five days after we accept your claim if such acceptance occurs more than 21 days after we receive a properly executed proof of loss, and

             **(a)** An appraisal award has been made; or

             **(b)** We have reached an agreement with you on the amount of "loss" that was in dispute.

**FA 4078 OH 05 17**

Includes copyrighted material of ISO Properties, Inc., with its permission.

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. Concealment, Misrepresentation or Fraud**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

**B. Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of direct "loss", the breach of condition does not exist.

**C. Insurance Under Two or More Coverages**

If two or more of this policy's coverages apply to the same "loss", we will not pay more than the actual amount of the "loss".

**D. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct "loss" occurred.

**E. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**F. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. Other Insurance**

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered "loss". Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same "loss", other than that described in **1.** above, we will pay only for the amount of covered "loss" in excess of the amount due from that other insurance, whether you can collect on it or not. **However, we will not reimburse any deductible or difference between Actual Cash Value and Replacement Cost valuations.** We will not pay more than the applicable Limit of Insurance.

**H. Policy Period, Coverage Territory**

Under this Coverage Part:

1. We cover "loss" commencing:

   a. During the policy period shown in the Declarations; and

   b. Within the coverage territory.

2. The coverage territory:

   a. The United States of America (including its territories and possessions);

   b. Puerto Rico; and

   c. Canada.

**I. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after direct "loss" to impair them. But you may waive your rights against another party in writing:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

1. Prior to a direct "loss" to your Covered Property or Covered Income.

2. After a direct "loss" to your Covered Property or Covered Income only if, at time of direct "loss", that party is one of the following:

   a. Someone insured by this insurance;

b. A business firm:

   (1) Owned or controlled by you; or

   (2) That owns or controls you; or

c. Your tenant.

This will not restrict your insurance.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CINCIPLUS®
# COMMERCIAL PROPERTY XC+®
# (EXPANDED COVERAGE PLUS) ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**The insurance coverage and Limits of Insurance provided by this endorsement are excess of, and apply in addition to, any similar or identical coverage provided by any other endorsement attached to this Coverage Part, or by any other Coverage Part forming a part of the policy of insurance of which this Coverage Part forms a component.**

**SCHEDULE**

| Blanket Coverage Limit | $150,000 |
|---|---|
| Applicable only to those coverages subject to the Blanket Coverage Limit, as indicated in this endorsement | |

**A. Accounts Receivable**

For the purposes of this endorsement only:

1.  In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable,** the second paragraph in **(3)(b) Away From Your Premises** is deleted in its entirety and replaced by the following:

    This limit of insurance for Away From Your Premises coverage is not included within the Blanket Coverage Limit and is separate and in addition to the Blanket Coverage Limit.

2.  In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable,** the last paragraph is deleted in its entirety and replaced by the following:

    The most we will pay for loss in any one occurrence under this Accounts Receivable Coverage Extension is the Blanket Coverage Limit as provided in Section **X** of this endorsement.

**B. Business Income and Extra Expense**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVER-** **AGE, 5. Coverage Extensions, b. Business Income and Extra Expense** is modified as follows:

1.  **Business Income From Dependent Properties**

    a.  For **Business Income from Dependent Properties** only, Paragraph **b.(1)** is deleted in its entirety and replaced by the following:

        **(1) Business Income From Dependent Properties**

        We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to "dependent property" caused by or resulting from any Covered Cause of Loss.

        However, coverage under this endorsement does not apply when the only "loss" to "dependent property" is "loss" to "electronic data", including destruction or corruption of "electronic data". If the "dependent property" sustains "loss" to "electronic data" and other property, coverage under this endorsement will not

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

continue once the other property is repaired, rebuilt, or replaced.

**b. Limit of Insurance for Dependent Properties**

The most we will pay for loss in one occurrence under **Business Income From Dependent Properties** is $5,000. This Limit of Insurance is included within, and is not in addition to, the Limit of Insurance for the "Business Income" and Extra Expense Coverage Extension.

**c. Loss Determination for Dependent Properties**

For **Business Income from Dependent Properties** only, the following is added:

**Resumption of Operations**

We will reduce the amount of your:

(1) "Business Income" loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available

    (a) Source of materials; or

    (b) Outlet for your products.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d. Definitions**

**SECTION G. DEFINITIONS** is amended to include the following definitions:

(1) "Dependent property" means property operated by others whom you depend on to:

    (a) Deliver materials or services to you, or to others for your account (Contributing Locations). But any property which delivers the following services is not a Contributing Location with respect to such services:

        1) Water Supply services;

        2) Power Supply services; or

        3) Communication supply services, including services relating to internet access or access to any electronic network;

    (b) Accept your products or services;

    (c) Manufacture products for delivery to your customers under contract of sale; or

    (d) Attract customers to your business.

(2) The "Period of restoration" Definition, with respect to "dependent property", is replaced by the following:

"Period of restoration" means the period of time that:

    (a) Begins 24 hours after the time of direct "loss" caused by or resulting from any Covered Cause of Loss at the "premises" of the "dependent property"; and

    (b) Ends on the date when the property at the "premises" of the "dependent property" should be repaired, rebuilt or replaced with reasonable speed and similar quality.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

    (a) Regulates the construction, use or repair, or requires the tearing down of any property; or

    (b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this Coverage Part will not cut short the "period of restoration".

The most we will pay is the **Business Income From Dependent Properties** sublimit of insurance. This Limit of Insurance is included within, and is not in addition to, the Limit of Insurance for the "Business Income" and Extra Expense Coverage Extension.

**2. Interruption of Computer Operations**

**a.** For **Interruption of Computer Operations** only, all references to $2,500 in **b. Business Income and Extra**

**Expense**, Paragraph **(7)(c)** are deleted and replaced by $25,000.

**b. BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended as follows:

With respect to a "suspension" of "operations" caused only by an interruption in computer operations due to the destruction or corruption of "electronic data" as described in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data,** Paragraph **a.** of Definition **11.** "Period of restoration" is deleted and replaced by the following:

**a.** Begins 24 hours after the time of direct "loss".

**3. Business Income and Extra Expense Revised Limits of Insurance**

The last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this "Business Income" and Extra Expense Coverage Extension is $100,000.

**C. Electronic Data Processing Property**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended by adding the following:

**Electronic Data Processing Property**

**(1) Covered Property**

You may extend the Coverage provided by this Coverage Part to apply to direct "loss" to Covered Property consisting of your:

**(a)** Data processing equipment;

**(b)** Air conditioning and other electrical equipment, used exclusively with your data processing equipment;

**(c)** Programming documentation and instruction manuals;

**(d)** "Electronic data", but only as excess over what is valid and collectible under **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data**;

**(e)** Media, meaning materials on which "electronic data" is recorded, such as magnetic tapes, disc packs, paper tapes and cards, floppy discs and compact discs used in processing units; and

**(f)** Property of others in your care, custody or control that is similar to property described in **(1)(a)** through **(e)** above.

**(2) Property Not Covered**

This Coverage Extension does not apply to:

**(a)** Accounts, records, documents and other "valuable papers and records" unless they are programming documentation or instruction manuals.

However, we will cover these items once they are converted to "electronic data" form.

**(b)** "Electronic data" or media that cannot be replaced with similar property of equal quality.

**(c)** Your property that you have rented or leased to someone else and that property is not at your "premises".

**(d)** Any machine or apparatus that is used for research, medical, diagnostic, surgical, dental or pathological purposes.

**(e)** "Production equipment".

**(3) Exclusions**

**(a)** **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply except as follows:

   **1)** **Exclusion (1)(c) Governmental Action;**

   **2)** **Exclusion (1)(d) Nuclear Hazard;**

   **3)** **Exclusion (1)(f) War and Military Action;**

   **4)** **Exclusion (2)(b) Delay or Loss of Use;**

   **5)** **Exclusion (2)(d) Miscellaneous Causes of Loss, 1)** Wear and tear;

   **6)** **Exclusion (2)(h) Dishonest or Criminal Acts;**

   **7)** **Exclusion (3)(b) Acts or Decisions**; and

   **8)** **Exclusion (3)(c) Defects, Errors and Omissions.**

**(b)** In addition to Paragraph **(3)(a)** of this Coverage Extension, we will not pay for the following:

Hidden or latent defect, gradual deterioration, and depreciation. However, if direct "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss".

**(4)** **Duplicate and Backup "Electronic Data"**

We will pay for direct "loss" resulting from any of the Covered Causes of Loss to duplicate and backup "electronic data" that you store at a "premises" not described in the Declarations providing such "electronic data" is not covered by another policy. The most we will pay for loss in any one occurrence is $2,000. This Limit of Insurance is in addition to the other limits provided by this Coverage Extension.

**(5)** **Newly Purchased Electronic Data Processing Property**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, i. Newly Purchased, Leased or Constructed Property** is deleted in its entirety and replaced by the following:

**(a)** We will pay for direct "loss" from a Covered Cause of Loss to newly purchased or leased Covered Property described in Paragraph **(1)** of this Coverage Extension while at:

**1)** Locations that are newly purchased or leased;

**2)** Your newly constructed buildings or additions at a "premises"; or

**3)** Any "premises" described in the Declarations.

**(b)** Insurance under this Coverage Extension for such newly acquired property, or Covered Property already insured by this Coverage Extension which is moved to a newly acquired location, will end when any of the following first occurs:

**1)** This Coverage Part expires;

**2)** 90 days pass from the date you acquire your new property or move Covered Property to a newly acquired location; or

**3)** You report values to us.

The most we will pay for loss in any one occurrence is $10,000. This Limit of Insur-

ance is in addition to the other limits provided by this Coverage Extension.

**(6)** **In Transit or Away From Premises**

**SECTION A. COVERAGE, 5. Coverage Extensions, e. Exhibitions, Fairs or Trade shows, m. Property Off Premises** and **p. Transportation** are deleted in their entirety and replaced by the following:

**(a)** You may extend the insurance provided by this Coverage Extension to apply to Covered Property as described in Paragraph **(1):**

**1)** While in or on a vehicle, including loading and unloading; or

**2)** While at a location that is not your "premises".

**(b)** This **In Transit or Away From Premises** coverage does not apply per location.

The most we will pay for loss in any one occurrence is $10,000. This Limit of Insurance is not in addition to the other limits provided by this Coverage Extension.

**(7)** **Worldwide Laptop Coverage**

**(a)** You may extend the insurance provided by this Coverage Extension to apply to your laptops, notebooks and similar highly portable personal computers, including their peripherals and accessories, while such specific Covered Property is:

**1)** In your or your employee's care, custody and control;

**2)** Not located at a "premises" you own or lease; and

**3)** Not located in the coverage territory stated in Paragraph **2.** of the Commercial Property Condition **H. Policy Period, Coverage Territory**, provided that location is not under a United States Department of State trade or travel restriction at the time of "loss".

**(b)** This **Worldwide Laptop Coverage** does not apply per location.

**(8)** **Electronic Data Processing Property Deductible**

**SECTION C. DEDUCTIBLE** is amended to include the following:

We will not pay for direct "loss" in any one occurrence unless the amount of "loss" exceeds the Deductible shown in the Declarations. We will then pay the amount of

"loss" in excess of the Deductible, up to the Limit of Insurance provided by this Coverage Extension.

However, direct "loss" caused by or resulting from any of the following Causes of Loss will have the greater of the Deductible shown in the Declarations or $1,000 as the applicable deductible:

**a.** "Loss" caused by faulty construction, error in design or processing, or service or work upon the data processing system;

**b.** "Loss" resulting in mechanical breakdown, short circuiting, blowout, or other electrical damage, unless caused by lightning; or

**c.** "Loss" caused by or resulting from interruption of power supply, power surge, blackout or brownout.

**(9) Electronic Data Processing Property Valuation**

**SECTION D. LOSS CONDITIONS, 7. Valuation** is deleted in its entirety and replaced by the following:

**7. Valuation of Electronic Data Processing Property**

In the event of direct "loss", we will determine the value of Covered Property as described in Paragraph **(1)** of this Coverage Extension as follows:

**a.** Except for "electronic data":

**(1)** If you repair or replace this Electronic Data Processing property within a reasonable time following the direct "loss", the property will be valued at the full cost of repair or replacement.

