## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| TROY STACY ENTERPRISES INC., individually and on behalf of all others similarly situated, | Judge Matthew W. McFarland |
| Plaintiff, | Case No. 1:20-cv-00312-MWM |
| v. | |
| THE CINCINNATI INSURANCE COMPANY, | |
| Defendant. | |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant The Cincinnati Insurance Company ("Cincinnati") hereby moves to dismiss plaintiff Troy Stacy Enterprises, Inc.'s First Amended Class Action Complaint for failure to state a claim upon which relief can be granted. A Memorandum in Support of this Motion follows.

Respectfully submitted by:

**DEFENDANT, THE CINCINNATI INSURANCE COMPANY**

By its Counsel:

/s/ Michael K. Farrell
Michael K. Farrell (Ohio Bar No. 0040941)
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Phone 216-621-0200
Fax 216-696-0740
mfarrell@bakerlaw.com

Rodger L. Eckelberry (Ohio Bar No. 0071207)

BAKER & HOSTETLER LLP
200 S. Civic Center Dr., Suite 1200
Columbus, OH 43215-4260
Telephone: 614.228.1541
Facsimile: 614.462.2616
reckelberry@bakerlaw.com

Daniel G. Litchfield (*application for admission pending*)
Laurence J. Tooth (*pro hac vice pending*)
303 West Madison Street
Suite 300
Chicago, IL 60606
T: 312.781.6669 | F: 312.781.6630
Litchfield@LitchfieldCavo.com
Tooth@LitchfieldCavo.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically and will be served upon counsel of record through the Court's electronic filing system. All other parties will be served by regular U.S. mail.

/s/ Michael K. Farrell
*Attorney for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| TROY STACY ENTERPRISES INC., individually and on behalf of all others similarly situated, | Judge Matthew W. McFarland |
| Plaintiff, | Case No. 1:20-cv-00312-MWM |
| v. | |
| THE CINCINNATI INSURANCE COMPANY, | |
| Defendant. | |

## <u>DEFENDANT THE CINCINNATI INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), The Cincinnati Insurance Company ("Cincinnati") moves to dismiss this case because the Plaintiff fails to state a claim for which relief may be granted. Based on the allegations of the First Amended Class Action Complaint ("Amended Complaint") and the language of Cincinnati's policy ("the Policy"), Plaintiff cannot prove its claim.

The insurance policy at issue supplies property insurance coverage. It is designed to indemnify loss or damage to property, or related loss of income, such as in the case of a fire or storm. Plaintiff alleges that the policy's Business Income and Civil Authority insurance coverages apply to income losses due to the pandemic. But, because they are part of a property insurance policy, these coverages protect Plaintiff only for income losses tied to direct physical loss or damage to property, not for economic loss caused by efforts to protect the public from disease. These coverages do not apply in the absence of direct physical loss to property. Yet, Plaintiff's

allegations establish that it has not sustained any direct physical loss. Rather, Plaintiff alleges that the Coronavirus pandemic spreads among humans, not that there was any direct physical loss to property. Well-established Ohio law shows that Plaintiff does not allege the required direct physical loss. *See Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App. 3d 23, 2008-Ohio-311, 884 N.E.2d 1130 (2008) (Stewart, J.).[1]

In addition to the requirement that there be direct physical loss to property, the Civil Authority coverage requires a government order **prohibiting access** to Plaintiff's premises. The orders Plaintiff cites do not do this. Rather, those orders are directed to the need to keep people apart by keeping them at home.

For all of these reasons, and for the other reasons established below, Plaintiff's Amended Complaint should be dismissed.

## **STATEMENT OF FACTS**

### I.    **Allegations of the Amended Complaint**

The Amended Complaint includes the following allegations:

- Plaintiff owns and operates Craft & Vinyl, located in Columbus, Ohio. . . . Craft & Vinyl is a craft beer pub, vinyl record shop, and live music venue, all under one roof. (Am. Compl., ECF Doc. # 9, PAGEID # 280, ¶ 1.)

- Due to COVID-19, Craft & Vinyl's property has suffered "direct physical loss or damage"—under the plain and ordinary meaning of that term. Any jury would find that Craft & Vinyl has suffered a direct physical loss or damage because COVID-19 impaired Craft & Vinyl's property—COVID-19 made the property unusable in a way that it had been used before COVID-19. There is no need for a court to interpret these five ordinary words, and Ohio law compels that they are given their plain and ordinary meaning, which is exactly what a jury would do. (Am. Compl., ECF Doc. # 9, PAGEID # 280-81, ¶ 2.)

- Instead of being able to pack customers into its property to drink craft beer, eat food, and listen to music, Craft & Vinyl at the very most can now only (1) serve takeout or (2) serve a handful of customers at a time, each at least six feet apart. Because to do

---

[1] *Mastellone* was written by then Judge Melody J. Stewart, now Ohio Supreme Court Justice Melody Stewart.

anything else, would lead to the emergence of coronavirus at Craft & Vinyl. Until COVID-19 was brought a bit more under control, even these limited activities were not possible. (Am. Compl., ECF Doc. # 9, PAGEID # 281, ¶ 3.)

