UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| TROY STACY ENTERPRISES INC., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>THE CINCINNATI INSURANCE COMPANY,<br><br>        Defendant. | Judge: Matthew W. McFarland<br><br>Civil Action No. 1:20-cv-00312<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT CINCINNATI INSURANCE COMPANY'S MOTION TO CERTIFY QUESTIONS TO THE SUPREME COURT OF OHIO** |

  Plaintiff Troy Stacy Enterprises Inc. ("Troy Stacy"), individually and on behalf of all others similarly situated ("Plaintiff"), respectfully submits this memorandum in opposition to Defendant The Cincinnati Insurance Company's ("Cincinnati" or "Defendant") Motion to Certify Questions to the Supreme Court of Ohio.

### I. INTRODUCTION

  Certification to the Ohio Supreme Court is inappropriate because the issues that Cincinnati seeks to certify do not involve novel or intricate questions of state law nor do they affect vital state interests. The questions are not unique to Ohio policyholders and, in reality, are not even questions of Ohio law in any meaningful sense. They are questions of private insurance contract interpretation and, while the process of interpretation may be governed by principles of Ohio law with respect to some policyholders, those principles are well worn principles of insurance contract interpretation that this Court is equally well-equipped to apply to the insurance policies at issue. *See HoneyBaked Foods, Inc. v. Affiliated FM Ins. Co.*, 757 F. Supp. 2d 738, 744 (N.D. Ohio 2010)

(explaining, under Ohio law, standard rules of contract interpretation apply when construing insurance policies). Courts within the Sixth Circuit routinely hold that the interpretation of insurance policies are not issues that should be certified to state supreme courts. *See, e.g.*, *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 449–50 (6th Cir. 2009) (holding that even though interpretation of insurance policy was one of first impression, it did not warrant certification because there was sufficient guidance to allow clear and principled decision). This case is no different.

Moreover, it would be premature for the Court to certify any questions to the Ohio Supreme Court without a more developed factual record. The issue of whether COVID-19 causes "direct loss to property," as that phrase is used in property insurance policies, is a mixed question of law and fact. Thus, the answers to the questions that Cincinnati seeks to certify are not only dependent upon an interpretation of the Troy Stacy policy, but that interpretation is dependent on the facts of the case, including the presence and impact of COVID-19 on covered property. Whether COVID-19 caused or constituted "direct physical loss to property" will require scientific experts, including epidemiologists, to educate us all on the nature of the "direct loss" caused by this particular virus and analysis as to the effect that COVID-19 has had on Plaintiff's business operations. Such questions cannot be answered at this stage of the litigation and, therefore, the Ohio Supreme Court will not be in a position to answer the questions that Defendant seeks to certify without further factual development.

Finally, there are pending motions to centralize this litigation with the Judicial Panel on Multidistrict Litigation (JPML) and the matter is set for hearing on July 30, 2020. *See generally See In re COVID-19 Business Interruption Protection Ins. Litig.*, MDL No. 2942. Defendant implicitly acknowledges in its opposition to MDL transfer—that there is a strong possibility that

this case will be consolidated in an MDL. *See In re COVID-19 Business Interruption Protection Ins. Litig.*, MDL No. 2942, Doc. No. 556 at 9 (June 23, 2020) (proposing a location in the Midwest should centralization occur). Defendant seeks dismissal and/or certification to the Ohio Supreme Court, however, in an attempt to obtain a favorable ruling before centralization. As set forth in detail in Plaintiff's Motion to Stay (Dkt. No. 11-1), at the very least, this Court should not certify questions to the Ohio Supreme Court before the JPML's adjudication of the transfer motions. Prematurely doing so before the JPML's decision will only undermine efficiency and judicial economy and create the potential for inconsistent rulings affecting the nationwide litigation of the COVID-19 business interruption cases, which involve common questions of law and fact. Therefore, Defendant's motion should be denied.