However, the most we will pay is the least of the following:

**(a)** The actual cost to repair or restore the property with materials of like kind and quality;

**(b)** The cost of replacing that property with property of similar quality and function;

**(c)** The amount you actually and necessarily spend to repair or replace the property; or

**(d)** The Limit of Insurance applicable to the property.

**(2)** If you do not repair or replace this property within a reasonable time following a direct "loss", the most we will pay will be the least of the following:

**(a)** "Actual cash value" of the property;

**(b)** "Actual cash value" of repairs with material of like kind and quality; or

**(c)** The Limit of Insurance applicable to the property.

We reserve the right to repair or replace the property or to pay for the property in money.

In the event of "loss", the value of property will be determined at the time of direct "loss".

**b.** For "electronic data":

We will not pay more than the actual reproduction costs of your "electronic data". If you do not replace or reproduce your "electronic data" following the "loss", the most we will pay is the cost of blank media as described in Paragraph **C.(1)(e)** of this Coverage Extension.

**(10) Electronic Data Processing Property Additional Definition**

The following definition is added to **SECTION G. DEFINITIONS** of the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM:**

"Production equipment" means any machinery and related components, including any integrated or dedicated computer system, which is used, or can be used, to produce or process other tangible property.

The most we will pay in total for all loss in any one occurrence for coverages described in Paragraphs **C.(1), (6),** and **(7)** is the Blanket Coverage Limit as provided in Section **X** of this endorsement.

**D. Fine Arts**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

### Fine Arts

(1) We will pay for direct "loss" to paintings, etchings, pictures, tapestries, art glass windows, and other bona fide works of art of rarity, historical value, or artistic merit. The direct "loss" must be caused by or result from a Covered Cause of Loss.

(2) **SECTION D. LOSS CONDITIONS, 7. Valuation** is deleted in its entirety and replaced by the following:

We will determine the value of Covered Property in the event of direct "loss" at the market value at the time of "loss".

The most we will pay for loss in any one occurrence under this Coverage Extension is $25,000.

### E. Ordinance or Law

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law,** the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under Paragraph **(a) Loss of Use of Undamaged Parts of the Building** is the Limit of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** as applicable to the covered building or structure sustaining direct "loss". This Coverage is included within, and not in addition to, that applicable Limit of Insurance.

The most we will pay for all loss in any one occurrence under Paragraph **(b) Demolition Costs** and Paragraph **(c) Increased Costs of Construction** is the Blanket Coverage Limit as provided in Section **X** of this endorsement per building or structure sustaining direct "loss". This is an additional Limit of Insurance applicable to the building or structure sustaining loss.

### F. Pollutant Clean Up and Removal

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, h. Pollutant Clean Up and Removal**, the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for each "premises" under this Pollutant Clean Up and Removal Coverage Extension is $25,000. This limit includes the sum of all covered expenses arising out of

Covered Causes of Loss during each "coverage term". This is in addition to the Limits of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS**.

### G. Underground Property

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

### Underground Property

(1) We will pay for direct "loss" resulting from any of the Covered Causes of Loss to:

(a) Foundations of covered buildings, structures, machinery or boilers, if their foundations are below the lowest basement floor or the surface of the ground if there is no basement; and

(b) Underground pipes, flues or drains if they are attached to Covered Property.

(2) **SECTION A. COVERAGE, 2. Property Not Covered, g. Foundations** is deleted in its entirety and replaced by the following:

g. **Foundations**

Foundations of buildings, structures, machinery or boilers, if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement;

except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions.**

(3) **SECTION A. COVERAGE, 2. Property Not Covered, n. Underground Pipes, Flues or Drains** is deleted in its entirety and replaced by the following:

n. **Underground Pipes, Flues or Drains**

Underground pipes, flues or drains, except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions.**

The most we will pay for loss in any one occurrence is the Limit of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** as applicable to the covered building or structure incurring direct "loss". This Coverage is included within, and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

not in addition to, that applicable Limit of Insurance.

### H. Valuable Papers and Records

For the purposes of this endorsement only:

1. In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records**, the second paragraph in **(4)(b) Away From Your Premises** is deleted in its entirety and replaced by the following:

   This limit of insurance for **Away From Your Premises** coverage is not included within the Blanket Coverage Limit and is separate and in addition to the Blanket Coverage Limit.

2. In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records,** the last paragraph is deleted in its entirety and replaced by the following:

   The most we will pay for loss in any one occurrence under this Valuable Papers and Records Coverage Extension is the Blanket Coverage Limit as provided in Section X of this endorsement.

### I. Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems

For the purposes of this endorsement only:

(1) **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(g) Water,** Paragraph **3)** is deleted in its entirety and replaced by the following:

   3) Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems,** water that has entered and then backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment; or

(2) **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(g) Water,** Paragraph **5)** is deleted in its entirety and replaced by the following:

   5) Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems,** waterborne

material carried or otherwise moved by any of the water referred to in Paragraph **1), 3)** or **4),** or material carried or otherwise moved by mudslide or mudflow as described in Paragraph **(g)2).**

(3) **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

   **Water Backup Discharged From Sewers, Drains, Septic or Sump Pump Systems**

   We will pay for "loss" caused by or resulting from water or waterborne material that has entered and then backs up through and is discharged from a sewer, drain (including roof drains and related fixtures), septic system, sump pump system or related equipment.

(4) **SECTION C. DEDUCTIBLE** is amended by adding the following:

   **Water Backup Deductible**

   We will not pay for "loss" in any one occurrence caused by or resulting from water or waterborne material which backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment, until the amount of "loss" exceeds the Deductible shown in the Declarations, or $1,000, whichever is greater. We will then pay the amount of "loss" in excess of that deductible, up to the applicable limit indicated in Paragraph **(5)** of this Coverage Extension.

(5) The most we will pay for loss in any one occurrence under this Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems Coverage Extension is $10,000, including any "Business Income", "Rental Value" and Extra Expense loss.

### J. Fire Department Service Charge

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, c. Fire Department Service Charge** is deleted in its entirety and replaced by the following:

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $25,000 in any one occurrence for Fire Department Service Charge for your liability, which is determined prior to direct "loss", for fire department service charges:

(1) Assumed by contract or agreement; or

**(2)** Required by local ordinance.

This Coverage is in addition to the Limits of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** and applies per location. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

### K. Signs

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, n. Signs**, the second paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this Sign Coverage Extension is $10,000.

### L. Outdoor Property

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, k. Outdoor Property**, the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this Outdoor Property Coverage Extension is $25,000, but not more than $1,000 for any one tree, shrub, or plant.

### M. Personal Effects

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, l. Personal Effects**, the last two paragraphs are deleted in their entirety and replaced by the following:

If theft is included as a Covered Cause of Loss under this Coverage Part, then this Personal Effects Coverage Extension has a $1,000 per occurrence limitation for direct "loss" by theft.

The most we will pay for loss in any one occurrence under this Personal Effects Coverage Extension is $25,000.

### N. Tenant Move Back Expenses

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

### Tenant Move Back Expenses

**(1)** We will reimburse you for expenses you pay for Covered Move Back Costs of your tenants who temporarily vacate a portion of the building at a "premises". The vacancy must have occurred while the portion of the building rented by your tenant could not be occupied due to direct "loss" to your Covered Property caused by or resulting from a Covered Cause of Loss during the "coverage term". The move back must be completed within 60 calendar days after the portion of the building rented by your tenant has been repaired or rebuilt and is ready for occupancy.

**(2)** Covered Move Back Costs means only documented, reasonable and necessary costs of:

**(a)** Packing, insuring and transporting business personal property;

**(b)** Re-establishing electric utility and communication services, less refunds from discontinued services;

**(c)** Assembling and setting up fixtures and equipment; or

**(d)** Unpacking and re-shelving stock and supplies.

**(3)** If your tenants have valid and collectible insurance for Covered Move Back Costs, we will pay only for the amount of Covered Move Back Costs in excess of the amount payable from such other insurance.

The most we will pay for loss in any one occurrence under this Tenant Move Back Expenses Coverage Extension is the Blanket Coverage Limit as provided in Section **X** of this endorsement.

### O. Peak Season

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

### Peak Season

**1.** In the event that the limit of insurance stated in the Declarations for Business Personal Property is insufficient to fully insure a covered "loss" due to a Peak Season Demand for your inventory, we will pay up to the Blanket Coverage Limit as provided in Section **X** of this endorsement.

**2.** Peak Season Demand means a temporary (90 consecutive days or less) increase in your inventory to meet a seasonal demand as verified by:

**a.** Your previous inventory records for that historical period of time; and

**b.** Custom and practice in your industry.

**P. Personal Property of Others**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

<u>Personal Property of Others</u>

In the event that the limit of insurance stated in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** for Business Personal Property is insufficient to fully insure a covered "loss" to both your Covered Personal Property and property described in Paragraph **(8)** of **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property,** we will pay up to the Blanket Coverage Limit in any one occurrence as provided in Section **X** of this endorsement for such property.

**Q. Debris Removal**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

In the event that the limits of insurance stated in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, b. Debris Removal** are insufficient to fully cover a "loss" insured thereunder, we will pay up to the Blanket Coverage Limit in any one occurrence as provided in Section **X** of this endorsement.

**R. Fire Protection Equipment Recharge**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, d. Fire Protection Equipment Recharge,** the last paragraph is deleted and replaced by the following:

The most we will pay for loss in any one occurrence under this Fire Protection Equipment Recharge Coverage Extension is $50,000. This Coverage is in addition to the Limits of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

**S. Paved Surfaces**

For the purposes of this endorsement only:

1. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered, i. Paved Surfaces** is deleted in its entirety and replaced by the following:

   Except as provided in **4. Additional Coverages, Paved Surfaces,** bridges, roadways, walks, patios or other paved surfaces.

2. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended to include the following:

   **Paved Surfaces**

   We will pay for direct "loss" resulting from any of the Covered Causes of Loss to bridges, roadways, walks, patios or other paved surfaces.

   The most we will pay for loss in any one occurrence under this Paved Surfaces Coverage Extension is $25,000.

**T. Temperature Change**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

<u>Temperature Change</u>

(1) **Coverage**

   (a) **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 1. Covered Property** is deleted in its entirety and replaced by the following:

   Covered Property means "perishable stock" located in a building at a "premises".

   (b) **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered** is deleted in its entirety and replaced by the following:

   Covered Property does not include:

   <u>**"Perishable Stock" Not in Buildings**</u>

   "Perishable stock" located on buildings, in or on vehicles, or otherwise in the open.

(2) **Covered Causes of Loss**

   **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, a. Covered Causes of Loss** is deleted in its entirety and replaced by the following:

   a. **Covered Causes of Loss**

   Covered Causes of Loss means direct "loss" from "temperature change" to Covered Property unless "loss" is

excluded or limited in this Coverage Part.

**(3) Excluded Causes of Loss**

**(a) BUILDING AND PERSONAL PROP-ERTY COVERAGE FORM SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension, except as follows:

**(1) Exclusion (1)(b) Earth Movement;**

**(2) Exclusion (1)(c) Governmental Action;**

**(3) Exclusion (1)(d) Nuclear Hazard;**

**(4) Exclusion (1)(f) War and Military Action;**

**(5) Exclusion (1)(g) Water**; or

**(6) Exclusion (1)(h) "Fungi", Wet Rot, Dry Rot, and Bacteria.**

**(b)** In addition to Paragraph **(3)(a)** of this Coverage Extension, we will not pay for direct "loss" caused by or resulting from any of the following:

**1)** The disconnecting of any heating, refrigerating, cooling or humidity control system from the source of its power;

**2)** The deactivation of electrical power caused by the manipulation of any switch or other device (on "premises") used to control the flow of electrical power or current;

**3)** The inability of an Electrical Utility Company or other power source to provide sufficient power due to:

**a)** Lack of fuel; or

**b)** Governmental order;

**4)** The inability of a power source at the "premises" to provide sufficient power due to the lack of generating capacity to meet demand; or

**5)** Breaking of any glass that is a permanent part of any heating, refrigeration, cooling or humidity control unit.

**(4) Limits of Insurance**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION B. LIMITS OF INSURANCE** is deleted in its entirety and replaced by the following:

**SECTION B. LIMITS OF INSURANCE**

**a.** The most we will pay for all direct "loss" in any one occurrence under this Temperature Change Coverage Extension is $5,000, including any "Business Income", "Rental Value", and Extra Expense loss.

**b.** The Limit of Insurance for Temperature Change is not an additional amount of insurance and will not increase the Limit of Insurance shown in the Declarations for Business Personal Property or "stock".