- This loss is "direct"—Craft & Vinyl is not asking the insurer to reimburse Craft & Vinyl after someone obtained a judgment against Craft & Vinyl for getting them sick. That might be an indirect loss. Craft & Vinyl is asking the insurer to pay for its loss of business income occasioned directly by being unable to use its property. (Am. Compl., ECF Doc. # 9, PAGEID # 281, ¶ 4.)

- This loss is physical. Craft & Vinyl is unable to use its interior space in the manner in which it had previously used its interior space. The probability of illness prevents the use of the space in no less of a way than, on a rainy day, a crumbling and open roof from the aftermath of a tornado would make the interior space of a business unusable. (Am. Compl., ECF Doc. # 9, PAGEID # 281, ¶ 5.) (Footnote omitted.)

- This loss is a loss. It is the loss of functionality of the space for business purposes. It is the diminishment of the physical space in the building. What once could hold many now can safely hold only a few. (Am. Compl., ECF Doc. # 9, PAGEID # 282, ¶ 6.)

- Plaintiff was forced to suspend or reduce business at Craft & Vinyl due to COVID-19 and the resultant closure orders issued by civil authorities in Ohio. (Am. Compl., ECF Doc. # 9, PAGEID # 283, ¶ 14.)

- Cincinnati issued Policy No. EPP 049 46 35 to Plaintiff for a policy period of June 26, 2018 to June 26, 2021, including a Businessowners Special Property Coverage Form. Policy No. EPP 049 46 35 is attached hereto as Exhibit A. (Am. Compl., ECF Doc. # 9, PAGEID # 284, ¶ 20.)

- On March 15, 2020, the State of Ohio issued a civil authority order requiring the closure of bars in Ohio and banning dine-in eating in Ohio. This order was in effect from March 15, 2020 until May 21, 2020. (Am. Compl., ECF Doc. # 9, PAGEID # 288, ¶ 34.)

- On March 22, 2020, the State of Ohio issued a civil authority order requiring the closure of non-essential businesses, which includes pubs, record stores, and live music venues. Music venues remain closed pursuant to Ohio's civil closure orders. (Am. Compl., ECF Doc. # 9, PAGEID # 288, ¶ 35.)

- Plaintiff seeks Class Action certification. (Am. Compl., ECF Doc. # 9, PAGEID # 288-292, ¶¶ 41-51.)

The Amended Complaint contains eight counts, all based on breaches of the policy: 1) Breach of Contract – Business Income Coverage; 2) Breach of Contract – Civil Authority Coverage; 3) Breach of Contract –Extra Expense Coverage; 4) Breach of Contract – Sue and Labor Coverage; 5) Declaratory Judgment – Business Income Coverage; 6) Declaratory Judgment – Civil Authority

Coverage; 7) Declaratory Judgment – Extra Expense Coverage; and 8) Declaratory Judgment – Sue and Labor Coverage. (Am. Compl., ECF Doc. # 9, PAGEID # 292-304.)

## II.     Plaintiff's Policy

Cincinnati issued Policy No. EPP 049 46 35 to TROY STACY ENTERPRISES INC. DBA CRAFT-N-VINYL for the policy period June 26, 2018 to June 26, 2021. The pertinent form in the Policy for purposes of Plaintiff's claim and Amended Complaint, and thus for this Motion, is form FM 101 05 16. (*See* Am. Compl., ECF Doc. # 9-1, PAGEID # 343, 345, 358-59, 378).

The requirement of "direct physical loss" is a core element in property insurance policies like Plaintiff's. For example, direct physical loss to the Plaintiff's property is a requirement for Business Income coverage:

> We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The suspension must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown on the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss.

(Am. Compl., ECF Doc. # 9-1, PAGEID # 358). The term "loss" is defined to mean **physical** loss or damage. (Am. Compl., ECF Doc. # 9-1, PAGEID # 378.) Accordingly, direct physical loss is required for Business Income coverage.

The requirement of direct physical loss additionally appears in the threshold requirement that there be a Covered Cause of Loss for **any** coverage to be available:

> SECTION A. COVERAGE
>
> We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

(Am. Compl., ECF Doc. # 9-1, PAGEID # 343.) Covered Cause of Loss is defined as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." (Am. Compl., ECF Doc. # 9-1,

PAGEID # 345). "Loss" is defined, in relevant part, as physical loss or physical damage. Accordingly, direct physical loss is a necessary element of Covered Cause of Loss. (Am. Compl., ECF Doc. # 9, PAGEID # 284-85, ¶ 21). Therefore, because it is an element of Covered Cause of Loss, direct physical loss is an integral part of the Civil Authority coverage. (Am. Compl., ECF Doc. # 9, PAGEID # 286, ¶ 30).