## II. ARGUMENT

### A. Legal Standard

Federal courts have the power to certify questions to state supreme courts. *Pennington v. State Farm Mut. Auto. Ins. Co.,* 553 F.3d 447, 450 (6th Cir. 2009). Ohio S. Ct. Prac. R. 9.01(A), permits the certification of a question of law to the Ohio Supreme Court when "there is a question of Ohio law that may be determinative of the proceeding and for which there is no controlling precedent in the decisions of this Supreme Court." Although federal courts may certify questions to the Ohio Supreme Court, it is not mandatory. *See Drown v. Wells Fargo Bank, NA,* 2:10–CV–00272, 2010 WL 4939963, at *1 (S.D. Ohio Nov. 30, 2010) (citing *Lehman Bros. v. Schein,* 416 U.S. 386, 390–91 (1974)). The Sixth Circuit has stated that "generally we will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves." *Pennington*, 553 F.3d at 450 (citation and internal quotation marks omitted). "The

decision whether or not to utilize a certification procedure lies within the sound discretion of the district court." *Transam. Ins. Co. v. Duro Bag Mfg. Co.,* 50 F.3d 370, 372 (6th Cir. 1995).

**B. Certification is Not Appropriate.**

Cincinnati fails to establish that certification is appropriate here. "In determining whether to exercise discretion to certify a question of law to the Ohio Supreme Court, federal courts generally consider: (1) whether the question invokes a vital interest of state sovereignty, such as the construction of a state constitutional provision or a state statute; (2) whether lower state court and federal court rulings allow the court to discern a reasonably clear and principled answers; (3) whether certification of the issue would save time, energy, and resources; and (4) whether the certification proponent's motion to certify is timely."[1] *R.W. Beckett Corp. v. Allianz Global Corp. & Spec. SE*, No. 1:19-CV-428, 2020 WL 1975788, at *5 (N.D. Ohio April 24, 2020) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 75-79 (1997) and other cases). None of these factors weigh in favor of certification to the Ohio Supreme Court in this case.

**1. The questions do not involve vital interest of state sovereignty or important issues unique to Ohio law.**

The questions Cincinnati seeks to certify do not involve vital interests of state sovereignty, such as the construction of a state constitutional provision or state statute. *See R.W. Beckett Corp.*, 2020 WL 1975788, at *5. The questions present issues involving the interpretation of insurance provisions agreed upon by private parties that are governed by well-established principles of contract interpretation. *See HoneyBaked Foods, Inc.*, 757 F. Supp. 2d at 744 ("The primary goal

---

[1] Whether the Ohio Supreme Court is permitted to accept certification of questions from a federal court is a distinct issue from whether a federal court should exercise its discretion to certify questions to a state supreme court. Cincinnati analyzes only the requirements of S. Ct. Prac. 9.01(A)—which governs when the Ohio Supreme Court is permitted to accept questions for certification—in arguing that certification is proper. Cincinnati fails to analyze the factors that federal courts consider when determining whether a federal court should exercise its discretion to certify a question to a state supreme court. Cincinnati thus fails to carry its burden to show certification should be granted and its motion should be denied.

of contract construction is to give effect to the intentions of the contracting parties."); E. Allan Farnsworth, Farnsworth on Contracts, at 218 ("most of what we usually think of as 'contract law' consists of a legal framework within which parties may create their own rights and duties by agreement . . . . [and] society confers upon contracting parties wide power to shape their relationship.")

Further, the questions that Cincinnati seeks to certify involve the interpretation of contract provisions that are not unique to the State of Ohio and that will not turn on an interpretation unique to Ohio law. *See* Memorandum in Support of Motion to Stay, Doc. No. 11-1, at 4-7; *see also* Declaration of Professor Tom Baker, Doc. No. 11-2; Restatement of the Law Liability Insurance ("RLLI") at §§ 2-4 (discussing that most states, including Ohio, have adopted a standard and uniform approach to interpreting insurance policies).

Indeed, the insurance industry uses standardized terms in insurance policies precisely because the predictability of results from standardized language—across the various states—allows insurers to compile information in order to charge appropriate rates based on the relevant risks and prior loss experience. *See* Baker Decl., Doc. No. 11-2. If the presence of COVID-19 meant "direct loss to property" for a policyholder in Ohio but not one in another state, that actuarial data on losses would be rendered meaningless, undermining both the property insurance market and the reliability of standard contract terms. *Id.* Therefore, the questions Cincinnati seeks to certify do not involve interests that are vital or unique to the State of Ohio. Accordingly, this factor weighs in favor of denying Cincinnati's motion.