**(5) Duties in the Event of Loss**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 3. Duties in the Event of Loss or Damage, a.(2)** is deleted in its entirety and replaced by the following:

**(2)** All claims under this Temperature Change Coverage Extension should be reported immediately upon occurrence. Include a description of the damaged "perishable stock". All damaged "perishable stock" must be available for inspection and verification.

**(6) Coinsurance**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to the coverage provided by this endorsement.

**(7) Definitions**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following definitions:

"Perishable stock" means personal property:

**a.** Preserved and maintained under controlled conditions; and

**b.** Susceptible to "loss" if the controlled conditions change.

"Temperature change" means:

**a.** The fluctuation or total interruption of electrical power, either on or off "premises", resulting from conditions beyond your control.

**b.** Mechanical breakdown or mechanical failure of any refrigerating or cooling

apparatus or equipment (on "premises") including the blowing of any fuse, fuses, or circuit breakers, only while such equipment is at the "premises".

**c.** Contamination by refrigerant.

**d.** Damage due to the freezing of "perishable stock" that is not meant to be frozen resulting from the faulty operation of any stationary heating plant, when such "perishable stock" is contained within a building at the "premises".

**U. Nonowned Building Damage**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, j. Nonowned Building Damage** is deleted in its entirety and replaced by the following:

If you are a tenant, you may extend the insurance provided by this Coverage Part for Business Personal Property to direct "loss" that occurs to the building at a "premises" you occupy but do not own.

This Coverage Extension applies only if your lease makes you legally responsible for that part of the building sustaining "loss".

This Coverage Extension does not apply to:

**(1)** Glass, including lettering and ornamentation, and also necessary:

**(a)** Repair or replacement of encasing frames or alarm tapes; and

**(b)** Expenses incurred to board up openings or remove or replace obstruction.

**(2)** Building materials and equipment removed from the "premises".

The most we will pay for loss in any one occurrence under this Nonowned Building Damage Coverage Extension is:

**(1)** The actual "loss" sustained up to the applicable Limit of Insurance for Business Personal Property for direct "loss" caused by theft, burglary or robbery, or the attempt of the foregoing; or

**(2)** The applicable Limit of Insurance for Business Personal Property or $25,000; whichever is less, for "loss" caused by any

other Covered Cause of Loss, not referenced in Paragraph **U.(1)** above.

**V. Inflation Guard**

For the purposes of this endorsement only, the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** is amended to show 4% for Inflation Guard in the OPTIONAL COVERAGES - Inflation Guard column for each scheduled Building Property. If an Inflation Guard percentage is already indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** for that Building property, this percentage is excess of that Inflation Guard percentage for that Building property.

**W. Brands and Labels**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Brands and Labels**

If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value. If so, you may:

**(1)** Stamp "salvage" on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

**(2)** Remove the brands or labels, if doing so will not physically damage the merchandise. You must re-label the merchandise or its containers to comply with the law.

The most we will pay for loss in any one occurrence under this Brands and Labels Coverage Extension is $25,000.

**X. Blanket Coverage Limit**

We will pay up to the Limit of Insurance stated in the Schedule of this endorsement in total in any one occurrence for the sum of all "loss" insured under coverages provided in this endorsement which are subject to the Blanket Coverage Limit. You may apportion this Limit among these coverages as you choose.

# THE CINCINNATI INSURANCE COMPANY

**A Stock Insurance Company**

# COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: **EPP 049 46 35**

Named Insured is the same as it appears in the Common Policy Declarations

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $1,000,000 | |
| GENERAL AGGREGATE LIMIT | $2,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 | |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 | ANY ONE PERSON OR ORGANIZATION |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | | ANY ONE |
| $100,000 limit unless otherwise indicated herein: | $ | PREMISES |
| MEDICAL EXPENSE LIMIT | | |
| $5,000 limit unless otherwise indicated herein: | $ | ANY ONE PERSON |

| CLASSIFICATION | CODE NO. | PREMIUM BASE | | RATE | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|---|
| | | A - Area B - Payroll C - Gross Sales D - Units E - Other | | Products / Completed Operations | All Other | Products / Completed Operations | All Other |
| LOC. 1 - OH | | | | | | | |
| MUSIC STORES | 16676 | C | 125,000 | .059 | .309 | 7 | 39 |
| RESTAURANTS | 16941 | C | 50,000 | .635 | 1.954 | 32 | 98 |
| RECORDING STUDIOS INCL PROD AND/OR COMP OP | 47103 | A | 500 | | 24.233 | | 12 |
| PREMIUM TO MEET COVERAGE PART MINIMUM | | | | | | | 312 |

The General Liability Coverage Part is subject to an annual minimum premium.

TOTAL ANNUAL PREMIUM  $ 500

## FORMS AND / OR ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART:

| | | |
|---|---|---|
| GA101 | 12/04 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG2407 | 01/96 | PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED |
| GA216OH | 03/10 | OHIO LIABILITY COVERAGE ENHANCEMENT |
| GA3024 | 05/14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Coverage Part. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS**.

## SECTION I - COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS**.

    No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**.

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

        (3) Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, you did not know, per Paragraph **1.d.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part.

    c. "Bodily injury" or "property damage" which:

        (1) Occurs during the "coverage term"; and

        (2) Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have occurred;

    includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

    d. You will be deemed to know that "bodily injury" or "property damage" has occurred at the earliest time when any "authorized representative":

        (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

        (3) First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

        (4) Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

        (5) Becomes aware, or reasonably should have become aware, of a

condition from which "bodily injury" or "property damage" is substantially certain to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. When a claim for such "bodily injury" or "property damage" is made, we will defend that claim provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured sustained in the "workplace";

(2) An "employee" of the insured arising out of the performance of duties related to the conduct of the insured's business; or

(3) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraphs (1) or (2) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollutant**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, Paragraph (a) does not apply to:

1) "Bodily injury" to any person injured while on any premises, site or location owned or occupied by, or rented or loaned to, you provided:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**a)** The injury is caused by the inadequate ventilation of vapors;

**b)** The person injured is first exposed to such vapors during the policy period; and

**c)** Within 30 days of such first exposure, the person injured is clinically diagnosed or treated by a physician for the medical condition caused by the exposure to such vapors. However, Paragraph **c)** does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

This exception **1)** shall apply only to Named Insureds; we shall have no duty to defend or pay damages for any person or organization that is not a Named Insured. However, this paragraph does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

For the purpose of the exception granted in Paragraph **1)** only, vapors means any gaseous or airborne irritant or airborne contaminant, including smoke, fumes, vapor or soot, but excluding asbestos, which is discharged, dispersed, emitted, released or escapes from materials, machinery or equipment used in the service or maintenance of the premises. Vapors does not mean any gaseous or airborne irritants or contaminants used in a manufacturing process or which is the product or by-product of any manufacturing process;

**2)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor, and the owner or lessee of such premises, site or location has been added to this Coverage Part as an additional insured with respect to your ongoing operations or "your work" performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**3)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**1)** Any insured; or

**2)** Any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, Paragraph **(d)** does not apply to:

**1)** "Bodily injury" or "property damage" arising out of the discharge, dispersal, seepage, migration, release, es-

cape or emission of fuels, lubricants or other operating fluids, or exhaust gases, which are needed to perform, or are the result of, the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids, or exhaust gases, escape, seep or migrate, or are discharged, dispersed, released or emitted from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids, or exhaust gases, escape, seep or migrate, or are discharged, dispersed, released or emitted with the intent to cause "bodily injury" or "property damage" or with the knowledge that "bodily injury" or "property damage" is substantially certain to occur, or if such fuels, lubricants or other operating fluids, or exhaust gases, are brought on or to the premises, site or location with such intent to escape, seep or migrate, or be discharged, dispersed, released or emitted as part of the operations being performed by such insured, contractor or subcontractor;

**2)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**3)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the op-

erations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, Paragraphs **(2)(a)** and **(b)** do not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by

governmental authority in hindering or defending against any of these.

**j. Damage to Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of an insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire or explosion) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days, for which the amount we will pay is limited to the Damage To Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal and Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Asbestos**

"Bodily injury" or "property damage" arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

**q. Employment-Related Practices**

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**r. Additional Insured Prior Knowledge**

An additional insured added by attachment of an endorsement to this Coverage Part that is seeking coverage for a claim or "suit", if that additional insured knew, per the following paragraph, that "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, prior to the "coverage term" in which such "bodily injury" or "property damage" occurs or begins to occur.

An additional insured added by attachment of an endorsement to this Coverage Part will be deemed to have known that "bodily injury" or "property damage" has occurred or has begun to occur at the earliest time when that additional insured, or any one of its owners, members, partners, managers, executive officers, "employees" assigned to manage that additional insured's insurance program, or "employees" assigned to give or receive notice of an "occurrence", "personal and advertising injury" offense, claim or "suit":

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

**(3)** First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

**(4)** Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury" or "property damage" is substantially certain to occur.

**s. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

**t. Distribution of Material in Violation of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **q.** do not apply to "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner, for which the amount we will pay is limited to the Damage to Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS**.

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**.

**b.** This insurance applies to "personal and advertising injury" only if:

**(1)** The "personal and advertising injury" is caused by an offense arising out of your business; and

**(2)** The "personal and advertising injury" offense was committed in the "coverage territory" during the policy period; and

**(3)** Prior to the "coverage term" in which the "personal and advertising injury" offense is committed, you did not know, per Paragraph **1.d.** below, that the offense had been committed or had begun to be committed, in whole or in part.

**c.** "Personal and advertising injury" caused by an offense which:

**(1)** Was committed during the "coverage term"; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(2)** Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have been committed;

includes any continuation, change or resumption of that offense after the end of the "coverage term" in which it first became known by you.

**d.** You will be deemed to know that a "personal and advertising injury" offense has been committed at the earliest time when any "authorized representative":

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury";

**(3)** First observes, or reasonably should have first observed, the offense that caused the "personal and advertising injury";

**(4)** Becomes aware, or reasonably should have become aware, by any means, other than as described in **(3)** above, that the offense had been committed or had begun to be committed; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "personal and advertising injury" is substantially certain to occur.

## 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation of Rights of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior to Coverage Term**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the later of the following:

**(1)** The inception of this Coverage Part; or

**(2)** The "coverage term" in which insurance coverage is sought.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" is caused by or arises out of an offense committed subsequent to the execution of the contract or agreement. When a claim for such "personal and advertising injury" is made, we will defend that claim, provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

**f. Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality or Performance of Goods - Failure to Conform to Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, pat-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

GA 101 12 04     Page 8 of 22

ent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j.  Insureds in Media and Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **17. a., b.** and **c.** of "personal and advertising injury" under **SECTION V - DEFINITIONS**.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k.  Electronic Chatrooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board any insured hosts, owns, or over which any insured exercises control.

**l.  Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m.  Employment Related Practices**

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation

or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**n.  Pollutant**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" at any time.

**o.  Pollutant-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**p.  Asbestos**

"Personal and advertising injury" arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

**q.  Additional Insured Prior Knowledge**

An additional insured added by attachment of an endorsement to this Coverage Part that is seeking coverage for a claim or "suit", if that additional insured knew, per the following paragraph, that a "personal and advertising injury" offense had been committed or had begun to be committed, in whole or in part, prior to the "coverage term" in which such offense

was committed or began to be committed.

An additional insured added by attachment of an endorsement to this Coverage Part will be deemed to have known that a "personal and advertising injury" offense has been committed or has begun to be committed at the earliest time when that additional insured, or any one of its owners, members, partners, managers, executive officers, "employees" assigned to manage that additional insured's insurance program, or "employees" assigned to give or receive notice of an "occurrence", "personal and advertising injury" offense, claim or "suit":

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury";

**(3)** First observes, or reasonably should have first observed, the offense that caused the "personal and advertising injury";

**(4)** Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that the "personal and advertising injury" offense had been committed or had begun to be committed; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "personal and advertising injury" is substantially certain to occur.

**r. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**s. Distribution of Material in Violation of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C. MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within three years of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury on Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation and Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletic Activities**

To any person injured while officiating, coaching, practicing for, instructing or participating in any physical exercises or games, sports, or athletic contests or exhibitions of an athletic or sports nature.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**.