The definition of Covered Cause of Loss refers to exclusions. But, exclusions do not come into play unless there is first direct physical loss. *See Schmidt v. Travelers Indem. Co. of Am.*, 101 F. Supp. 3d 768, 776 (S.D. Ohio 2015) ("A liability insurer's obligation to its insured arises only if the claim falls within the scope of coverage. The party who seeks to recover under an insurance policy generally has the burden of demonstrating coverage under the policy and proving a loss.") (internal citation and quotations omitted). If an insured demonstrates direct physical loss is present, then exclusions may nevertheless apply. *See Murray v. Auto-Owners Ins. Co.*, 2019-Ohio-3816, ¶ 17 (Ohio Ct. App. Sept. 19, 2019) (recognizing that the insured has the burden to prove coverage under the policies and its loss, and then the insurer has the burden to prove an exclusion to coverage applies), *appeal not allowed*, 157 Ohio St. 3d 1538, 2020-Ohio-122, 137 N.E.3d 1195, ¶ 17 (2020).

If there is no direct physical loss, the exclusions need not be consulted because there is no coverage to begin with. *See, e.g.*, *Mastellone,* 175 Ohio App. 3d 23 at ¶¶ 61-69; *Zinser v. Auto-Owners Ins. Co.*, 2017-Ohio-5668, ¶ 33 (Ohio Ct. App. July 3, 2017) (Powell, J., concurring and dissenting in part).

In addition to the direct physical loss requirement, Civil Authority coverage requires that an insured suffer actual loss of Business Income caused by specific actions of a civil authority. Those civil authority orders must meet the following criteria:

(a)     ***Access*** to the area immediately surrounding the damaged property ***is prohibited*** by civil authority as a result of the damage; and

5

      (b)     The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the ***Covered Cause of Loss*** that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Am. Compl., ECF Doc. # 9-1, PAGEID # 359) (emphasis added). Accordingly, Civil Authority coverage requires both direct physical loss to property other than the insured's property and prohibition of access to the insured's property as a result of that direct physical loss.

## LAW AND ARGUMENT

**I.**    **Motion to Dismiss Standard.**

A motion to dismiss for failure to state a claim should be granted if, after the complaint's allegations are taken as true and all reasonable inferences are made in favor of the nonmoving party, it appears beyond a reasonable doubt that the nonmoving party cannot prove facts supporting his claim. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Parks v. Schelderer*, 2020 WL 2112160, at *2 (S.D. Ohio May 4, 2020); *Greene v. JPMorgan Chase, Nat'l Ass'n*, 2020 WL 2112277, at *1 (S.D. Ohio May 4, 2020); *Helfrich v. City of Pataskala*, 2020 WL 1853229, at *4 (S.D. Ohio Apr. 13, 2020).

Importantly, legal conclusions and other unsupported conclusions stated in the complaint may not be considered in determining a motion to dismiss. "The Court, however, does not have to 'accept unwarranted factual inferences.' A complaint 'must state more than a bare assertion of legal conclusions to survive a motion to dismiss.' Stated differently, '[a] plaintiff's [f]actual allegations must be enough to raise a right to relief above the speculative level." *See, e.g.*, *Centes v. Kirk*, 2020 WL 1140059, at *1 (S.D. Ohio Mar. 9, 2020); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *CBST Acquisition, LLC v. PNC Bank, N.A.,* 2019 WL 2603566, at *18 (S.D. Ohio June 25, 2019) ("Plaintiff has also not identified any facts supporting allegations that defendants breached any

purported contract by changing the amount owed. Plaintiff cannot rely on mere legal conclusions or speculation without any supporting factual allegations to withstand a motion to dismiss. For these reasons, plaintiff's breach of contract claim should be dismissed.").

It is proper for the Court to consider the insurance Policy attached to the Amended Complaint. *See, e.g.*, *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Write Start Early Christian Educ. Ctr., LLC v. Nat'l Fire & Marine Ins. Co.*, 2020 WL 1452018, at *4 (S.D. Ohio Mar. 25, 2020). The Policy is part of the Amended Complaint's allegations. Where the Policy terms and the Amended Complaint's allegations are in conflict, the terms of the Policy control. *See, e.g.*, *Thomas v. Equifax Info. Servs., LLC*, 2020 WL 1987949, at *5 (S.D. Ohio Apr. 27, 2020); *Howard Indus., Inc. v. Ace Am. Ins. Co.*, 2014 WL 978445, at *3 (S.D. Ohio Mar. 12, 2014).

## II. There Is No Direct Physical Loss and Accordingly No Business Income Coverage.

As shown, the Policy only provides coverage for direct physical loss. But, the Amended Complaint does not allege facts showing any direct physical loss. Accordingly, Plaintiff cannot possibly prove their claim. *See Mastellone,* 175 Ohio App. 3d 23, at ¶ 68.