## 2. State and federal court rulings on the interpretation of insurance policies under Ohio law provide sufficient guidance to allow a clear and principled decision.

The legal questions that Cincinnati seeks to certify to the Ohio Supreme Court are governed by well-established principles of contract interpretation and do not involve novel issues of state

law. Under Ohio law, "standard rules of contract interpretation apply when construing insurance policies." *HoneyBaked Foods, Inc.*, 757 F. Supp. 2d at 744 (citing *St. Marys Foundry v. Employers Ins. of Wausau,* 332 F.3d 989, 992 (6th Cir. 2003) (applying Ohio law)). "The law concerning contract interpretation, including insurance policies, is well-established." *United Ohio Ins. Co. v. Brooks*, No. 12-11-04, 2012 WL 1099821, at *3 (Ohio App. Ct. April 2, 2012).

When confronted with the contractual interpretation of an insurance policy, Ohio courts must give effect to the intent of the parties to the agreement. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999). Ohio courts start by examining the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 130 (1987). The plain and ordinary meaning of the language used in the policy governs unless another meaning is clearly apparent from the contents of the policy. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 241 (1978). When the language of the policy is clear, Ohio courts may look no further than the writing itself to find the intent of the parties. *Id.* Thus, this is ordinarily the end of the analysis.

Ohio law thus provides a well-established framework under which insurance policies must be interpreted. The framework does not change regardless of the policy language at issue or the factual context in which the policy language is applied. This case will, therefore, be decided by what the policies say and how the facts apply to the policy language. This Court is equally well-equipped to apply these universal principles of contract interpretation and they provide sufficient guidance to allow a clear and principled decision, without certification to the Ohio Supreme Court.

Courts within the Sixth Circuit agree and routinely find that issues involving the interpretation of insurance policies are not issues that should be certified to state supreme courts—even when the specific insurance provision at issue is addressed for the first time. *See, e.g.*,

*Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 449–50 (6th Cir. 2009) (finding that even though legal question involving interpretation of insurance policy was one of first impression, it did not warrant certification because there was sufficient guidance to allow clear and principled decision); *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995) (holding district court did not abuse its discretion in refusing certification and stating that even though Kentucky had not addressed the exact question at issue, it did have well-established principles to govern the interpretation of insurance contracts); *R.W. Beckett Corp.*, 2020 WL 1975788, at *5 (holding case law sufficient to discern a reasonably clear and principled answer to whether meaning of terms in an insurance contract were plain or ambiguous); *Cincinnati Ins. Co. v. St. Paul Protective Ins. Co.*, No. 3:06 CV 2729, 2007 WL 2584029, at *3-4 (N.D. Ohio Sept. 7, 2007) (stating that interpreting insurance contracts is neither novel nor relies on conflicting federal interpretations of an important state law question). Like these cases, this case does not justify certification to the Ohio Supreme Court because it does not present a novel state issue nor a conflicting federal interpretation of an important state law question. Accordingly, this factor also weighs in favor of denying Cincinnati's motion.

    **3. Certification will not save time, energy, and resources.**

Certification will not save time, energy, and resources. As set forth above, this Court is equally well-equipped to apply the universal principles of contract interpretation, under Ohio law, to the policies at issue in this case. Therefore, certifying the questions to the Ohio Supreme Court will only unnecessarily delay the adjudication of these issues. The parties will be required to submit briefs to the Ohio Supreme Court addressing whether certification is proper, amicus curiae will be permitted time to file additional briefs, and the parties will be required to wait for the Ohio Supreme Court's decision on whether it will even accept the questions for review. S. Ct. Prac. R.

9.05(A)-(B). Assuming the Ohio Supreme Court agrees to accept one or more of the questions for review, the parties will then be required to brief the merits and oral argument will be scheduled. S. Ct. Prac. R. 9.07(A)-(B). Then the parties will be required to await a written opinion finally answering the certified questions. S. Ct. Prac. R. 9.08. This long and arduous process will only unnecessarily delay these proceedings and unnecessarily burden the Ohio Supreme Court. *See Grover by Grover v. Eli Lilly and Co.*, 33 F.3d 716, 719 (6th Cir. 1994) (recognizing that when a state supreme court accepts a certified question, it undertakes a substantial burden). Therefore, this factor weighs in favor of denying Cincinnati's motion.