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we become obligated to pay and which falls within the applicable limit of insurance. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**SECTION II - WHO IS AN INSURED**

1. If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

    **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by

you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by; or

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by,

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Insurance under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2. a.** The General Aggregate Limit is the most we will pay for the sum of:

**(1)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

**(2)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**(3)** Damages under **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY.**

This General Aggregate Limit will not apply if either the Location General Aggre-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

gate Limit of Insurance, Paragraph **2.b.**, or the Construction Project General Aggregate Limit of Insurance, Paragraph **2.c.** applies.

b. A separate Location General Aggregate Limit of Insurance, equal to the amount of the General Aggregate Limit shown in the Declarations, shall apply to each location owned by, or rented or leased to you and is the most we will pay for the sum of:

(1) Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

(2) Medical expenses under **COVERAGE C. MEDICAL PAYMENTS,**

which can be attributed to operations at only a single location owned by, or rented or leased to you.

c. A separate Construction Project General Aggregate Limit of Insurance, equal to the amount of the General Aggregate Limit shown in the Declarations, shall apply to each construction project and is the most we will pay for the sum of:

(1) Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

(2) Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

which can be attributed only to ongoing operations and only at a single construction project.

d. Only for the purpose of determining which General Aggregate Limit of Insurance, **2.a., 2.b.,** or **2.c.**, applies:

(1) Location means premises involving the same or connecting lots, or premises, whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

(2) Construction project means a location you do not own, rent or lease where ongoing improvements, alterations, installation, demolition or maintenance work is performed by you or on your behalf. All connected ongoing improvements, alterations, installation, demolition or maintenance work performed by you or on

your behalf at the same location for the same persons or organizations, no matter how often or under how many different contracts, will be deemed to be a single construction project.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.a.** above, the Personal and Advertising Injury Limit is the most we will pay under **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2. or 3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**; and

b. Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage to Premises Rented to You Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire or explosion, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under **COVERAGE C. MEDICAL PAYMENTS** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties in the Event of Occurrence, Offense, Claim or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or

a "personal and advertising injury" of-fense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occur-rence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occur-rence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date re-ceived; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investiga-tion or settlement of the claim or de-fense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of in-jury or damage to which this insur-ance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any ex-pense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to re-cover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable

under the terms of this Coverage Part or that are in excess of the applicable limit of insur-ance. An agreed settlement means a settle-ment and release of liability signed by us, the insured and the claimant or the claimant's le-gal representative.

**4. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorse-ments of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became ef-fective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**5. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** or **COV-ERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is pri-mary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Cover-age, Builder's Risk, Installation Risk or similar insurance for "your work";

**(b)** That is Fire or Explosion insur-ance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to

premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g. Aircraft, Auto or Watercraft**.

**(2)** Any other primary insurance available to the insured covering liability for damages arising out of the premises or operations, or the products and completed operations, for which the insured has been added as an additional insured by attachment of an endorsement.

**(3)** Any other insurance:

**(a)** Whether primary, excess, contingent or on any other basis, except when such insurance is written specifically to be excess over this insurance; and

**(b)** That is a consolidated (wrap-up) insurance program which has been provided by the prime contractor/project manager or owner of the consolidated project in which you are involved.

When this insurance is excess, we will have no duty under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** or **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance

shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**6. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If:

**(1)** The earned premium is less than the deposit premium, we will return the excess to the first Named Insured; or

**(2)** The earned premium is greater than the deposit premium, the difference will be due and payable to us by the first Named Insured upon notice from us.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**7. Representations**

By accepting this Coverage Part, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this Coverage Part in reliance upon your representations.

**8. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**9. Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**10. Two or More Coverage Forms or Policies Issued by Us**

If this Coverage Part and any other Coverage Form, Coverage Part or policy issued to you by us or any company affiliated with us apply to the same "occurrence" or "personal and advertising injury" offense, the aggregate maximum limit of insurance under all the Coverage Forms, Coverage Parts or policies shall not exceed the highest applicable limit of insurance under any one Coverage Form, Coverage Part or policy. This condition does not apply to any Coverage Form, Coverage Part or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Part.

**11. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast, telecast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. "Advertisement" includes a publicity article. For purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

**2.** "Authorized representative" means:

**a.** If you are designated in the Declarations as:

**(1)** An individual, you and your spouse are "authorized representatives".

**(2)** A partnership or joint venture, your members, your partners, and their spouses are "authorized representatives".

**(3)** A limited liability company, your members and your managers are "authorized representatives".

**(4)** An organization other than a partnership, joint venture or limited liability company, your "executive officers" and directors are "authorized representatives". Provided you are not a publicly traded organization, your stockholders are also "authorized representatives".

**(5)** A trust, your trustees are "authorized representatives".

**b.** Your "employees":

**(1)** Assigned to manage your insurance program; or

**(2)** Responsible for giving or receiving notice of an "occurrence", "personal and advertising injury" offense, claim or "suit";

are also "authorized representatives".

**3.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**4.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at

12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**6.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication,

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement to which we agree.

**7.** "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**8.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**9.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**10.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**11.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**12.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal and advertising injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury", "property damage" or "personal and advertising injury" arising out of construction or demolition operations, within 50 feet of any rail-

road property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection, architectural or engineering activities;

**(4)** That indemnifies an advertising, public relations or media consulting firm for "personal and advertising injury" arising out of the planning, execution or failure to execute marketing communications programs. Marketing communications programs include but are not limited to comprehensive marketing campaigns; consumer, trade and corporate advertising for all media; media planning, buying, monitoring and analysis; direct mail; promotion; sales materials; design; presentations; point-of-sale materials; market research; public relations and new product development;

**(5)** Under which the insured, if an advertising, public relations or media consulting firm, assumes liability for "personal and advertising injury" arising out of the insured's rendering or failure to render professional services, including those services listed in Paragraph **(4)**, above;

**(6)** That indemnifies a web-site designer or content provider, or Internet search, access, content or service provider for injury or damage arising out of the planning, execution or failure to execute Internet services. Internet services include but are not limited to design, production, distribution, maintenance and administration of web-sites and web-banners; hosting web-sites; registering domain names; registering with search engines; marketing analysis; and providing access to the Internet or other similar networks; or

**(7)** Under which the insured, if a web-site designer or content provider, or Internet search, access, content or service provider, assumes liability for injury or damage arising out of the insured's rendering or failure to render Internet services, including those listed in Paragraph **(6)**, above.

**13.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**14.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**15.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to

permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**16.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**18.** "Pollutant" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** The insured uses, generates or produces the "pollutant".

**19.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed; or

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a schedule, states that products-completed operations are included.

**20.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

**21.** "Suit" means a civil proceeding in which money damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

**22.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**23.** "Volunteer worker" means a person who is not your "employee", and who donates his or

her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**24.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of "occurrence".

**25.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**26.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

# NUCLEAR ENERGY LIABILITY EXCLUSION
## (Broad Form)

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under this Coverage Part is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the insured is, or had this Coverage Part not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured, or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by

an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this exclusion:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**A.** Any "nuclear reactor";

**B.** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**C.** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**D.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

**SCHEDULE**

**Description of Premises and Operations:**

FOOD SERVICES

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

1. On, from or in connection with the use of any premises described in the Schedule, or

2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf,

Paragraph **a.** of the definition of "Products - completed operations hazard"  in the DEFINITIONS Section is replaced by the following:

"Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

**CG 24 07 01 96**            Copyright, Insurance Services Office, Inc., 1994

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO LIABILITY COVERAGE ENHANCEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The provisions of this endorsement apply only as respects Ohio Liability Coverage afforded hereunder.

**A.** For the purposes of this endorsement only, **SECTION I - COVERAGES** is amended to include the following:

**COVERAGE D. OHIO LIABILITY COVERAGE**

**1. Insuring Agreement**

    **a.** We will pay those sums to which this insurance applies that the insured becomes legally obligated to pay as damages because of "bodily injury" sustained by any "employee" of the insured arising out of or in the course of his or her employment by the insured, provided the "employee", at the time of the injury, was covered under a workers compensation policy and subject to a "workers compensation law". We will have the right and duty to defend any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

        **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under this coverage**.**

    No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS.**

    **b.** This insurance applies to "bodily injury" only if:

        **(1)** The "bodily injury" is caused by an "occurrence" that takes place in the "coverage territory".

        **(2)** Except when **(3)** below applies, the "bodily injury" occurs during the policy period.

        **(3)** Provided the "bodily injury" is a disease, the "bodily injury" is caused by or aggravated by conditions of employment by you and the injured "employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury" occurs during the policy period.

    **c.** The damages we will pay, where recovery is permitted by law, include damages:

        **(1)** For:

            **(a)** Which you are liable to a third party by reason of a claim or "suit" against you by that third party to recover the damages claimed against such third party as a result of injury to your "employee";

            **(b)** Care and loss of services; and

            **(c)** Consequential "bodily injury" to a spouse, child, parent, brother or sister of the injured "employee";

        provided that these damages are the direct consequence of "bodily injury" that arises out of and in the course of the injured "employee's" employment by you; and

        **(2)** Because of "bodily injury" to your "employee" that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

**2. Exclusions**

    This insurance does not apply to:

**a. Contractual Liability**

Liability assumed by you under any contract or agreement;

**b. Punitive Damages**

Multiple, exemplary or punitive damages, including but not limited to any award of attorney fees, costs or interest awarded as a result of an award for multiple, exemplary or punitive damages;

**c. Violation of Laws**

"Bodily injury" suffered or caused by any "employee" while employed in violation of law with your actual knowledge or the actual knowledge of an insured;

**d. Statutory Obligations**

Any obligation of the insured under a workers' compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

**e. Crew Members**

"Bodily injury" to a master or member of the crew of any vessel or any member of the flying crew of any aircraft;

**f. Termination, Coercion or Discrimination**

Damages arising out of coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any "employee", or arising out of other employment or personnel decisions concerning the insured, whether or not accompanied by a "bodily injury";

**g. Intentional Injury**

"Bodily injury" caused by acts committed by or at the direction of an insured with the deliberate intent to injure or with the belief that the injury was substantially certain to occur. As used in this endorsement, substantially certain means that an insured acts with deliberate intent to cause an "employee" to suffer "bodily injury".

**h. War**

"Bodily injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these;

**i. Failure to Comply with Worker's Compensation Law**

Any claim or "bodily injury" with respect to which the insured is:

**(1)** Deprived of common law defenses; or

**(2)** Otherwise subject to penalty;

because of your failure to secure your obligations or other failure to comply with any "workers compensation law";

**j. Asbestos**

Damages arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

**k. Federal Laws**

Any premium, assessment, penalty, fine, benefit, liability or other obligation imposed by or granted pursuant to:

**(1)** The Federal Employer's Liability Act (45 USC Section 51-60);

**(2)** The Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173);

**(3)** The Longshore and Harbor Workers' Compensation Act (33 USC Sections 910-950);

**(4)** The Outer Continental Shelf Lands Act (43 USC Section 1331-1356);

**(5)** The Defense Base Act (42 USC Sections 1651-1654);

**(6)** The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942);

**(7)** The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872);

**(8)** Any other workers compensation, unemployment compensation or disability laws or any similar law; or

**(9)** Any subsequent amendments to the laws listed above;

**I.** **Violation of Age Laws or Employment of Minors**

"Bodily injury" suffered or caused by any person:

**(1)** Knowingly employed by you in violation of any law as to age; or

**(2)** Under the age of 14 years, regardless of any such law.

**3.** **Supplementary Payments**

The **SUPPLEMENTARY PAYMENTS - COVERAGES A** and **B** also apply to this insurance.

**B.** **WHO IS AN INSURED**

For the purposes of this endorsement only, **SECTION II - WHO IS AN INSURED** is deleted in its entirety and replaced by the following:

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only

with respect to their duties as trustees.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**C.** **LIMITS OF INSURANCE**

For the purposes of this endorsement only, **SECTION III - LIMITS OF INSURANCE** is amended as follows:

Item **5.** is deleted in its entirety and replaced by the following:

**5.** The Each Occurrence Limit is the most we will pay for damages under Coverage **D.** because of all "bodily injury" arising out of any one "occurrence".

**D.** **CONDITIONS**

For the purposes of this endorsement only, **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**, Items **2.** and **5.** are deleted in their entirety and replaced by the following:

**2.** **Duties in the Event of Occurrence, Injury, Claim or Suit**

**a.** You must see to it that we or our agent are notified as soon as practicable of an "occurrence" or "bodily injury" which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or "bodily injury" took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers re-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ceived in connection with the injury, claim, proceeding or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us and assist us, as we may request, in the investigation or settlement of the claim or "suit";

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply; and

**(5)** Do nothing after an injury occurs that would interfere with our right to recover from others.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**5. Other Insurance**

**a.** Excess - This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis.

We will have no duty to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but will be entitled to the insured's right against all those other insurers.