### A. There Is No Direct Physical Loss To Plaintiff's Premises And Thus No Business Income Coverage.

*Mastellone* is directly on point. The relevant policy language in *Mastellone* was the same as that in the Cincinnati Policy; it required "direct physical loss." *Mastellone,* 175 Ohio App. 3d at ¶¶ 61–62. *Mastellone* holds that mold on exterior building siding did not constitute direct physical injury because it did not adversely affect the building's structural integrity. In this context, *Mastellone* rejects an argument that dark staining on the siding was physical injury, because the staining was "only temporary and did not affect the structure of the wood." The mold could be removed via cleaning, and its presence "did not alter or otherwise affect the structural integrity of

the siding." *Id.* at ¶¶ 61–69. *Mastellone* relied on a leading insurance law treatise, which states, "[t]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." 10A *Couch on Ins.* § 148:46 (3d Ed.1998). Thus, there was no coverage in *Mastellone*.

Similarly here, the alleged presence of the Coronavirus did not cause direct physical loss to property. The loss Plaintiff alleges is caused by the presence of the virus in our world, not by any physical damage or effect on Plaintiff's building or someone else's property. Indeed, premises where the virus has been confirmed to be present, such as hospitals, nursing homes and grocery stores, have remained open or been briefly closed and then reopened after cleaning. This is because those properties are themselves undamaged. Moreover, even if Coronavirus could cause direct physical loss to the premises, which it cannot, Plaintiff does not allege that the Coronavirus was ever present on any of its premises. Indeed, Plaintiff seems to admit otherwise. (*See* Am. Compl., ECF Doc. # 9, PAGEID # 281, 287, ¶¶ 3, 5, 33-36).

Moreover, even if it were present on Plaintiff's premises, the Coronavirus did not affect the structural integrity of the buildings, and it could be removed by cleaning. The Centers for Disease Control and Prevention (CDC) has instructed that the Coronavirus can be wiped off surfaces by cleaning. "The virus that causes COVID-19 can be killed if you use the right products. EPA has compiled a list of disinfectant products that can be used against COVID-19, including ready-to-use sprays, concentrates, and wipes." (*See* CDC Reopening Guidance for Cleaning and Disinfecting (4/28/2020), attached as Exhibit A; *see also* CDC, *Cleaning and Disinfection for Households*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cleaning-disinfection.html

(accessed June 26, 2020)).[2] Thus, as in *Mastellone*, even if there is actual presence of the Coronavirus, there is no direct physical loss because the virus either dies naturally in days, or it can be wiped away.

Plaintiff uses the word "physical" from time to time, apparently in an effort to insinuate direct physical loss happened. (*See* Am. Compl., ECF Doc. # 9, PAGEID # 281, 287-88, ¶¶ 5, 37-38). But, as shown, Plaintiff does not allege that the virus was in fact on surfaces in Plaintiff's pub. Instead, Plaintiff recites bare, conclusory allegations that "[t]he presence of COVID-19 caused direct physical loss" without specifically alleging where or how. (Am. Compl., ECF Doc. # 9, PAGEID # 287, ¶ 37). In essence, Plaintiff asserts generally that the Coronavirus is a physical thing, present in Ohio. In this regard, Plaintiff conflates the virus' presence with structural, physical damage. (Am. Compl., ECF Doc. # 9, PAGEID # 287, ¶¶ 37, 39). Plaintiff's legal characterizations and arguments are not allegations of facts and thus do not stand in the way of dismissal. *Centes*, 2020 WL 1140059, at *1; *Total Benefits Planning Agency*, 552 F.3d at 434; *CBST Acquisition,* 2019 WL 2603566, at *18.

Additionally, Plaintiff asserts that its loss is "physical" because it cannot use its interior space as it previously had. Plaintiff also alleges that its inability to use its interior space due to the "probability of illness" restricts its use of the premises in the same way that tornado damage would make the space unusable for business. (Am. Compl. ECF Doc # 9, PAGEID # 281, ¶ 5.) This

---

[2] Federal courts may take judicial notice of information published on the CDC's website or websites of other government agencies. *See Black v. Columbus Pub. Sch.*, 2007 WL 2713873, at *12 (S.D. Ohio Sept. 17, 2007) (taking judicial notice of information published on CDC's website); *see also Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, at *84 n.5 (1st Cir. 2010) (taking judicial notice of CDC website); *Loucka v. Lincoln Nat'l Life Ins. Co.*, 334 F. Supp. 3d 1, 8-9 (D.D.C. 2018) (taking judicial notice of CDC testing criteria published on website and collecting cases). This judicial notice does not convert a motion to dismiss into one for summary judgment. *Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791, 794 n.5 (N.D. Ohio 2012).

comparison is obviously inapt. The "probability of illness" in people is not analogous to the physical damage *actually* done to a building by a tornado. Among other things, a tornado cannot be wiped away with household cleaners. At the same time, Plaintiff admits it seeks no recovery for loss of use of the premises. (Am. Compl. ECF Doc # 9, PAGEID # 281, ¶ 5 n.1.)