### 4. Certification is premature.

The questions that Cincinnati seeks to certify cannot be decided by the Ohio Supreme Court without a more developed factual record. When the factual record in this case is clearer, the Court will be in a better position to determine what specific issue(s), if any, it should certify to the Ohio Supreme Court. *See, e.g.*, *Minick v. Metropolitan Government of Nashville and Davidson Cnty.*, No. 3:12-cv-0524, 2014 WL 5073590, at *7 (M.D. Tenn. Oct. 8, 2014) ("[I]t would be premature for the court to certify any questions to the Tennessee Supreme Court without a better sense of the factual record. . . ."); *Yardley*, 2013 WL 6051838, at *6. The issue of whether COVID-19 causes "direct physical loss to property," as that phrase is used in the insurance policies at issue, is a mixed question of law and fact that requires an interpretation and application of insurance policy language in light of the presence or impact of COVID-19 on covered property. Whether COVID-19 caused or constituted "direct physical loss to property" will require scientific experts, including epidemiologists, to explore the nature of "direct physical loss to property'" caused by this particular virus as well as an analysis of how COVID-19 has affected Plaintiff's business operations. Such questions cannot be answered at this stage of the litigation.

Moreover, as set forth in Plaintiff's Memorandum in Support of Plaintiff's Motion for a Temporary Stay (Dkt. No. 11-1), granting certification to the Ohio Supreme Court before the JPML adjudicates the transfer motions, will only undermine efficiency and judicial economy and create the potential for inconsistent rulings in the nationwide litigation of the COVID-19 business interruption cases, which involve common questions of law and fact. *See In re COVID-19 Business Interruption Protection Ins. Litig.*, MDL No. 2942, Doc. No. 4-1 at 4-11 (April 21, 2020); *see also id.*, Doc. No. 544 at 8-9. Therefore, because all of the factors weigh in favor of denying certification, Cincinnati's motion should be denied.

### III.  CONCLUSION

For the foregoing reasons, this Court should deny Cincinnati's Motion to Certify Questions to the Ohio Supreme Court.

Dated:  July 6, 2020

Respectfully submitted,

*/s/ Kenneth P. Abbarno*
Kenneth P. Abbarno
Mark A. DiCello
Mark Abramowitz
**DICELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Mentor, Ohio  44060
Telephone:  (440) 953-88
kabbarno@dicellolevitt.com
madicello@dicellolevitt.com
mabramowitz@dicellolevitt.com

Adam J. Levitt
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone:  (312) 214-7900
alevitt@dicellolevitt.com

Mark Lanier*
Alex Brown*
Skip McBride*

**THE LANIER LAW FIRM PC**
10940 West Sam Houston Parkway North
Suite 100
Houston, Texas  77064
Telephone:  (713) 659-5200
WML@lanierlawfirm.com
alex.brown@lanierlawfirm.com
skip.mcbride@lanierlawfirm.com

Timothy W. Burns*
Jeff J. Bowen*
Jesse J. Bair*
Freya K. Bowen*
**BURNS BOWEN BAIR LLP**
One South Pinckney Street, Suite 930
Madison, Wisconsin 53703
Telephone:  (608) 286-2302
tburns@bbblawllp.com
jbowen@bbblawllp.com
jbair@bbblawllp.com
fbowen@bbblawllp.com

Bryan L. Bleichner*
Jeffrey D. Bores*
Christopher P. Renz*
Gary K. Luloff*
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, Minnesota 55401
Telephone:  (612) 339-7300
bbleichner@chestnutcambronne.com
jbores@chestnutcambronne.com
crenz@chestnutcambronne.com
gluloff@chestnutcambronne.com

Douglas Daniels*
**DANIELS & TREDENNICK**
6363 Woodway, Suite 700
Houston, Texas  77057
Telephone:  (713) 917-0024
douglas.daniels@dtlawyers.com

*Counsel for Plaintiffs*
*and the Proposed Classes*

\*Applications for admission *pro hac vice* to be filed

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was fled using the United States District Court for the District of Oregon's CM/ECF service, which will send notification of such filing to all counsel of record on this 6th day of July, 2020.

*/s/ Kenneth P. Abbarno*
Kenneth P. Abbarno
**DICELLO LEVITT GUTZLER LLC**