We will pay the amount of the loss that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Condition and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations.

**b.** Method of Sharing - If all other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

**E. DEFINITIONS**

For the purposes of this endorsement only, **SECTION V - DEFINITIONS** is amended as follows:

**1.** Definition **16.** is deleted in its entirety and replaced by the following:

**16.** "Occurrence" means a happening or event or continuous or repeated exposure to conditions which occur during the policy period which result in "bodily injury". All such exposure to substantially the same general conditions shall be deemed one "occurrence".

**2.** The following definition is added:

"Workers compensation law" means the workers compensation law and any occupational disease law of:

**a.** The State of Ohio.

**b.** Another state if the "employee" is injured as a result of operations which are necessary or incidental to the insured's Ohio operations.

This does not include provisions of any law providing non-occupational disability benefits.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** Exclusion **2.s.** of **Section I - Coverage A - Bodily Injury and Property Damage Liability** is replaced by the following:

   **2. Exclusions**

     This insurance does not apply to:

     **s. Access or Disclosure of Confidential or Personal Information and Data-Related Liability**

      Damages arising out of:

      **(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

      **(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

      This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

      However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

**B.** The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal and Advertising Injury Liability:**

   **2. Exclusions**

     This insurance does not apply to:

     **Access or Disclosure of Confidential or Personal Information**

     "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

     This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# THE CINCINNATI INSURANCE COMPANY

**A Stock Insurance Company**

# LIQUOR LIABILITY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: EPP 049 46 35

Named Insured is the same as it appears in the Common Policy Declarations

**Legal Entity / Business Description**
ORGANIZATION (ANY OTHER)

**LIMITS OF INSURANCE**

| | |
|---|---|
| Each Common Cause Limit | $ 1,000,000 |
| Aggregate Limit | $ 1,000,000 |

| CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | ADVANCE PREMIUM | |
|---|---|---|---|---|---|
| RESTAURANTS, TAVERNS, HOTELS, MOTELS | 58162 | 50,000 | 2.720 | 354 | MP |

**TOTAL PREMIUM  $ 354**

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO LIQUOR LIABILITY COVERAGE PART:**
GA115    12/04    LIQUOR LIABILITY COVERAGE FORM

# LIQUOR LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Coverage Part. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS.**

## SECTION I - LIQUOR LIABILITY COVERAGE

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE;** and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

      No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS.**

   b. This insurance applies to "injury" only if:

      (1) The "injury" occurs during the policy period in the "coverage territory"; and

      (2) Prior to the "coverage term" in which "injury" occurs, you did not know, per Paragraph **1.d.** below, that the "in-

jury" had occurred or had begun to occur, in whole or in part.

   c. "Injury" which:

      (1) Occurs during the "coverage term"; and

      (2) Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have occurred;

      includes any continuation, change or resumption of that "injury" after the end of the "coverage term" in which it first became known by you.

   d. You will be deemed to know that "injury" has occurred at the earliest time when any "authorized representative":

      (1) Reports all, or any part, of the "injury" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "injury";

      (3) First observes, or reasonably should have first observed, the "injury";

      (4) Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "injury" had occurred or had begun to occur; or

      (5) Becomes aware, or reasonably should have become aware, of a condition from which "injury" is substantially certain to occur.

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected or Intended Injury**

      "Injury" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the "injury" is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. **Workers' Compensation and Similar Laws**

      Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**c. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured sustained in the "workplace";

**(2)** An "employee" of the insured arising out of the performance of duties related to the conduct of the insured's business; or

**(3)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraphs **(1)** or **(2)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the "injury".

**d. Liquor License Not in Effect**

"Injury" arising out of any alcoholic beverage sold, served or furnished while any required license is not in effect.

**e. Your Product**

"Injury" arising out of "your product". This exclusion does not apply to "injury" for which the insured or the insured's indemnitees may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

**f. Other Insurance**

Any "injury" with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the limits of insurance.

This exclusion does not apply if the other insurance responds to liability for "injury" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

**g. War**

"Injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**SUPPLEMENTARY PAYMENTS**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**1.** All expenses we incur.

**2.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**3.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**4.** All costs taxed against the insured in the "suit".

**5.** Prejudgment interest awarded against the insured on that part of the judgment we become obligated to pay and which falls within the applicable limit of insurance. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**6.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

**7.** Expenses incurred by the insured for first aid administered to others at the time of an event to which this insurance applies.

These payments will not reduce the limits of insurance.

**SECTION II - WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

**(1)** "Injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1)(a)** above; or

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the "injury" described in Paragraphs **(1)(a)** or **(b)** above.

**(2)** "Property damage" to property:

**(a)** Owned or occupied by; or

**(b)** Rented or loaned,

to that "employee", any of your other "employees", by any of your partners or members (if you are a partnership or joint venture), or by any of your members (if you are a limited liability company).

**b.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Insurance under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**b.** This insurance does not apply to "injury" that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for all "injury" as the result of the selling, serving or furnishing of alcoholic beverages.

**3.** Subject to the Aggregate Limit, the Each Common Cause Limit is the most we will pay for all "injury" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

## SECTION IV - LIQUOR LIABILITY CONDITIONS

**1. Bankruptcy**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties in the Event of Injury, Claim or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim. To the extent possible, notice should include:

        **(1)** How, when and where the "injury" took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any "injury".

    **b.** If a claim is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury" to which this insurance may also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

    **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

    **a.** The date we implemented the change in your state; or

    **b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**5. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

    **a. Primary Insurance**

    This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

    **b. Method of Sharing**

    If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

    If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**6. Premium Audit**

   **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If:

      **(1)** The earned premium is less than the deposit premium, we will return the excess to the first Named Insured; or

      **(2)** The earned premium is greater than the deposit premium, the difference will be due and payable to us by the first Named Insured upon notice from us.

   **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**7. Representations**

By accepting this Coverage Part, you agree:

   **a.** The statements in the Declarations are accurate and complete;

   **b.** Those statements are based upon representations you made to us; and

   **c.** We have issued this Coverage Part in reliance upon your representations.

**8. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

   **a.** As if each Named Insured were the only Named Insured; and

   **b.** Separately to each insured against whom claim is made or "suit" is brought.

**9. Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**10. Two or More Coverage Forms or Policies Issued by Us**

If this Coverage Part and any other Coverage Form, Coverage Part or policy issued to you by us or any company affiliated with us apply to the same "injury", the aggregate maximum limit of insurance under all the Coverage Forms, Coverage Parts or policies shall not exceed the highest applicable limit of insurance under any one Coverage Form, Coverage Part or policy. This condition does not apply to any Coverage Form, Coverage Part or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Part.

**11. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Authorized representative" means:

   **a.** If you are designated in the Declarations as:

      **(1)** An individual, you and your spouse are "authorized representatives".

      **(2)** A partnership or joint venture, your members, your partners, and their spouses are "authorized representatives".

      **(3)** A limited liability company, your members and your managers are "authorized representatives".

      **(4)** An organization other than a partnership, joint venture or limited liability company, your "executive officers" and directors are "authorized representatives". Provided you are not a publicly traded organization, your stockholders are also "authorized representatives".

   **b.** Your "employees":

      **(1)** Assigned to manage your insurance program; or

      **(2)** Responsible for giving or receiving notice of an "injury", claim or "suit";

      are also "authorized representatives".

**2.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**3.** "Coverage term" means the following individual increment, or if a multi-year policy period,

increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

    **(1)** The day the policy period shown in the Declarations ends; or

    **(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the "injury" occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the "injury" arises out of:

    **(1)** Goods or products made or sold by you in the territory described in **a.** above; or

    **(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement to which we agree.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive Officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Injury" means all damages, including damages because of "bodily injury" and "property damage", and including damages for care, loss of services or loss of support. "Injury" does not include civil or criminal fines or penalties imposed by law.

**8.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**9.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

**10.** "Suit" means a civil proceeding in which money damages because of "injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

**11.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**12.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of "injury".

**13.** "Your product":

**a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)** You;

        **(b)** Others trading under your name; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

# THE CINCINNATI INSURANCE COMPANY
A Stock Insurance Company

# CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Attached to and forming part of POLICY NUMBER: **EPP 049 46 35**          Effective Date **06-26-2018**

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

**Retroactive Date:**   **06-26-2018**

## Limits of Insurance and Deductible

| Insuring Agreement | | Annual Aggregate | Sublimit | | Deductible |
|---|---|---|---|---|---|
| **A** | Response Expenses | $50,000 | | | $1,000 |
| | | | Forensic IT Review | $25,000 | |
| | | | Legal Review | $25,000 | |
| | | | PR Services | $25,000 | |
| **B** | Defense and Liability | $50,000 | | | $1,000 |
| | | | Regulatory Fines and Penalties | $25,000 | |
| | | | PCI Fines and Penalties | $25,000 | |
| **C** | Identity Recovery | $25,000 | | | $250 |
| | | | Lost Wages and Child and Elder Care | $5,000 | |
| | | | Mental Health Counseling | $1,000 | |
| | | | Miscellaneous Unnamed Costs | $1,000 | |

| **TOTAL ANNUAL PREMIUM** | $143 |
|---|---|

| Optional Supplemental Extended Reporting Period - Term: | Optional Supplemental Extended Reporting Period - Premium: |
|---|---|
| 1 YEAR | 28 |
| 2 YEAR | 56 |
| 3 YEAR | 74 |
| 4 YEAR | 93 |
| 5 YEAR | 102 |
| 6 YEAR | 111 |

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|---|---|---|
| HC102 | 01/18 | CINCINNATI DATA DEFENDER™ COVERAGE FORM |
| HC427OH | 01/16 | OHIO CHANGES - LOSS INFORMATION |

HC 502 01 18



# CINCINNATI DATA DEFENDER™ COVERAGE FORM

### TABLE OF CONTENTS

**Coverage Part Provision:**                                                           **Begins on Page:**

Preamble ........................................................................................................................3

**SECTION I - COVERAGES** ...........................................................................................3

A.  Insuring Agreements ................................................................................................3

    1.  Insuring Agreement A - Response Expenses ....................................................3
    2.  Insuring Agreement B - Defense and Liability ..................................................5
    3.  Insuring Agreement C - Identity Recovery .......................................................5

B.  Exclusions ...............................................................................................................5

    1.  Applicable to Insuring Agreements **A** and **B** ........................................................5

        a.  Contractual Liability .............................................................................5
        b.  Criminal Investigations or Proceedings ...............................................5
        c.  Deficiency Correction ..........................................................................5
        d.  Extortion .............................................................................................6
        e.  Fraudulent, Dishonest or Criminal Acts ...............................................6
        f.  Non-monetary Relief ...........................................................................6
        g.  Previously Reported Data Compromises ..............................................6
        h.  Prior Data Compromises .....................................................................6
        i.  Prior or Pending Litigation ...................................................................6
        j.  Reckless Disregard .............................................................................6
        k.  Uninsurable .........................................................................................6
        l.  Willful Complicity .................................................................................6

    2.  Applicable to Insuring Agreement **C** ...................................................................6

        a.  Fraudulent, Dishonest or Criminal Acts ...............................................6
        b.  Professional or Business Identity .........................................................6
        c.  Unreported Identity Theft ....................................................................6

    3.  Applicable to Insuring Agreements **A**, **B** and **C** .................................................6

        a.  Nuclear ................................................................................................6
        b.  War .....................................................................................................6

**SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE** ............................................7

**SECTION III - DEFENSE AND SETTLEMENT** .............................................................8

**SECTION IV - CONDITIONS** .......................................................................................8

    1.  Bankruptcy ........................................................................................................8
    2.  Due Diligence ....................................................................................................8
    3.  Duties in the Event of a Claim, Regulatory Proceeding or Loss ........................9
    4.  Help Line ..........................................................................................................10
    5.  Legal Action Against Us ...................................................................................10
    6.  Legal Advice .....................................................................................................10
    7.  Liberalization ....................................................................................................10
    8.  Office of Foreign Assets Control (OFAC) Compliance .....................................11
    9.  Other Insurance ...............................................................................................11
   10.  Pre-Notification Consultation ...........................................................................11
   11.  Representations ...............................................................................................11
   12.  Separation of Insureds .....................................................................................11
   13.  Service Providers .............................................................................................11
   14.  Services ...........................................................................................................11
   15.  Subrogation ......................................................................................................12
   16.  Valuation - Settlement ......................................................................................12
   17.  When We Do Not Renew ...................................................................................12

## TABLE OF CONTENTS (CONT'D)

**Coverage Part Provision:**            **Begins on Page:**

**SECTION V - EXTENDED REPORTING PERIODS** ...................................................................................12

**SECTION VI - DEFINITIONS** ..............................................................................................................13

    1.  "Affected individual" .........................................................................................13
    2.  "Authorized representative" ...............................................................................13
    3.  "Claim" .........................................................................................................13
    4.  "Coverage term" ..............................................................................................13
    5.  "Coverage territory" .........................................................................................14
    6.  "Data compromise liability" ...............................................................................14
    7.  "Defense costs" ...............................................................................................14
    8.  "Employee" ....................................................................................................14
    9.  "Executive" ....................................................................................................15
  10.  "Identity recovery case manager" ........................................................................15
  11.  "Identity recovery expenses" ..............................................................................15
  12.  "Identity recovery insured" ................................................................................16
  13.  "Identity theft" ...............................................................................................16
  14.  "Insured" ......................................................................................................16
  15.  "Loss" ..........................................................................................................16
  16.  "Named insured" .............................................................................................16
  17.  "Personal data compromise" ...............................................................................16
  18.  "Personally identifying information" .....................................................................17
  19.  "Personally sensitive information" .......................................................................17
  20.  "Policy period" ...............................................................................................17
  21.  "Regulatory proceeding" ...................................................................................17

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DE-DUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the "named insured" shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI** - **Definitions**.