Furthermore, a loss of use of a property where it was not structurally altered is not direct physical loss. *See, e.g.*, *N. River Ins. Co. v. Clark*, 80 F.2d 202, 203 (9th Cir. 1935) (finding no coverage for insured locomotive rendered "useless" because it was isolated due to fire damage in surrounding area, but locomotive itself was not damaged); *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 2, 751 N.Y.S.2d 4 (2002) (holding that business interruption losses resulting from off-site property damage restricting access to the insured theater was not direct physical loss or damage to insured theater); *Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Corp.*, 486 S.E.2d 249, 251 (N.C. Ct. App. 1997) (denying business income claim where insured car dealer lost income because dealership premises could not be accessed following a snowstorm).

At bottom, the Coronavirus, like the mold in *Mastellone*, does not physically alter the structure of property. This includes the type of property that would be in Plaintiff's premises, such as drywall or counters. Plaintiff does not allege that the virus physically altered the structure of its property. Accordingly, there was no direct physical loss, and thus no Business Income or Extra Expense coverage.

**B.    American Case Law Is Overwhelmingly Consistent With *Mastellone*.**

No case, in Ohio or elsewhere, has held that a virus constitutes direct physical loss. By contrast, numerous court decisions nationwide support *Mastellone*, holding that direct physical loss requires actual, tangible, permanent, physical alteration of property. *See, e.g.*, 10A *Couch on Ins.* § 148:46 ("The requirement that the loss be 'physical,' given the ordinary definition of that term, ***is widely held*** to exclude alleged losses that are intangible or incorporeal and, thereby, to

10

preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." (Emphasis added)).

Reaching the same conclusion as *Mastellone* is *Source Food Technology, Inc. v. U.S. Fidelity & Guarantee Co.,* 465 F.3d 834, 838 (8th Cir. (Minn.) 2006). There, the U.S. government imposed an embargo on the import of Canadian beef following the detection of Mad Cow Disease in Canadian cattle. Despite no evidence that *its* beef was contaminated, Source Food could not import it into the U.S. because of the embargo. It claimed lost business income under its insurance policy. That policy, like Plaintiff's, provided coverage if the suspension of business operations was "caused by ***direct physical loss to Property***." *Id.* at 835 (emphasis added). The insured argued "that the closing of the border caused direct physical loss to its beef product because the beef product was treated as though it were physically contaminated by mad cow disease and lost its function." *Id.* at 836. The court rejected this argument: "To characterize Source Food's inability to transport its truckload of beef product across the border and sell the beef product in the United States as direct physical loss to property would render the word 'physical' meaningless." *Id.* at 838.

Similarly, *Philadelphia Parking Authority v. Federal Insurance Co.,* 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005), holds that there was no direct physical loss to an airport parking facility that had to close on September 11, 2001 due to the terrorist attacks. And, in *Crestview Country Club, Inc. v. St. Paul Guardian Insurance Co*., 321 F. Supp. 2d 260, 264 (D. Mass. 2004), there was no direct physical loss to a golf course. Rather, the modification of how a hole on the course played due to the loss of a tree did not constitute direct physical loss to the course because, "physical must be given its plain meaning – e.g., 'material.'" *See also Pentair, Inc. v. Am. Guar. & Liab. Ins. Co*.,

11

400 F.3d 613, 616 (8th Cir. 2005); *City of Burlington v. Indem. Ins. Co. of N. Am.*, 332 F.3d 38, 44 (2d Cir. 2003); *N.E. Ga. Heart Ctr., P.C. v. Phoenix Ins. Co.*, 2014 WL 12480022, at *7 (N.D. Ga. May 23, 2014); *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 780 (2010).

Furthermore, *Social Life Magazine, Inc. v. Sentinel Insurance Co., Ltd.*, 1:20-cv-03311-VEC (S.D.N.Y.), ECF No. 24-1 at p. 15, addressed the direct physical loss issue in a Coronavirus coverage case. *Social Life* denies a motion for preliminary injunction.[3] The principal basis for that decision is the conclusion that a virus does not cause direct physical loss to property. The virus damages lungs; not printing presses. *Social Life*, 1:20-cv-03311-VEC (S.D.N.Y.), ECF No. 24-1 at p. 5. *Social Life* holds that "this kind of business interruption needs some damage to the property to prohibit you from going." 1:20-cv-03311-VEC (S.D.N.Y.), ECF No. 24-1 at p. at p. 15.