## SECTION I - COVERAGES

### A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which an Aggregate Limit of Insurance is shown in the Declarations:

**1. Insuring Agreement A - Response Expenses**

**a.** Coverage under Insuring Agreement **A** - Response Expenses applies only if all of the following conditions are met:

**(1)** There has been a "personal data compromise"; and

**(2)** Such "personal data compromise" is first discovered by you during the "coverage term"; and

**(3)** Such "personal data compromise" took place in the "coverage territory"; and

**(4)** Such "personal data compromise" is reported to us within 60 days after the date it is first discovered by you.

**b.** If the conditions listed in **a.** above have been met, then we will provide coverage for the following expenses when they arise directly from the "personal data compromise" described in **a.** above and are necessary and reasonable. Coverages **(4)** and **(5)** apply only if there has been a notification of the "personal data

compromise" to "affected individuals" as covered under coverage **(3)**.

**(1) Forensic IT Review**

Professional information technologies review if needed to determine, within the constraints of what is possible and reasonable, the nature and extent of the "personal data compromise" and the number and identities of the "affected individuals".

This does not include costs to analyze, research or determine any of the following:

**(a)** Vulnerabilities in systems, procedures or physical security;

**(b)** Compliance with PCI or other industry security standards; or

**(c)** The nature or extent of loss or damage to data that is not "personally identifying information" or "personally sensitive information".

If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under Forensic IT Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**(2) Legal Review**

Professional legal counsel review of the "personal data compromise" and how you should best respond to it. If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Legal Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**(3) Notification to Affected Individuals**

We will pay your necessary and reasonable costs to provide notification of the "personal data compromise" to "affected individuals".

**(4) Services to Affected Individuals**

We will pay your necessary and reasonable costs to provide the following services to "affected individuals":

**(a)** The following services apply to any "personal data compromise".

**1)** Informational Materials

A packet of loss prevention and customer support information.

**2)** Help Line

A toll-free telephone line for "affected individuals" with questions about the "personal data compromise". Where applicable, the line can also be used to request additional services as listed in **(b)1)** and **2)** below.

Note, calls by "affected individuals" or their representatives to the Help Line do not constitute the making of a "claim" under Insuring Agreement **B** - Defense and Liability.

**(b)** The following additional services apply to "personal data compromise" events involving "personally identifying information".

**1)** Credit Report and Monitoring

A credit report and an electronic service automatically monitoring for activities affecting an individual's credit records. This service is subject to the "affected individual" enrolling for this service with the designated service provider.

**2)** Identity Restoration Case Management

As respects any "affected individual" who is or appears to be a victim of "identity theft" that may reasonably have arisen from the "personal data compromise", the services of an identity restoration professional who will assist that "affected individual" through the process of correcting credit and other records and, within the constraints of what is possible and reasonable, restoring control over his or her personal identity.

**(5) PR Services**

We will pay the necessary and reasonable fees and expenses you incur, with our prior written consent, for a professional public relations firm review of and response to the potential impact of the "personal data compromise" on your business relationships. We will only pay for such fees and expenses when such a public relations firm review and response is reasonably necessary to avert or mitigate material damage to your business relationships from the "personal data compromise".

Such fees and expenses include costs to implement public relations recommendations of such public relations firm. However, when such recommendations include advertising and special promotions designed to retain your relationship with "affected individuals", we will not pay for promotions:

**(a)** Provided to any of your "executives" or "employees"; or

**(b)** Costing more than $25 per "affected individual".

**2. Insuring Agreement B - Defense and Liability**

**a.** Coverage under Insuring Agreement **B** - Defense and Liability applies only if all of the following conditions are met:

**(1)** During the "coverage term" or any applicable Extended Reporting Period, you first receive notice of a "claim" or "regulatory proceeding" which arises from a "personal data compromise" that:

**(a)** Took place on or after the Retroactive Date shown in the Declarations and before the end of the "policy period";

**(b)** Took place in the "coverage territory"; and

**(c)** Was submitted to us and covered under Insuring Agreement **A** - Response Expenses; and

**(2)** Such "claim" or "regulatory proceeding" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

**b.** If the conditions listed in **a.** above have been met, then we will pay on behalf of the "insured" "defense costs" and "data compromise liability" directly arising from the "claim" or "regulatory proceeding".

**c.** All "claims" or "regulatory proceedings" caused by a single "personal data compromise" will be deemed to have been made at the time that notice of the first of those "claims" or "regulatory proceedings" is received by you.

**3. Insuring Agreement C - Identity Recovery**

**a.** Coverage under Insuring Agreement **C** - Identity Recovery applies only if all of the following conditions are met:

**(1)** There has been an "identity theft" involving the personal identity of an "identity recovery insured" under this Coverage Part; and

**(2)** Such "identity theft" is first discovered by the "identity recovery insured" during the "coverage term"; and

**(3)** Such "identity theft" took place in the "coverage territory"; and

**(4)** Such "identity theft" is reported to us within 60 days after it is first discovered by the "identity recovery insured".

**b.** If the conditions listed in **a.** above have been met, then we will provide the following to the "identity recovery insured":

**(1)** Services of an "identity recovery case manager" as needed to respond to the "identity theft"; and

**(2)** Reimbursement of necessary and reasonable "identity recovery expenses" incurred as a direct result of the "identity theft".

**B. Exclusions**

**1.** Applicable to Insuring Agreements **A** and **B** only:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

**a. Contractual Liability**

An "insured's" assumption of liability by contract or agreement, whether oral or written. However, this exclusion shall not apply to:

**(1)** Any liability that an "insured" would have incurred in the absence of such contract or agreement; or

**(2)** Any PCI fines or penalties explicitly covered under Insuring Agreement **B** – Defense and Liability.

**b. Criminal Investigations or Proceedings**

Any criminal investigations or proceedings.

**c. Deficiency Correction**

Costs to research or correct any deficiency. This includes, but is not limited to, any deficiency in your sys-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

tems, procedures or physical security that may have contributed to a "personal data compromise".

**d. Extortion**

Any extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

**e. Fraudulent, Dishonest or Criminal Acts**

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by the "insured".

**f. Non-monetary Relief**

That part of any "claim" seeking any non-monetary relief.

**g. Previously Reported Data Compromises**

The same facts alleged or contained in any "claim" which has been reported, or in any circumstances of which notice has been given, under any insurance policy of which this Coverage Part is a renewal or replacement.

**h. Prior Data Compromises**

Any "personal data compromise" first occurring before the Retroactive Date shown in the Declarations, or any "claim" arising from a "personal data compromise" that first occurred prior to the Retroactive Date shown in the Declarations.

**i. Prior or Pending Litigation**

Any "claim" or other proceeding against an "insured" which was pending or existed prior to the "coverage term", or arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such "claim" or other proceeding.

**j. Reckless Disregard**

Your reckless disregard for the security of "personally identifying information" or "personally sensitive information" in your care, custody or control.

**k. Uninsurable**

Any amount not insurable under applicable law.

**l. Willful Complicity**

The "insured's" intentional or willful complicity in a "personal data compromise".

**2.** Applicable to Insuring Agreement **C** only:

This insurance does not apply to:

**a. Fraudulent, Dishonest or Criminal Acts**

Any fraudulent, dishonest or criminal act by an "identity recovery insured" or any person aiding or abetting an "identity recovery insured", or by any "authorized representative" of an "identity recovery insured", whether acting alone or in collusion with others. However, this exclusion shall not apply to the interests of an "identity recovery insured" who has no knowledge of or involvement in such fraud, dishonesty or criminal act.

**b. Professional or Business Identity**

The theft of a professional or business identity.

**c. Unreported Identity Theft**

An "identity theft" that is not reported in writing to the police.

**3.** Applicable to Insuring Agreements **A, B** and **C**:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

**a. Nuclear**

Nuclear reaction or radiation or radioactive contamination, however caused.

**b. War**

**(1)** War, including undeclared or civil war or civil unrest;

**(2)** Warlike action by military force, including action hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

## SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE

**A.** Insuring Agreement **A** - Response Expenses:

**1.** The most we will pay under Insuring Agreement **A** - Response Expenses is the Response Expenses Limit of Insurance stated in the Declarations.

**2.** The Response Expenses Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **A** - Response Expenses arising out of all "personal data compromise" events which are first discovered by you during the "coverage term". This limit applies regardless of the number of "personal data compromise" events discovered by you during that period.

**3.** A "personal data compromise" may be first discovered by you in one "coverage term" but cause covered "loss" in one or more subsequent "coverage terms". If so, all covered "loss" arising from such "personal data compromise" will be subject to the Response Expenses Limit of Insurance applicable to the "coverage term" when the "personal data compromise" was first discovered by you.

**4.** The most we will pay under Insuring Agreement **A** - Response Expenses for Forensic IT Review, Legal Review and PR Services coverages for "loss" arising from any one "personal data compromise" is the applicable sublimit for each of those coverages stated in the Declarations. These sublimits are part of, and not in addition to, the Aggregate Limit of Insurance referenced in Paragraph **2.** PR Services coverage is also subject to a limit per "affected individual" as described in Section **I., A.1.b.(5)** PR Services.

**5.** Coverage for Services to "affected individuals" is limited to costs to provide such services for a period of up to one year from the date of the notification to the "affected individuals" or the period required by law, whichever is longer. Notwithstanding the foregoing, coverage for Identity Restoration Case Management services initiated within such period may continue for a period of up to one year from the date such Identity Restoration Case Management services are initiated.

**6.** Response Expenses coverage is subject to the Response Expenses Deductible stated in the Declarations. You shall be responsible for such deductible amount as respects each "personal data compromise" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount in order to respond effectively to a "personal data compromise" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**B.** Insuring Agreement **B** - Defense and Liability:

**1.** The most we will pay under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) is the Limit of Insurance stated in the Declarations.

**2.** The Insuring Agreement **B** - Defense and Liability Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for all "loss" covered under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) arising out of all "claims".

**3.** The most we will pay under Insuring Agreement **B** − Defense and Liability for "data compromise liability" and "defense costs" related to Regulatory Fines and Penalties and PCI Fines and Penalties coverages arising from any one "claim" or "regulatory proceeding" is the applicable sublimit for each of those coverages stated in the Declarations. These sublimits are part of, and not in addition to, the Aggregate Limit of Insurance referenced in Paragraph **2.**

**4.** The Defense and Liability Limit of Insurance for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Defense and Liability Limit for the immediately preceding "coverage term".