Additionally, as demonstrated, the CDC has instructed that the Coronavirus can be removed via cleaning. *Mastellone* recognizes that there is no direct physical loss when a substance can be removed via cleaning. In this regard, *Mastellone* is again consistent with U.S. law generally. *See, e.g.*, *Mama Jo's, Inc. v. Sparta Ins. Co.,* 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) ("[W]ith regards to Plaintiff's initial claim for cleaning, cleaning is not considered direct physical loss."); *Universal Image Prods., Inc. v. Chubb Corp.*, 703 F. Supp. 2d 705, 710 (E.D. Mich. 2010) (a complete cleaning of a ventilation system was not a direct physical loss), *aff'd*, 475 F. App'x. 569 (6th Cir. 2012).

---

[3] No written opinion was issued in *Social Life*, but a copy of the hearing transcript is available through the Federal Court's filing system, PACER. A file-stamped copy of the preliminary injunction hearing transcript reflecting the Court's ruling and rationale is attached as Exhibit B. Federal courts may take judicial notice of "proceedings in other courts of record." *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 n. 5 (6th Cir. 2005) (quoting *Rodic v. Thistledown Racing Club, Inc.*, 615 F.3d 736, 738 (6th Cir. 1980); *see also Landt v. Farley*, 2012 WL 4473209, at *1 n.2 (N.D. Ohio Sept. 26, 2012) (taking notice of filings on PACER in a different lawsuit).

### C.   The Lack of a Virus Exclusion Is Irrelevant Because There Is No Direct Physical Loss.

Plaintiff alleges that there is coverage because the Policy does not contain a virus exclusion. That assertion is legally incorrect. An exclusion can become relevant only if it is first determined that there is a covered loss. As shown, Covered Cause of Loss means all risks of direct physical loss that are neither excluded nor limited. Thus, if there is no direct physical loss in the first place, the existence or absence of a virus exclusion is irrelevant. For example, in *Ward General Insurance Services., Inc. v. Employers Fire Insurance Co*., 114 Cal. App. 4th 548, 555 (2003), a computer database crashed. Because there was no direct physical loss, it was "unnecessary to analyze the various exclusions and their application to this case." Similarly, in *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.,* 17 F. Supp. 3d 323, 333 (S.D.N.Y. 2014), a law firm closed because of a power outage. The loss of power was not a direct physical loss. Accordingly, it was unnecessary to decide whether a flood exclusion applied. *See also Zinser*, 2017-Ohio-5668, at ¶ 33; *Roundabout Theatre Co. v. Cont'l Cas. Co*., 302 A.D.2d 1, 9, 751 N.Y.S.2d 4, 10 (2002),

Plaintiff raises an Insurance Services Office (ISO) filing regarding the 2006 Virus Exclusion. (Am. Compl., ECF Doc. # 9, PAGEID # 286, ¶ 27). Because, the Policy's direct physical loss language is clear and unambiguous, that ISO Circular is unneeded extrinsic evidence, irrelevant and should not be considered. The Policy language controls the coverage determination, not the ISO Circular. *See, e.g.*, *Gerrish Corp. v. Universal Underwriters Ins. Co.,* 947 F.2d 1023, 1027 (2d Cir. 1991); *Monsanto Co. v. Aetna Cas. & Sur. Co.,* 1993 WL 542399, at *5 (Del. Super. Ct. Dec. 9, 1993), *aff'd*, 653 A.2d 305 (Del. 1994).

Nonetheless, the ISO Circular strongly supports Cincinnati here. In it, ISO specifically mentioned SARS and the risk of the spread of disease by the presence of disease-causing agents

13

on interior building surfaces.[4] (*See* Ex. C at pp.13-14 of 21 ("Introduction" and "Current Concerns" sections)). ISO stated that there was no coverage in the absence of a virus exclusion: "While ***property policies have not been a source of recovery for losses involving contamination by disease-causing agents*** . . . ." (*See* Ex. C at pp.14 of 21 ("Current Concerns" section)). Indeed, ISO foresaw that policyholders might try to do exactly what Plaintiff is attempting here--to assert coverage where there is none: "the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are ***efforts to expand coverage and to create sources of recovery for such losses, contrary to policy intent***. (*See* Ex. C at pp.14 of 21 ("Current Concerns" section)) (Emphasis added). So, on filing the virus exclusion, ISO recognized that virus was not covered to begin with. But, it presented the virus exclusion as a "belt and suspenders" approach to the issue. This stated intent is the exact opposite of Plaintiff's interpretation of the role of the virus exclusion in commercial property policies.

---

[4] A true and correct copy of the ISO Circular quoted by Plaintiff (Am. Compl., ECF Doc. # 1, PAGEID # 286, ¶ 27) and filed with the Ohio Department of Insurance is attached as Exhibit C. This Court can take judicial notice of the ISO Circular on two distinct bases. First, Plaintiff selectively quotes the ISO Circular in its Complaint. Second, the ISO Circular is an agency filing with the Ohio Department of Insurance. *See Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) ("when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."); *Kinman v. U.S.*, 2016 WL 7165986, at *4 (S.D. Ohio Dec. 7, 2016) (recognizing that on a 12(b)(6) motion to dismiss, the court "consider[s] the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *Oliver v. Gallagher*, 2006 WL 517640, at *3 (N.D. Ohio Mar. 2, 2006) ("Defendants correctly note that this Court may take judicial notice of the agency filings and decisions without converting Defendants' motion into one for summary judgment. . . . This Court also takes judicial notice of the affidavit attached to Plaintiff's response brief. Defendants refer to this affidavit in their reply brief, and there is no reason to believe Plaintiff would object to the taking of judicial notice of this material as he himself attached the document in support of his claim.") (internal citation omitted).