**5.** The Insuring Agreement **B** - Defense and Liability coverage is subject to the Deductible stated in the Declarations. You shall be responsible for such deductible amount as respects each "claim" or "regulatory proceeding" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount to defend or effect settlement of any "claim", "loss" or "regulatory proceeding" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**C.** Insuring Agreement **C** - Identity Recovery:

**1.** Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the Limit of Insurance available for "identity recovery expenses".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2. Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Annual Aggregate Limit of Insurance stated in the Declarations per "identity recovery insured". Regardless of the number of "identity theft" incidents, this limit is the most we will pay for the total of all "loss" arising out of all "identity thefts" suffered by one "identity recovery insured" which are first discovered by the "identity recovery insured" during the "coverage term". If an "identity theft" is first discovered in one "coverage term" and continues into other "coverage terms", all "loss" arising from such "identity theft" will be subject to the aggregate Limit of Insurance applicable to the "coverage term" when the "identity theft" was first discovered.

3. Legal costs as provided under Item **d.** of the definition of "identity recovery expenses" are part of, and not in addition to, the aggregate limit described in Paragraph **2.**

4. Item **e.** (Lost Wages) and Item **f.** (Child and Elder Care Expenses) of the definition of "identity recovery expenses" are jointly subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

5. Item **g.** (Mental Health Counseling) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate limit described in Paragraph **2.** Coverage is limited to counseling that takes place within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

6. Item **h.** (Miscellaneous Unnamed Costs) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to costs incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

7. Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Identity Recovery Deductible stated in the Declarations. Each "identity recovery insured" shall be responsible for such deductible amount only once during each "coverage term". This deductible applies only to "identity recovery expenses".

The Limits of Insurance apply separately to each "coverage term".

## SECTION III - DEFENSE AND SETTLEMENT

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

1. We will have the right and duty to select counsel and defend the "insured" against any "claim" or "regulatory proceeding" covered by Insuring Agreement **B** - Defense and Liability, regardless of whether the allegations of such "claim" or "regulatory proceeding" are groundless, false or fraudulent. However, we shall have no duty to defend the "insured" against any "claim" or "regulatory proceeding" seeking damages or other relief not insured by Insuring Agreement **B** - Defense and Liability.

2. We may, with your written consent, make any settlement of a "claim" or "regulatory proceeding" which we deem reasonable. If you withhold consent to such settlement, our liability for all "loss" resulting from such "claim" will not exceed the amount for which we could have settled such "claim" or "regulatory proceeding" plus "defense costs" incurred as of the date we proposed such settlement in writing to you.

3. We shall not be obligated to pay any "loss", or to defend or continue to defend any "claim" or "regulatory proceeding", after the Insuring Agreement **B** - Defense and Liability Limit of Insurance has been exhausted.

4. We shall pay all interest on that amount of any judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance which accrues:

    a. After entry of judgment; and

    b. Before we pay, offer to pay or deposit in court that part of the judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance or, in any case, before we pay or offer to pay the entire Insuring Agreement **B** - Defense and Liability Limit of Insurance.

    These interest payments shall be in addition to and not part of the Defense and Liability Limit.

## SECTION IV – CONDITIONS

1. **Bankruptcy**

    Your bankruptcy, or the bankruptcy of your estate if you are a sole proprietor, will not relieve us of our obligations under this Coverage Part.

2. **Due Diligence**

    You agree to use due diligence to prevent and mitigate "loss" covered under this Coverage Part. This includes, but is not limited to, complying with, and requiring your vendors to

comply with, reasonable and industry-accepted protocols for:

**a.** Providing and maintaining appropriate physical security for your premises, computer systems and hard copy files;

**b.** Providing and maintaining appropriate computer and Internet security;

**c.** Maintaining and updating at appropriate intervals backups of computer data;

**d.** Protecting transactions, such as processing credit card, debit card and check payments; and

**e.** Appropriate disposal of files containing "personally identifying information" or "personally sensitive information", including shredding hard copy files and destroying physical media used to store electronic data.

**3. Duties in the Event of a Claim, Regulatory Proceeding or Loss**

**a.** If, during the "coverage term", the "insured" first becomes aware of any circumstance that could reasonably be expected to give rise to a "claim" or "regulatory proceeding", the "insured" may give written notice to us. The notice must be made as soon as practicable, but in no event more than 60 days after the date the circumstance is first discovered by the "insured", must be made during the "coverage term" and must include:

  **(1)** The specific details, including the date, of the circumstance;

  **(2)** The alleged injuries or damage sustained or which may be sustained;

  **(3)** The names of potential claimants; and

  **(4)** The manner in which the "insured" first became aware of the circumstance.

Any subsequent "claim" or "regulatory proceeding" arising out of any circumstance which is the subject of such a written notice will be deemed to have been made at the time written notice in compliance with these requirements was first received by us.

**b.** If a "claim" or "regulatory proceeding" is brought against any "insured", you must:

  **(1)** Immediately record the specifics of the "claim" or "regulatory proceeding" and the date received; and

  **(2)** Provide us with written notice, as soon as practicable, but in no event

more than 60 days after the date the "claim" or "regulatory proceeding" is first received by you.

  **(3)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "regulatory proceeding";

  **(4)** Authorize us to obtain records and other information;

  **(5)** Cooperate with us in the investigation, settlement or defense of the "claim" or "regulatory proceeding";

  **(6)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of "loss" or "defense costs" to which this insurance may also apply; and

  **(7)** Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "claim" or "regulatory proceeding".

**c.** In the event of a "personal data compromise" covered under Insuring Agreement **A** - Response Expenses, you must see that the following are done:

  **(1)** Notify the police if a law may have been broken.

  **(2)** Notify us as soon as practicable, but in no event more than 60 days after the "personal data compromise". Include a description of any property involved.

  **(3)** As soon as possible, give us a description of how, when and where the "personal data compromise" occurred.

  **(4)** As often as may be reasonably required, permit us to:

    **(a)** Inspect the property proving the "personal data compromise";

    **(b)** Examine your books, records, electronic media and records and hardware;

    **(c)** Take samples of damaged and undamaged property for inspection, testing and analysis; and

    **(d)** Make copies from your books, records, electronic media and records and hardware.

  **(5)** Send us signed, sworn proof of loss containing the information we request

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

to investigate the "personal data compromise". You must do this within 60 days after our request. We will supply you with the necessary forms.

**(6)** Cooperate with us in the investigation of the "personal data compromise" or settlement of the "loss".

**(7)** If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

**(8)** Make no statement that will assume any obligation or admit any liability, for any loss for which we may be liable, without our prior written consent.

**(9)** Promptly send us any legal papers or notices received concerning the "personal data compromise" or "loss".

**d.** We may examine any "insured" under oath, while not in the presence of any other "insured" and at such times as may be reasonably required, about any matter relating to this insurance or the "claim" or "loss", including an "insured's" books and records. In the event of an examination, an "insured's" answers must be signed.

**e.** No "insured" may, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

**4. Help Line**

For assistance, the "identity recovery insured" should call the **Identity Recovery Help Line** at **1-866-219-9831**. The **Identity Recovery Help Line** can provide the "identity recovery insured" with:

**a.** Information and advice for how to respond to a possible "identity theft"; and

**b.** Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an "identity recovery insured" prior to a determination that a covered "identity theft" has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered "identity theft" has not occurred.

As respects Expense Reimbursement Coverage, the "identity recovery insured" must send to us, within 60 days after our request, receipts, bills or other records

that support his or her claim for "identity recovery expenses".

**5. Legal Action Against Us**

**a.** No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a suit asking for damages from an "insured"; or

**(2)** To sue us under this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured"; but we will not be liable for damages that are not payable under this Coverage Part, or that are in excess of the applicable Aggregate Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the first "named insured" and the claimant or the claimant's legal representative.

**b.** You may not bring any legal action against us involving "loss":

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of "loss" with us; and

**(3)** Unless brought within 2 years from the date you reported the "claim" or "loss" to us.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**6. Legal Advice**

We are not your legal advisor. Our determination of what is or is not covered under this Coverage Part does not represent advice or counsel from us about what you should or should not do.

**7. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the "policy period", we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

will be considered as included until the end of the current "policy period". We will make no additional premium charge for this additional coverage during the interim.

### 8. Office of Foreign Assets Control (OFAC) Compliance

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

### 9. Other Insurance

**a.** If any covered "loss" is covered by any other valid policy, then this Coverage Part shall apply only in excess of the amount of any deductible, retention and limit of insurance under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this Coverage Part by reference in such other policy to this policy's policy number.

**b.** When this insurance is excess, we will have no duty to defend the "insured" against any "claim" if any other insurer has a duty to defend the "insured" against that "claim". But we will have the right to associate in the defense and control of any "claim" that we reasonably believe is likely to involve the insurance provided under this Coverage Part. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

### 10. Pre-Notification Consultation

You agree to consult with us prior to the issuance of notification to "affected individuals". We assume no responsibility under this Coverage Part for any services promised to "affected individuals" without our prior agreement. If possible, this pre-notification consultation will also include the designated service provider(s) as agreed to under Condition **12.** Service Providers. You must provide the following at our pre-notification consultation with you:

**a.** The exact list of "affected individuals" to be notified, including contact information.

**b.** Information about the "personal data compromise" that may appropriately be communicated with "affected individuals".

**c.** The scope of services that you desire for the "affected individuals". For example, coverage may be structured to provide fewer services in order to make those services available to more "affected indi-

viduals" without exceeding the available Response Expenses Limit.

### 11. Representations

You represent that all information and statements contained in any application or questionnaire submitted in connection with this Coverage Part are true, accurate and complete. All such information and statements are the basis for our issuing this Coverage Part and shall be considered as incorporated into and shall constitute a part of this Coverage Part. Misrepresentation or omission of any material fact may be grounds for the rescission of this Coverage Part.

### 12. Separation of Insureds

Except with respect to the applicable Limit of Insurance, and any rights or duties specifically assigned in this Coverage Part or the policy to which it is attached, to the first "named insured", this insurance applies separately to each "insured" against whom a "claim" is made.

### 13. Service Providers

**a.** We will only pay under this Coverage Part for services that are provided by service providers approved by us. You must obtain our prior approval for any service provider whose expenses you want covered under this Coverage Part. We will not unreasonably withhold such approval.

**b.** Prior to the Pre-Notification Consultation described in the Pre-Notification Consultation Condition above, you must come to agreement with us regarding the service provider(s) to be used for the Notification to Affected Individuals and Services to Affected Individuals. We will suggest a service provider. If you prefer to use an alternate service provider, our coverage is subject to the following limitations:

**(1)** Such alternate service provider must be approved by us;

**(2)** Such alternate service provider must provide services that are reasonably equivalent or superior in both kind and quality to the services that would have been provided by the service provider we had suggested; and

**(3)** Our payment for services provided by any alternate service provider will not exceed the amount that we would have paid using the service provider we had suggested.

### 14. Services

The following conditions apply as respects any services provided to you or any "affected indi-

vidual" or "identity recovery insured" by us, our designees or any service firm paid for in whole or in part under this Coverage Part:

**a.** The effectiveness of such services depends on the cooperation and assistance of you, "affected individuals" and "identity recovery insureds".

**b.** All services may not be available or applicable to all individuals. For example, "affected individuals" and "identity recovery insureds" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

**c.** We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

**d.** Except for the services of an "identity recovery case manager" under Insuring Agreement **C** - Identity Recovery, which we will provide directly, you will have a direct relationship with the professional service firms paid for in whole or in part under this Coverage Part. Those firms work for you.

## 15. Subrogation

With respect to any payment under this Coverage Part on behalf of any "insured", we shall be subrogated to the "insured's" rights of recovery to the extent of such payment. The "insured" shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable us to bring suit in the "insured's" name. Any recoveries, less the cost of obtaining them, will be distributed as follows:

**a.** To you, until you are reimbursed for any "loss" you sustain that exceeds the sum of the applicable Aggregate Limit of Insurance and the Deductible Amount, if any;

**b.** Then to us, until we are reimbursed for the payment under this Coverage Part;

**c.** Then to you, until you are reimbursed for that part of the payment equal to the Deductible Amount, if any.

## 16. Valuation - Settlement

All premiums, Limits of Insurance, Deductible Amounts, "loss" and any other monetary amounts under this Coverage Part are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is agreed to or another component of "loss" under this Coverage Part is expressed in any currency other than United States of America dollars, payment under this Coverage Part shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is entered, settlement amount is agreed upon, or the other component of "loss" is due, respectively.