In sum, there is no coverage here because there is no direct physical loss. For that reason, no exclusion is needed.

## III.     There Is No Civil Authority Coverage.

As established, the Policy's Civil Authority coverage only applies if there is a Covered Cause of Loss, meaning direct physical loss, to property other than the Plaintiff's property. Even then, there is only coverage if the following additional requirements are met: a) access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and b) the action of civil authority is taken in response to dangerous physical conditions resulting from the direct physical loss. (Am. Compl., ECF Doc. # 9-1, PAGEID # 359). "[L]osses due to curfew and other such restrictions are not generally recoverable. . . . If a policy provides for business interruption coverage where access to an insured's property is denied by order of civil authority, access to the property must actually be specifically prohibited by civil order, not just made more difficult or less desirable." 11A *Couch on Ins.* § 167:15.

### A.     There Is No Direct Physical Loss To Other Property.

The plain language of the policy states that direct physical loss to property other than the Plaintiff's property is required for there to be Civil Authority coverage. Courts nationwide agree. *See United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 131 (2d Cir. 2006); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.,* 2020 WL 886120, at *8 (D.S.C. Feb. 24, 2020); *Not Home Alone, Inc. v. Phila. Indem. Ins. Co.,* 2011 WL 13214381, at *6 (E.D. Tex. Mar. 30, 2011); *S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.,* 2008 WL 450012, at *10 (S.D. Tex. Feb. 15, 2008). *Mastellone* is the bellwether case regarding direct physical loss. It holds that there must be structural alteration for the coverage to apply.

Just as the Coronavirus is not causing direct physical loss to Plaintiff's premises, it is not causing direct physical loss to other property. The Amended Complaint fails to identify any direct

physical loss, anywhere. Rather, it alleges that the State of Ohio ordered non-essential businesses to close or partially close. (Am. Compl., ECF Doc. # 9, PAGEID # 287, ¶ 35). This was done to keep people separated and thus to retard the spread of the virus. No facts are alleged that demonstrate that these things happened because of direct physical loss to anybody's property. Instead, the closings protected the public from human to human transmission of the virus.

After properly disregarding Plaintiff's repeated legal conclusions, there are no facts alleged that assert any direct physical loss. There are no alleged facts showing any change or alteration of anybody's physical property by the Coronavirus. There are, however, facts showing that the Coronavirus can be removed via cleaning. As established, this is one marker of something that is ***not*** direct physical loss. Accordingly, there is no direct physical loss to any other property as is required for Civil Authority coverage.

### B.    The Requisite Prohibition of Access Is Lacking.

The Civil Authority coverage requires that access to Plaintiff's premises be prohibited by an order of Civil Authority. But, no government order issued in Ohio prohibits access to Plaintiff's premises.[5] Based on the lack of such a prohibition here, there is no Civil Authority coverage.

This position is established by the law nationally. There is no Civil Authority coverage when a government order keeps people confined to their homes. *See Syufy Enters. v. Home Ins. Co. of Ind.*, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995); *Bros., Inc. v. Liberty Mut. Fire Ins. Co.,* 268 A.2d 611, 614 (D.C. 1970). In *Syufy*, there was a curfew to prevent rioting. Still, there was no civil authority coverage because access to the insured premises, a movie theater, was not

---

[5] Plaintiff did not attach to the Complaint any orders of civil authority alleged to impact its business. To the extent the content of these orders would assist the Court in ruling on this motion to dismiss, the Court may take judicial notice of them as public records. Doing so would not convert the motion to one for summary judgment. *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017); *Slusher v. Reader*, 2019 WL 1384423, at *4 (S.D. Ohio Mar. 27, 2019) (collecting cases).

prohibited. In *Brothers*, a curfew was ordered because of riots. However, although the curfew prevented a restaurant's customers from being out and about, it did not prohibit access to the restaurant's premises.