## 17. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first "named insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - EXTENDED REPORTING PERIODS

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

**1.** You shall have the right to the Extended Reporting Periods described in this section, in the event that:

**a.** You or we cancel this Coverage Part;

**b.** You or we refuse to renew this Coverage Part; or

**c.** We renew this Coverage Part on other than a claims-made basis or with a retroactive date later than the Retroactive Date shown in the Declarations.

**2.** If an event as specified in Paragraph **1.** has occurred, you shall have the right to the following:

**a.** An Automatic Extended Reporting Period of 90 days after the effective date of cancellation or nonrenewal at no additional premium in which to give to us written notice of a "claim" or "regulatory proceeding" of which you first receive notice during said Automatic Extended Reporting Period for any "personal data compromise" occurring on or after the Retroactive Date shown on the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; and

**b.** Upon payment of the additional premium stated in the Declarations, a Supplemental Extended Reporting Period for the term stated in the Supplemental Extended Reporting Period Endorsement will be provided immediately following the effective date of cancellation or nonrenewal in which to give to us written notice of a "claim" or "regulatory proceeding" of which you first receive notice during said Supplemental Extended Reporting Period

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

for any "personal data compromise" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 60 days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

**c.** The Defense and Liability Limit of Insurance for the Extended Reporting Periods shall be part of, and not in addition to, the Defense and Liability Limit of Insurance for the immediately preceding "coverage term".

## SECTION VI - DEFINITIONS

**1.** "Affected individual" means any person whose "personally identifying information" or "personally sensitive information" is lost, stolen, accidentally released or accidentally published by a "personal data compromise" covered under this Coverage Part. This definition is subject to the following provisions:

**a.** "Affected individual" does not include any business or organization. Only an individual person may be an "affected individual".

**b.** An "affected individual" may reside anywhere in the world.

**2.** "Authorized representative" means a person or entity authorized by law or contract to act on behalf of an "identity recovery insured".

**3.** "Claim":

**a.** Means:

**(1)** A civil proceeding in which it is alleged that the claimant suffered damages arising from:

**(a)** A "personal data compromise" that was covered under Insuring Agreement **A** - Response Expenses section of this Coverage Part and in connection with which you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Insuring Agreement **A** - Response Expenses; or

**(b)** The violation of a governmental statute or regulation arising from a "personal data compromise" that was covered under Insuring Agreement **A** - Response Expenses and in connection with which you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Insuring Agreement **A** - Response Expenses.

**(2)** "Claim" includes:

**(a)** An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent;

**(b)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

**(c)** A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

**b.** Does not include any demand or action brought by or on behalf of someone who is:

**(1)** Your "executive";

**(2)** Your owner or part-owner; or

**(3)** A holder of your securities;

in their capacity as such, whether directly, derivatively, or by class action. "Claim" will include proceedings brought by such individuals in their capacity as "affected individuals", but only to the extent that the damages claimed are the same as would apply to any other "affected individual".

**4.** "Coverage term" means the following individual increment, or if a multi-year "policy period", increments, of time, which comprise the "policy period" of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year "policy period", each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing

address shown in the Declarations on the earlier of:

**(1)** The day the "policy period" shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**5.** "Coverage territory" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses, anywhere in the world.

**b.** With respect to Insuring Agreement **B** - Defense and Liability, anywhere in the world, however, "claims" must be brought in the United States (including its territories and possessions), Puerto Rico or Canada.

**c.** With respect to Insuring Agreement **C** - Identity Recovery, anywhere in the world

**6.** "Data compromise liability":

**a.** Means the following, when they arise from a "claim" or "regulatory proceeding":

**(1)** Damages (including punitive and exemplary damages and the multiple portion of any multiplied damage award), judgments or settlements;

**(2)** Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order; and

**(3)** Pre-judgment interest on that part of any judgment paid by us.

**b.** Also includes any Payment Card Industry (PCI) fine or penalty imposed under a contract to which you are a party when such fine or penalty arises from a "claim". PCI Fines and Penalties do not include any increased transaction costs.

**c.** Also includes any fine or penalty imposed by law, to the extent such fine or penalty is legally insurable under the law of the applicable jurisdiction when such fine or penalty arises from a "regulatory proceeding".

**d.** Does not include:

**(1)** Civil or criminal fines or penalties imposed by law, except for civil fines and penalties expressly covered under paragraphs **b.** and **c.** above;

**(2)** Taxes; or

**(3)** Matters which may be deemed uninsurable under the applicable law.

**e.** With respect to fines and penalties and punitive, exemplary and multiplied damages, the law of the jurisdiction most favorable to the insurability of those fines, penalties or damages shall control for the purpose of resolving any dispute between us and any "insured" regarding whether the fines, penalties or damages specified in this definition above are insurable under this Coverage Part, provided that such jurisdiction:

**(1)** Is where those fines, penalties or damages were awarded or imposed;

**(2)** Is where any "personal data compromise" took place for which such fines, penalties or damages were awarded or imposed;

**(3)** Is where you are incorporated or you have your principal place of business; or

**(4)** Is where we are incorporated or have our principal place of business.

**7.** "Defense costs":

**a.** Means reasonable and necessary expenses resulting solely from the investigation, defense and appeal of any "claim" or "regulatory proceeding" against an "insured". Such expenses may be incurred by us. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

**b.** Does not include the salaries or wages of your "employees" or "executives", or your loss of earnings.

**8.** "Employee" means any natural person, other than an "executive", who was, now is or will be:

**a.** Employed on a full- or part-time basis by you;

**b.** Furnished temporarily to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions;

**c.** Leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties relat-

ed to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **8.b.**; or

**d.** Your volunteer worker, which includes unpaid interns.

**9.** "Executive" means any natural person who was, now is or will be:

**a.** The owner of a sole proprietorship that is a "named insured"; or

**b.** A duly elected or appointed:

(1) Director;

(2) Officer;

(3) Managing Partner;

(4) General Partner;

(5) Member (if a limited liability company);

(6) Manager (if a limited liability company); or

(7) Trustee,

of a "named insured".

**10.** "Identity recovery case manager" means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured". This includes, with the permission and cooperation of the "identity recovery insured", written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

**11.** "Identity recovery expenses" means the following when they are reasonable and necessary expenses that are incurred as a direct result of an "identity theft" suffered by an "identity recovery insured":

**a.** Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft".

**b.** Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft".

**c.** Costs for credit reports from established credit bureaus.

**d.** Fees and expenses for an attorney approved by us for the following:

(1) The defense of any civil suit brought against an "identity recovery insured".

(2) The removal of any civil judgment wrongfully entered against an "identity recovery insured".

(3) Legal assistance for an "identity recovery insured" at an audit or hearing by a governmental agency.

(4) Legal assistance in challenging the accuracy of the "identity recovery insured's" consumer credit report.

(5) The defense of any criminal charges brought against an "identity recovery insured" arising from the actions of a third party using the personal identity of the "identity recovery insured".

**e.** Actual lost wages of the "identity recovery insured" for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self-employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

**f.** Actual costs for supervision of children or elderly or infirm relatives or dependents of the "identity recovery insured" during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**g.** Actual costs for counseling from a licensed mental health professional. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**h.** Any other reasonable costs necessarily incurred by an "identity recovery insured" as a direct result of the "identity theft".

(1) Such costs include:

(a) Costs by the "identity recovery insured" to recover control over his or her personal identity.

(b) Deductibles or service fees from financial institutions.

(2) Such costs do not include:

(a) Costs to avoid, prevent or detect "identity theft" or other loss.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(b)** Money lost or stolen.

**(c)** Costs that are restricted or excluded elsewhere in this Coverage Part or policy.

**12.** "Identity recovery insured" means the following:

**a.** When the entity insured under this Coverage Part is a sole proprietorship, the "identity recovery insured" is the individual person who is the sole proprietor of the "named insured".

**b.** When the "named insured" under this Coverage Part is a partnership, the "identity recovery insureds" are the current partners.

**c.** When the "named insured" under this Coverage Part is a corporation or other form of organization, other than those described in **a.** or **b.** above, the "identity recovery insureds" are all individuals having an ownership position of 20% or more of the insured entity. However, if and only if there is no one who has such an ownership position, then the "identity recovery insured" shall be:

**(1)** The chief executive of the insured entity; or

**(2)** As respects a religious institution, the senior ministerial employee.

**d.** The legally recognized spouse of any individual described in **a.**, **b.** or **c.** above.

An "identity recovery insured" must always be an individual person. The "named insured" under this Coverage Part is not an "identity recovery insured".

**13.** "Identity theft" means the fraudulent use of "personally identifying information". This includes fraudulently using such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

**14.** "Insured" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses any "named insured".

**b.** With respect to Insuring Agreement **B** - Defense and Liability:

**(1)** Any "named insured"; and

**(2)** Any "employee" or "executive" of a "named insured", but:

**(a)** Only for the conduct of the "named insured's" business within the scope of his or her employment or duties as an "executive"; and

**(b)** Such "employee" or "executive" shall not be an "insured" to the extent his or her actions or omissions are criminal, fraudulent, dishonest or constitute an intentional or knowing violation of the law.

**c.** With respect to Insuring Agreement **C** - Identity Recovery any "named insured".

**15.** "Loss" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses:

Those expenses enumerated in Section **I**, **A.**, Paragraph **1.b.**

**b.** With respect to Insuring Agreement **B** - Defense and Liability:

**(1)** "Defense costs"; and

**(2)** "Data compromise liability".

**c.** With respect to Insuring Agreement **C** - Identity Recovery, "identity recovery expenses".

**16.** "Named insured" means the entity or entities shown in the Declarations as a Named Insured.

**17.** "Personal data compromise" means the loss, theft, accidental release or accidental publication of "personally identifying information" or "personally sensitive information" as respects one or more "affected individuals". If the loss, theft, accidental release or accidental publication involves "personally identifying information", such loss, theft, accidental release or accidental publication must result in or have the reasonable possibility of resulting in the fraudulent use of such information. This definition is subject to the following provisions:

**a.** At the time of the loss, theft, accidental release or accidental publication, the "personally identifying information" or "personally sensitive information" need not be at the insured premises but must be in the direct care, custody or control of:

**(1)** You; or

**(2)** A professional entity with which you have a direct relationship and to which you (or an "affected individual" at your direction) have turned over (directly or via a professional transmission or transportation provider) such information for storage, pro-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

cessing, transmission or transportation of such information.

**b.** "Personal data compromise" includes disposal or abandonment of "personally identifying information" or "personally sensitive information" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

**(1)** The failure to use appropriate safeguards must be accidental and not reckless or deliberate; and

**(2)** Such disposal or abandonment must take place during the time period for which this Coverage Part is effective.

**c.** "Personal data compromise" includes situations where there is a reasonable cause to suspect that such "personally identifying information" or "personally sensitive information" has been lost, stolen, accidentally released or accidentally published, even if there is no firm proof.

**d.** All incidents of "personal data compromise" that are discovered at the same time or arise from the same cause will be considered one "personal data compromise".

**18.** "Personally identifying information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an "affected individual" or "identity recovery insured". This includes, but is not limited to, Social Security numbers or account numbers.

"Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

**19.** "Personally sensitive information" means private information specific to an individual the release of which requires notification of "affected individuals" under any applicable law.

"Personally sensitive information" does not mean or include "personally identifying information".

**20.** "Policy period" means the cumulative total of each individual "coverage term" comprising the period of time from the inception date of this Coverage Part shown in the Declarations to the expiration date shown in the Declarations, or its earlier cancellation or termination date.

**21.** "Regulatory proceeding" means an investigation, demand or proceeding alleging a violation of law or regulation brought by, or on behalf of, the Federal Trade Commission, Federal Communications Commission or other administrative or regulatory agency, or any federal, state, local or foreign governmental entity in such entity's regulatory or official capacity.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO CHANGES - LOSS INFORMATION

This endorsement modifies insurance provided under the following:

**CINCINNATI CYBER DEFENSE™ COVERAGE PART**
**CINCINNATI DATA DEFENDER™ COVERAGE PART**
**CINCINNATI NETWORK DEFENDER™ COVERAGE PART**

The following is added to **SECTION IV - CONDITIONS** (**SECTION V - CONDITIONS** of the Cincinnati Cyber Defense™ Coverage Part):

**Loss Information**

We shall, on request, provide to the first "named insured" loss information within 45 days of the first "named insured's" request or at the same time as any notice of cancellation or nonrenewal.

**HC 427 OH 01 16**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.