Furthermore, access to premises must be prohibited, not just limited. *See Schultz Furriers, Inc. v Travelers Cas. Ins. Co. of Am.*, 2015 WL 13547667, at *6 (N.J. Super. L. July 24, 2015); *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, 2010 WL 2696782, at *4 (M.D. Pa. July 6, 2010). In *Schultz*, there were serious traffic issues in lower Manhattan following Superstorm Sandy. Nevertheless, there was no civil authority coverage because it was not completely impossible for the public to access the insured store. In *Ski Shawnee*, a bridge repair hindered or dissuaded the majority of customers from visiting a ski resort. *Ski Shawnee* holds that did not constitute prohibition of access to the premises. *See also Goldstein v Trumbull Ins. Co.*, 2016 WL 1324197, at *12 (N.Y. Sup. Ct. Apr. 05, 2016); *TMC Stores, Inc. v. Federated Mut. Ins. Co.*, 2005 WL 1331700, at *4 (Minn. Ct. App. June 7, 2005).

Because the Amended Complaint's allegations establish that access to Plaintiff's premises was not prohibited, the Civil Authority coverage does not apply.

## IV. There Is No Covered Loss and Accordingly No Sue and Labor Coverage.

Counts four and eight seek so-called Sue and Labor coverage. That coverage applies to situations where the insured takes steps to mitigate a covered loss. Thus, it is effectively a reimbursement to an insured that protects the insurer's interests. Here, there is no Sue and Labor coverage because, as explained above, there is no covered loss.

Courts nationwide have consistently held that Sue and Labor coverage does not exist if there is no covered loss. Reimbursement for necessary expenses "are limited to expenses that reduce a *covered* business income loss." *Welspun Pipes, Inc. v. Liberty Mut. Fire Ins. Co.*, 891 F.3d 351, 356-57 (8th Cir. 2018). "Since the [sue and labor] clause is to reimburse the insured for

17

expenses incurred in satisfying the insured's duty to the underwriter, there is no such duty where the policy does not apply. The obligation exists only when the action taken is to prevent a loss for which the underwriter would be liable." *Port of Seattle v. Lexington Ins. Co*., 111 Wash. App. 901, 913, 48 P.3d 334, 340 (2002). *See also Buczek v. Cont'l Cas. Ins. Co*., 378 F.3d 284, 293 (3d Cir. 2004)); *GTE Corp. v. Allendale Mut. Ins. Co*., 372 F.3d 598, 618 (3d Cir. 2004); *Tucci v. Hartford Fin. Svcs. Group, Inc.*, 2011 WL 2555379, at *14 (D.N.J. June 27, 2011), *aff'd sub nom. Tucci v. Hartford Fin. Svcs. Group*, 507 F. App'x. 211 (3d Cir. 2012). *St. Marys Foundry, Inc. v. Emp'rs Ins. of Wausau*, 332 F.3d 989, 993 (6th Cir. 2003); *Wash. Mut. Bank v. Commonwealth Ins. Co.,* 133 Wash. App. 1031 (2006) ("WaMu's actions were not taken to prevent a 'covered loss.' Thus, WaMu's expenditures were not primarily for the benefit of the Insurers and are not compensable under the sue and labor clause."); *Am. Home Assur. Co. v. J. F. Shea Co*., 445 F. Supp. 365, 367 (D.D.C. 1978) ("Reimbursement under the sue and labor clause is only available if the labor was to prevent a loss that the policy would have covered."); *W. & Clay, LLC v. Landmark Am. Ins. Co.,* 2011 WL 321740, at *2 (W.D. Wash. Jan. 28, 2011); *Am. Home Assur. Co. v. Fore River Dock & Dredge, Inc*., 321 F. Supp. 2d 209, 220 (D. Mass. 2004); *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.,* 845 So. 2d 161, 168 (Fla. 2003).

Because Plaintiff had no covered loss in the first place, it could not have taken any steps to mitigate that covered loss. Accordingly, this coverage does not apply and the Amended Complaint should be dismissed.

## <u>CONCLUSION</u>

There is no possible coverage because the coronavirus does not cause direct physical loss and the Plaintiff does not allege otherwise. The Plaintiff has not alleged a claim on which relief can be granted. Accordingly, Cincinnati's Motion to Dismiss should be granted.

Respectfully submitted by:

**DEFENDANT, THE CINCINNATI INSURANCE COMPANY**

By its Counsel:

/s/ Michael K. Farrell
Michael K. Farrell (Ohio Bar No. 0040941)
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Phone 216-621-0200
Fax 216-696-0740
mfarrell@bakerlaw.com

Rodger L. Eckelberry (Ohio Bar No. 0071207)
BAKER & HOSTETLER LLP
200 S. Civic Center Dr., Suite 1200
Columbus, OH 43215-4260
Telephone: 614.228.1541
Facsimile: 614.462.2616
reckelberry@bakerlaw.com

Daniel G. Litchfield (*application for admission pending*)
Laurence J. Tooth (*pro hac vice pending*)
303 West Madison Street
Suite 300
Chicago, IL 60606
T: 312.781.6669 | F: 312.781.6630
Litchfield@LitchfieldCavo.com
Tooth@LitchfieldCavo.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically and will be served upon counsel of record through the Court's electronic filing system. All other parties will be served by regular U.S. mail.


/s/ Michael K. Farrell
*Attorney for Defendants*