## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

TROY STACY ENTERPRISES INC.,
individually and on behalf of all others
similarly situated,

                       Plaintiff,

      v.

THE CINCINNATI INSURANCE
COMPANY,

                    Defendant.

Judge: Matthew W. McFarland

Civil Action No. 1:20-cv-00312

## MEMORANDUM IN SUPPORT OF MOTION
## FOR APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(g)

Pursuant to Federal Rule of Civil Procedure 23(g), Troy Stacy Enterprises Inc., Plaintiff in the above-captioned action, respectfully hereby submits this memorandum in support of its request for the appointment of Adam J. Levitt of DiCello Levitt Gutzler LLC ("DLG"), W. Mark Lanier of The Lanier Law Firm ("LLF"), and Timothy W. Burns of Burns Bowen Bair LLP (collectively, the "LLB Team") as Interim Co-Lead Class Counsel.

### I.  INTRODUCTION

Adam J. Levitt of DLG, W. Mark Lanier of LLF, and Timothy W. Burns of Burns Bowen Bair LLP respectfully seek appointment as Interim Co-Lead Class Counsel in this lawsuit, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.  The LLB Team has the necessary insurance coverage, class action, and trial experience to lead this litigation.  The LLB team also readily satisfies the requirements of Fed. R. Civ. P. 23(g) because they: (a) have been investigating the claims at issue; and devoting significant resources to these investigations, since the start of the

COVID-19 pandemic; (b) have substantial experience in litigating cases involving insurance policies and class actions; and (c) have the human and capital resources necessary to efficiently and aggressively prosecute this litigation.

The law firms comprising the LLB Team offer an array of close to 100 lawyers and an equal number of staff, in offices in Chicago, Cleveland, Houston, Los Angeles, Madison, New York, Oklahoma City, and St. Louis.  The LLB Team has deep financial resources and an already-retained lineup of the top experts and consultants in the United States, including one of the top epidemiological statisticians in the country, one of the top forensic accounting firms, and Professor Tom Baker, of the University of Pennsylvania, the Reporter of the American Law Institute's Restatement of the Law of Liability Insurance.

For all of the foregoing reasons, as well as for all of the reasons set forth below, Plaintiffs respectfully request that the Court enter the proposed Order, submitted contemporaneously herewith, appointing the proposed leadership structure in the manner requested herein.

## II.   LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 23(g)(3), this Court may "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *See* MANUAL FOR COMPLEX LITIGATION § 21.11 (4th ed. 2020) ("MCL").  Plaintiffs' attorneys may "stipulate to the appointment of a lead interim counsel and a steering committee to act for the proposed class.  Such a stipulation leaves the court with the tasks of determining that the chosen counsel is adequate to serve as interim class counsel and making a formal order of appointment." *Id.*

In evaluating proposed interim case leadership, the Court must consider proposed leadership counsel's: (1) work in identifying or investigating potential claims in the action; (2) experience in handling complex litigation and the types of claims asserted in this action; (3) knowledge of applicable law; and (4) available resources. Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider other matters pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B). As discussed below, the LLB Team satisfies each of these factors and will more than adequately represent the interests of the Class.

## III. ARGUMENT

### A. The Court Should Appoint Adam J. Levitt, W. Mark Lanier, and Timothy W. Burns as Interim Co-Lead Class Counsel, Pursuant to Fed. R. Civ. P. 23(g).

A court may designate interim class counsel before deciding whether an action may be certified as a class. Fed. R. Civ. P. 23(g)(3). When, as here, one applicant or applicant group seeks appointment as class counsel,[1] the court may appoint that applicant only if the applicant is adequate. Fed. R. Civ. P. 23(g)(2). In making this determination, the court must consider:

    (i)      the work counsel has done in identifying or investigating potential claims in the action;

    (ii)      counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

    (iii)      counsel's knowledge of the applicable law; and

    (iv)      the resources that counsel will commit to representing the class[.]

---

[1] Although there are presently three other business interruption class action cases against Defendant The Cincinnati Insurance Company ("Cincinnati") pending in this District, all three cases were filed after this case and counsel in those cases have not sought appointment as interim co-lead class counsel. *See Taste of Belgium LLC v. The Cincinnati Insurance Company*, 1:20-cv-00357-MWM (S.D. Ohio May 5, 2020); *Swearingen Smiles LLC, et al. v. The Cincinnati Insurance Company, et al.*, 1:20-cv-00517-MWM (S.D. Ohio July 2, 2020); *Reeds Jewelers of Niagra Falls, Inc. v. Cincinnati Insurance Company*, No. 1:20-cv-00649-MWM (S.D. Ohio Aug. 21, 2020). Plaintiff here has concurrently moved to consolidate these cases because they involve common questions of law and fact and consolidation will further efficiency and conserve judicial resources.

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). This includes consideration of the standards set forth in the Manual for Complex Litigation, Fourth (2004). *See Walker v. Discover Fin. Servs.*, No. 10-CV-6994, 2011 WL 2160889, at *2 (N.D. Ill. May 26, 2011) (citing MCL § 21.11 (2004)).

In class action litigation, courts have used different approaches for selecting among applicants. MCL § 21.27. "By far the most common is the so-called 'private ordering' approach" in which the lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel is adequate to represent the interests of the class.[2] *Id.* The LLB Team presents a streamlined, three-attorney leadership structure, backed by their respective law firms, that dispenses with the need for local or liaison counsel and sufficiently spreads litigation risk.[3] As this Court is aware, three-attorney leadership structures are not only routinely

---

[2] Appointment of unquestionably qualified Proposed Interim Co-Lead Class Counsel here will only benefit the proposed Class and further efficiency by providing the Class with a unified voice and ensuring the efficient and economical prosecution of this case. It will also ensure that there is no rivalry or competing interests among the proposed leadership firms and/or other counsel in the future who may seek appointment. Any opposition to consolidation and appointment of Interim Co-Lead Class Counsel by Cincinnati is a transparent attempt to further its fragmentation strategy to keep these cases divided and disorganized.

[3] Rather than file separate actions and then join forces during their pendency, the firms comprising the LLB Team mutually agreed at the outset of the COVID-19 Business Interruption Protection Insurance litigation to work jointly to pursue enforcement of the coverage protections which the proposed class seeks. In other words, their private ordering efforts began even earlier than the *Manual* recommends.

granted in class action cases like this one,[4] but courts regularly appoint even larger leadership slates in cases of this magnitude.[5]

1. **The LLB Team Has Worked Extensively to Identify and Investigate the Claims in This Action.**

The LLB Team has already demonstrated—and will continue to demonstrate—a willingness and ability to commit to the prosecution of this case. The LLB Team has spent considerable time and effort identifying and investigating potential claims in this action. If nothing else, the comprehensive complaint filed on behalf of the Class evidences the LLB Team's dedication to this litigation. Specifically, the LLB Team has done the following:

- Filed and has been actively litigating more than twenty pending COVID-19 Business Interruption Insurance cases—including, in many instances, the first-filed cases against various insurers, including this case, which was the first nationwide class action filed against Cincinnati;[6]

---

[4] *See, e.g.*, *In re Fairlife Milk Products Marketing and Sales Practices Litig.*, No. 19-cv-3924, 2020 WL 362788 (N.D. Ill.) (appointed three-firm leadership); *Moehrl v. Nat'l Ass'n of Realtors*, 2020 WL 5260511, at *2 (N.D. Ill. May 30, 2020) (appointed a three-firm leadership); *In re Treasury Sec. Auction Antitrust Litig.*, 2017 WL 10991411, at *2 (S.D.N.Y. Aug. 23, 2017) (appointed a three firm leadership); *In re Navistar MaxxForce Engines Mktg., Sales Practices and Prods. Liab. Litig.*, No. 1:14-cv-10318 (N.D. Ill., Mar. 5, 2015) (appointed a three-firm leadership); *In re Premera Blue Cross Customer Data Security Breach Litig.*, 3:15-md2633, Dkt. No. 35 (D. Or. Aug. 7, 2015) (appointed a three-firm leadership); *In re 5-Hour ENERGY Marketing and Sales Practices Litig.*, No. MDL 13-2438, 2015 WL 12734796 (C.D. Cal. Jan. 22, 2015) (appointed three-firm leadership); *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, No. 3:11-md-02244 (N.D. Tex., Jan. 9, 2012) (appointed a three-firm leadership); *Takeda v. Turbodyne Tech., Inc.*, 67 F. Supp, 2d 1129, 1139 (C.D. Cal. 1999) (appointed a three-firm leadership); *Reiger v. Altris Software, Inc.*, No. 98CV0528J, 1998 WL 1986953, at *5 (S.D. Cal. Sept. 14, 1998) (appointed a three-firm leadership).

[5] *See, e.g.*, *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072, 2019 WL 1411510, at *13 (N.D. Cal. March 28, 2019) (confirming appointment of four-firm leadership); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 58 (E.D.N.Y. 2006) (appointed a four-firm leadership).

[6] Adam J. Levitt and DLG were recently appointed Interim Co-Lead Class Counsel in a similar action, arising out of business interruption claims from the COVID-19 pandemic, against Westchester Surplus Lines Insurance Company in the United States District Court for the Northern District of Georgia. *See The K's Inc. v. Westchester Surplus Lines Ins. Co.*, No. 1:20-cv-01724-WMR, Dkt. Nos. 56-57 (N.D. Ga. Oct. 5, 2020).

- Researched and analyzed filings and orders in other business interruption insurance cases arising out of the COVID-19 pandemic and similar factual scenarios[7];

- Is representing and pursuing direct claims on behalf of some of the most prominent businesses in the United States, including the Houston Rockets and the Toyota Center arena;

- Its members are among a select, invited group of lawyers, judges, and academics working with IAALS, the Institute for the Advancement of the American Legal System, to formulate, craft, and propose a set of discovery and case management protocols for all of the COVID-19 Business Interruption Insurance cases;

- Reviewed and analyzed hundreds of different insurance policies in connection with hundreds of business interruption claims submitted to various insurers, including Cincinnati, arising from the COVID-19 pandemic; and

- Have retained and have been consulting with world-renowned experts relative to economic damages, insurance policy language, and epidemiological issues expected to arise during this litigation.

This work is precisely the type of work the Advisory Committee Notes to Rule 23 state that the Court should consider in appointing interim class counsel. The Notes also contemplate that the appointment of interim class counsel may be necessary to conduct pre-certification discovery prior to a determination to grant or deny class certification pursuant to Fed. R. Civ. P. 23(c)(1), inasmuch as "some discovery is often necessary for that determination." *See* Fed. R. Civ. P. 23, Advisory Committee Notes (2003). The Notes further state that: "[o]rdinarily such work is handled by the lawyer who filed the action." *Id.*

---

[7] Importantly, courts have denied motions to dismiss—filed by Cincinnati in other cases—that are substantially similar to the one pending here. *See, e.g.*, *Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-CV-03127-SRB, --- F. Supp.3d ---, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020); Order (Dkt. 29), *K.C. Hopps, Ltd. v. The Cincinnati Ins. Co.*, No. 20-cv-00437-SRB (W.D. Mo. Aug. 12, 2020). Likely reflecting the futility of filing a second motion to dismiss given the similarity of the language of the policies at issue, Cincinnati has since filed an Answer in some of its subsequent cases. *See, e.g.*, *Posh KC, LLC, et al. v. The Cincinnati Ins. Co.*, No. 20-cv-00675-SRB (W.D. Mo. Sept. 19, 2020); *Jacob Rieger & Company LLC, et al. v. The Cincinnati Insurance Company Inc.*, No. 4:20-cv-00681-SRB (W.D. Mo. Oct. 1, 2020).

Here, a significant amount of discovery and related motion practice is expected to take place before class certification. *See id.* (noting that interim class counsel may be necessary to "make or respond to motions before certification"). Moreover, the class certification motion has not yet been scheduled and discovery will be necessary before a class certification motion is filed. Furthermore, discovery in this matter may be complicated and require negotiations and motions prior to class certification. Coupling this effort with the LLB Team's extraordinary trial skills, commercial insurance litigation experience, and class action experience renders the LLB Team the right choice to lead this case.

**2. The LLB Team's Experience in Handling Insurance Coverage Litigation, Class Actions, and Other Complex Litigation is Extensive.**

The second factor the Court must consider is "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action." Fed. R. Civ. P. 23(g)(1)(A)(ii). As set forth in greater detail below, the LLB Team has extensive experience in class action and commercial insurance litigation throughout the United States—having recovered billions of dollars for their clients and other class members. By virtue of this experience, the LLB Team possesses the necessary skill, capacity, and dedication to this class action to fairly and effectively represent the proposed class. The Team's experience in the commercial-insurance industry and class action litigation is unparalleled, and we were the first to bring this litigation to the forefront of American jurisprudence. Indeed, Messrs. Levitt and Burns were invited to work on the IAALS discovery protocols project, and Messrs. Lanier and Levitt have repeatedly been invited to speak nationally on these ever-developing issues.[8]

---

[8] For example, W. Mark Lanier and Adam J. Levitt served as two of the four panelists in the Angeion Group's Zoom conference, entitled, "Class Action Landscape in a Post-COVID World." Additionally, Mr. Levitt was recently the featured speaker in an Everlaw Zoom conference on the topic of Emerging Claims and Trends in COVID-19 Litigation.

### a. *Adam J. Levitt, DiCello Levitt Gutzler LLC*

Adam J. Levitt is a founding partner of DiCello Levitt and Managing Partner of its Chicago office, from where he heads the firm's product liability and public client practice groups. His experience is broad, and he has handled cases in each of the firm's practice areas. Mr. Levitt is one of the nation's leading advocates for plaintiffs in class action, commercial, and public client litigation, particularly in financial services, insurance, consumer protection, automotive defect, agricultural, antitrust, environmental, and securities litigation.

Mr. Levitt has close to 30 years' experience leading nationwide commercial and class action lawsuits and has recovered close to $20 billion in pre- and post-verdict settlements for his clients and class members. He was recently recognized by Benchmark Litigation's 2021 guide—the definitive guide to the world's leading litigation firms and lawyers—as a National Litigation Star in securities law and a Litigation Star in the State of Illinois. He served as co-lead counsel and recovered nearly $2 billion for plaintiffs in three of the largest biotechnology class actions in history: *In re Genetically Modified Rice Litig.*, Case No. 4:06-md-1811-CDP (MDL No. 1811) (E.D. Mo.) (aggregate settlement of more than $1.1 billion); *In re Imprelis Herbicide Mktg., Sales Practices, and Prods. Liab. Litig.*, Case No. 11-md-2284 (E.D. Pa.) ($570 million settlement); and *In re StarLink Corn Prods Liab. Litig.*, Case No. 01-cv-4928 (MDL No. 1403) (N.D. Ill.) ($110 million settlement), and presently serves as co-lead counsel in *In re Navistar Maxxforce Engines Mktg., Sales Practices, and Prods. Liab. Litig.*, Case No. 14-cv-10318 (MDL No. 2590) (N.D. Ill.), where Judge Gottschall recently granted final approval to a $135 million settlement for truck owners and lessees.

Mr. Levitt was also part of the leadership team representing consumers in the massive Volkswagen "Clean Diesel" Emissions case. The San Francisco legal newspaper, *The Recorder*

labeled the plaintiffs' leadership group that was appointed in that case, which settled for more than $17 billion, a "class action dream team." Separately, Mr. Levitt represented the State of New Mexico with respect to the Volkswagen diesel emissions scandal, where he assisted the State in resolving its claims for the highest per-vehicle settlement anywhere in the United States (*State of New Mexico v. Volkswagen Group of America Inc., et al.*, No. D-101-CV-2016-00131 (N.M. First Judicial Dist. Ct., Santa Fe County)). Mr. Levitt currently represents the State of Michigan in its PFAS-related water contamination litigation—one of the largest environmental pollution cases in U.S. history (*Attorney General Dana Nessel, on behalf of the People of the State of Michigan, and the State of Michigan v. 3M Company, et al.*, No. 20-03366-NZ (Cir. Ct. Kent County, Mich.).

Moreover, and specifically with respect to this litigation, in addition to being repeatedly recognized as a thought leader on these subjects by national and international media, Mr. Levitt is among a select, invited group of lawyers, judges, and academics working with the Institute for the Advancement of the American Legal System, to formulate, craft, and propose a set of discovery and case management protocols for all COVID-19 Business Interruption Insurance cases.

Mr. Levitt is an elected member of the American Law Institute and the Economic Club of Chicago. He is also an appointed member of the Advisory Council of the Bolch Judicial Institute at Duke Law School and is President of Class Action Trial Lawyers. He was named one of the 500 Leading Lawyers in America by Lawdragon, "Litigator of the Week" by *American Lawyer* magazine, and has been named an Illinois "Super Lawyer" for more than a decade. He received the Burton Award, an annual award bestowed on the top 20 law review articles written by practicing lawyers, for his article Agricultural "Market Touching": Modernizing Trespass to Chattels in Crop Contamination Cases, 38 U. Haw. L. Rev. 409 (2016), published in the University of Hawaii Law Review. Mr. Levitt has testified before the Illinois Supreme Court Rules

Committee on class action practice and has chaired and spoken at multiple complex commercial litigation conferences across the United States. The breadth and depth of Mr. Levitt's experience and successful track record in large-scale class and other complex litigation readily merits his appointment here.

Assembled from some of the country's top complex litigators, Mr. Levitt's firm, DLG,[9] has extensive class action and trial experience. One of the few firms of its kind that regularly tries cases to verdict, DLG was recently honored as being one of only twelve nationally-recognized plaintiffs' firms by the Benchmark Litigation 2021 guide—the definitive guide to the world's leading litigation firms and lawyers. DLG's practice also includes in-house focus group and mock trial programs, led by DLG partner Robert F. DiCello, enabling the firm to develop cases for trial from the outset. DLG attorneys have obtained jury verdicts across a variety of fields, including verdicts in excess of $81 million in the past few years alone, and have successfully led—and are currently leading—some of the largest and most complex nationwide class actions and commercial litigations, including the nationwide data breach litigations against Equifax and Marriott, representing hundreds of millions of individuals whose data was compromised due to inadequate data security practices. *In re Equifax Inc., Customer Data. Sec. Breach Litig.*, No. 17-md-2800 (N.D. Ga.) ($700 million settlement); *In re Marriott International Customer Data Security Breach Litigation*, No. 8:19-md-02879-PWG (D. Md.).

---

[9] Among other awards and honors, DLG attorneys were recently recognized by the Benchmark Litigation 2021 guide, including Adam J. Levitt being named National Litigation Star in securities law and Litigation Star in the State of Illinois; Messrs. Mark DiCello and Greg Gutzler being named Litigation Stars in Ohio and New York respectively; and Amy Keller being named a Future Star for the State of Illinois. DLG attorneys have also repeatedly been named to *The National Law Journal*'s "Trailblazer" lists, including Messrs. Levitt and Mark DiCello being named to *The National Law Journal's* 2018 list of Elite Boutique Trailblazers; Messrs. Levitt and Robert F. DiCello being named to *The National Law Journal's* 2020 list of Plaintiffs' Lawyers Trailblazers (with Mr. DiCello and Amy Keller also winning those awards in 2017 and 2018, respectively); Amy Keller was also named a *National Law Journal* Elite Woman of the Plaintiffs' Bar in 2020, and the firm was named the 2020 Privacy/Data Breach Firm of the Year.

The other DLG attorneys working with Mr. Levitt on this action also have extensive class action experience and have worked alongside Mr. Levitt on other class action matters.

DLG founding partner and Managing Partner of its Cleveland office, Mark A. DiCello, has been appointed co-lead counsel in massive multidistrict litigation involving defective pelvic mesh devices and was appointed to a plaintiffs' committee in a products liability litigation over metal hip implants, which ultimately led to over $12 billion in settlements. *In re Stryker LFIT V40 Femoral Head Products Liability* Litigation, No. 1:17-md-02768 (D. Mass.). Mr. DiCello is frequently asked to speak at gatherings of trial lawyers and has addressed national organizations on topics ranging from defective medical devices, medical malpractice, environmental catastrophes, and advanced trial skills. Specific to this action, Mr. DiCello has, from the outset, been instrumental in working with Messrs. Lanier, Levitt, and Burns in formulating and developing the strategies governing the forward progress of these cases.

DLG partner Kenneth P. Abbarno's practice spans nearly 30 years, covering a wide range of civil litigation including, insurance litigation from a plaintiff and defense perspective, business torts, catastrophic injury cases, transportation industry litigation, toxic torts, products liability, professional liability, employer intentional tort, and other complex litigation. Mr. Abbarno has tried well over 50 civil lawsuits in numerous jurisdictions and has handled cases across the United States in both state and federal courts. In addition, Mr. Abbarno has managed nationwide litigation for numerous entities. Mr. Abbarno consistently takes an active role in case development and strategy from the outset through trial. In addition, Mr. Abbarno has been an invited lecturer covering numerous areas of law including transportation litigation, trial tactics, and medical malpractice litigation. Mr. Abbarno has been recognized by his peers and clients in various publications for his outstanding legal capabilities and accomplishments, including being selected

as an Ohio Super Lawyer, named Inside Business Leading Lawyer, Transportation Lawyer of the Year in Cleveland, and the Best Lawyers in America.  In this litigation, Mr. Abbarno assumed an early leadership role in client development, case strategy, as well as pleadings and motions practice.  Mr. Abbarno has also taken an active role as a liaison with defense counsel from the outset of this litigation.

DLG senior counsel Mark S. Hamill has assumed early responsibility in prosecuting this litigation.  Mr. Hamill brings significant experience in complex securities, antitrust, and other class actions in which he has regularly taken a lead role in financial, accounting, and eDiscovery matters, as well as presenting or challenging the analysis and testimony of expert economists.  Mr. Hamill was instrumental in researching and drafting the Complaint in this case.

DLG associate Daniel R. Ferri has been involved in this litigation from the outset.  Mr. Ferri has considerable experience in complex class action litigation, and, in particular, with class action litigation involving insurance matters.  Mr. Ferri regularly takes a lead role in briefing and arguing motions, including motions to dismiss and motions for class certification, and expects to be significantly involved in the briefing and discovery in this action.

DLG associate Brittany E. Hartwig has also assumed early responsibility in prosecuting this litigation.  Ms. Hartwig brings significant class action, complex commercial, and consumer protection experience, currently working with Mr. Levitt on, among other things, *Fishon, et al. v. Peloton Interactive, Inc.*, Case No. 19-cv-11711 (LJL) (S.D.N.Y.), a class action involving certain misrepresentations and material omissions regarding the "ever-growing" size of Peloton's on-demand fitness class library, and *Weidman v. Ford Motor Company*, Case No. 18-cv-12719 (E.D. Mich.), representing plaintiffs who were harmed by their purchase of certain model year 2013-2018 Ford F-150 trucks which contained a defective front brake master cylinder that places them

12

at risk of suddenly and unexpectedly losing braking ability. Ms. Hartwig has assumed early responsibility in both the researching and drafting in this case. Additional information about DiCello Levitt Gutzler can be found in its Firm Resume, a copy of which is attached as Exhibit A hereto.

### b. W. Mark Lanier, The Lanier Law Firm

Since he founded The Lanier Law Firm in 1990, W. Mark Lanier has earned international recognition as one of the top trial attorneys in the United States, with firm offices in Houston, Oklahoma City, New York, and Los Angeles supporting his work for clients across the country. Mr. Lanier's courtroom experience is significant and diverse, including:

- In July 2018, Mr. Lanier and his trial team secured a record setting $4.69 billion verdict for 22 women and their families who alleged that decades of daily use of Johnson & Johnson's asbestos-laden talcum powder products caused their ovarian cancer. *Ingham v. Johnson & Johnson et al*, No. 1522-CC10417 (22nd Jud. Dist. Cir. Ct. Mo.).

- In November 2017, Mr. Lanier helped secure a $247 million verdict against DePuy Orthopaedics Inc., a subsidiary of health care giant Johnson & Johnson, over Pinnacle metal-on-metal hip implants. The verdict was won on behalf of six New York residents who claim they were injured by the faulty medical devices. This verdict comes on the heels of two others won in March and December of 2016, both against DePuy and Johnson & Johnson. The March verdict was recognized by the *National Law Journal* as the *Outstanding Medical Device Award* for 2016, and as one of the *Top 50 Verdicts of the Year*. In the December verdict, Mr. Lanier won over $1 billion, which ranked as the fourth largest verdict in the nation for that year. Together, the two consecutive verdicts were ranked as the first and second largest products liability verdicts of 2016. *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, No. 3:11-md-02244 (N.D. Tex.).

- Mr. Lanier scored another headline-grabbing verdict in April 2014 against Takeda Pharmaceutical Co. Ltd. and Eli Lilly & Co. over the diabetes drug Actos which exceeded over $9 billion. *In re: Actos (Pioglitazone) Prods. Liab. Litig.,* No. 6:12-cv-00064 (W.D. La.).[10]

---

[10] From the very beginning of his career, Mr. Lanier has proved again and again that he is not one to slow down or rest on the laurels of his recent victories. Early in 1993, he made a huge impact in the world of courtroom litigation by winning a then-record $483 million verdict for a small oil company in a business fraud case against one of the nation's largest oil providers. *Rubicon Petroleum v. Amoco Production, et al.*, No. 90-S-0444-C (Tex. Dist. Ct.). His winning of a $258 million verdict in the nation's

In addition to national recognition, Mr. Lanier has earned multiple accolades from his legal peers in Texas.  In a state-wide attorney survey published in *Texas Monthly* magazine, he has earned selection to the annual *Texas Super Lawyers* list since it debuted in 2003, including being named one of the Top 10 Attorneys in Texas in 2007, 2009, 2010, 2012, 2013, 2014, 2015, 2016, 2017, 2018.  *Texas Lawyer* newspaper has selected Mr. Lanier as one of the state's Top 5 "Go To" Personal Injury Plaintiff Attorneys three different times, in addition to naming him the Top "Go To" Personal Injury Attorney in Texas.  In 2015, he earned the Texas Bar Foundation's Ronald D. Secrest Outstanding Trial Lawyer Award. *Texas Best Lawyers* magazine also has named him on their annual listing for more than a decade.[11]

Mr. Lanier frequently instructs other attorneys in seminars held across the nation about his trial techniques and how to better try cases.  He regularly serves as a featured lecturer at many of the nation's top law schools, including Harvard Law School, Stanford Law School,

---

first trial over the painkiller Vioxx, *Ernst v. Merck*, set the tone for similar cases nationally.  Mr. Lanier followed up the record Vioxx verdict with two wins totalling more than $50 million over the same drug. *Ernst v. Merck*, No. H-02-3490, 2002 WL 34433652 (S.D. Tex. Oct. 29, 2002).  He also obtained a precedent-setting settlement for a national sugar association trade group and several of the largest U.S. sugar manufacturers regarding a false promotion lawsuit against one of the world's leading distributors of artificial sweeteners. *Western Sugar Cooperative, et al. v. Archer-Daniels-Midland Co., et al.*, No. 11-cv-3473 (C.D. Cal. 2015).  He also was responsible for reaching a sizeable settlement for syringe manufacturer Retractable Technologies in an antitrust case against Becton Dickinson & Company, which served as the basis for the movie "*Puncture,*" starring Chris Evans. *Retractable Technologies, Inc. et al. v. Becton Dickinson and Co.*, No. 2:085-cv-00141 (E.D. Tex. 2011).  His $118 million verdict on behalf of 21 asbestos victims is considered one of the largest asbestos liability awards in U.S. history. *Johnny B. Aaron, et al v. The Carborundum Company*, No. 94-C-2110-2 (Tex. Dist. Ct.).  Mr. Lanier also secured a settlement for 130 Ingersoll Rand Plc employees in a lawsuit over unpaid bonuses related to the sale of an Ingersoll Rand subsidiary. *Walter Nye, et al. v. Ingersoll Rand*, No. 08-3481 (D. N.J. 2011).

[11] Mr. Lanier received further recognition in the *Verdict Search/Texas Lawyer* Top 50 Verdicts of 2012. *Texas Lawyer* also named him as one of the Top 25 Attorneys of the Past Quarter Century while recognizing LLF as the 2015 Litigation Department of the Year.  The same publication also recognized him as Houston's 2016 Lawyer of the Year for Mass Tort Litigation/Class Actions.  He is Board Certified in Personal Injury Trial Law by the Texas Board of Legal Specialization. He is licensed to practice in all Texas state and federal courts, New York state courts and the U.S. Supreme Court.  He is further Board Certified in Complex Litigation by the National Board of Trial Advocates and is a Founding Board Member certified in Complex Litigation.

Pepperdine University School of Law, University of Chicago Law School, and Texas Tech University School of Law. Mr. Lanier was elected to the American Bar Association's Fellows of the American Bar Association and was named a Life Fellow of the same organization in 2012. In 2018, Mr. Lanier was named to the Board of Advisers for the Center on Civil Justice, at NYU Law School.

The other LLF attorneys working with Mr. Lanier on this action also have extensive class action experience and have worked alongside Mr. Lanier on other class action matters.

LLF Managing Attorney Alex J. Brown represents companies and individuals in federal and state courts across the country at both the trial and appellate level, and in domestic and international arbitration forums. Before he became a plaintiff's lawyer, Mr. Brown was a partner in the Houston office of one of the oldest and largest law firms in Texas. There, he represented multi-national corporations in complex business disputes involving international project development, partnerships, oil and gas ventures, corporate governance and shareholder's rights, real estate development, and mass tort litigation. Mr. Brown worked closely with Mark Lanier as an integral member of his trial team, which tried two medical device cases in 2016 that resulted in a $1 billion jury verdict and a $502 million jury verdict, as well as the Actos drug trial in 2014 that resulted in a $9 billion jury verdict. Mr. Brown was recognized for his work on these cases with Mr. Lanier by *The Legal 500* 2016 publication—the world's largest legal referral guide. In addition to his commercial litigation practice, Mr. Brown has represented large groups of clients in national/multi-district product liability litigation and served on the Talc MDL trial committee. He currently heads the trial committee of a joint venture organized to pursue environmental litigation on behalf of the State of New Jersey. For years, Mr. Brown was selected

multiple times as a "Texas Rising Star" by *Texas Monthly Magazine* and as a "Texas Super Lawyer" from 2017 to 2020 for his product-liability experience.

LLF Managing Attorney for the New York Office, Evan M. Janush, oversees commercial litigation for LLF'S New York office and he is the practice group leader of the firm's employment litigation practice. Mr. Janush has significant experience representing clients in complex commercial, pharmaceutical mass tort, antitrust and class-action litigation, and representing employees in discrimination and whistleblower actions. Mr. Janush was recently named as a Super Lawyers™ Rising Star in the New York Metro area for his work in the firm's pharmaceutical and product liability mass tort practice areas. Mr. Janush has participated in senior roles in numerous multi-district litigations, and he has represented the rights of individuals who have been injured by defective products, toxic torts, and general negligence. Mr. Janush is also a member of the firm's Sports and Entertainment practice area due to his significant contract drafting and litigation experience, which includes having been involved in contract litigation concerning several major record label disputes.

LLF Of Counsel, Harvey Brown, is a member of the Issues and Appeals practice group. Judge Brown joined LLF following distinguished service as a District Judge in Harris County, Texas and as a Justice on the First Court of Appeals for the State of Texas. While on the appellate court, Judge Brown also served on the Texas state multidistrict litigation panel. During his tenure on the First Court of Appeals, Judge Brown was named Appellate Judge of the Year by the Association of Civil Trial and Appellate Specialists and Mentor of the Year by the Houston Young Lawyers Association and the Texas Young Lawyers Association. He authored more than 1,000 opinions on the court. Before his judicial service he was in private practice for more than 20 years, handling both trials and appeals. Additional information about The Lanier Law Firm can be found

in its Firm Resume, a copy of which is attached as Exhibit B hereto.

### c. *Timothy W. Burns, Burns Bowen Bair LLP*

Timothy W. Burns is the founding partner of Burns Bowen Bair LLP.  He combines a deep understanding of insurance law and the insurance industry with a broad understanding of the civil litigation system that allows him to bring creative solutions to high-stakes problems.

Mr. Burns led the representation for the board of directors of one of the world's largest banks in a front-page-headline engagement that resulted in the largest fully-funded-by-insurance shareholder derivative settlement in history.  He also served as co-lead counsel in path-breaking consumer fraud class actions against major life insurance companies that the federal court in New York described as changing the financial reserving practices of one of the world's largest life insurance companies.  Mr. Burns resolved a major automobile parts manufacturer's contingent business interruption claim arising from the Japanese Tsunami and the partial shutdown of the manufacturer's supply chain, resulting in a settlement worth tens of millions of dollars.

Mr. Burns has led representations that obtained $75 million in insurance coverage for a major mutual fund complex in connection with its exposure to claims for market-timing and late-trading practices, over $100 million for another mutual fund complex that faced enormous liability for fiduciary liability claims concerning its role as a 401(k) plan administrator, and over $100 million for yet another mutual fund complex that was sued for staggering losses during the 2008 financial crisis.

In addition, Mr. Burns has successfully represented a major automobile manufacturer in obtaining over $100 million with respect to claims relating to the diesel emissions scandal.  He is credited with saving a major pipeline construction company by obtaining a major recovery

from D&O insurers for company-threatening securities fraud litigation.  Mr. Burns'
representation helped bring a major auto parts manufacturer out of bankruptcy by obtaining
over $150 million in recoveries relating to securities fraud, derivative, and fiduciary liability
lawsuits.

Before founding Burns Bowen Bair LLP, Mr. Burns was a partner at three of the largest
law firms in the country and led the insurance recovery practice groups at two of those law
firms.  He has since built one of the world's top directors' and officers' insurance practices
from scratch.  Mr. Burns has co-authored two books on directors' and officers' insurance and
lectured and written widely on that topic as well as many other areas of insurance law and public
policy.  For years, he taught at directors' colleges put on by some of the foremost law and
business schools in the country, including Stanford's Directors' College and the University of
Chicago, Stanford, and Dartmouth Directors' Consortium.

Mr. Burns chaired the Insurance Coverage Litigation Committee of the American Bar
Association and is a member of the American College of Coverage Counsel.  He formerly
served on the board of directors of the American Constitution Society and currently serves on
the board of directors of the Wisconsin Justice Initiative.  In 2019, Mr. Burns was appointed by
Wisconsin Governor Tony Evers to serve on the National Commission on Uniform State
Laws.  He is a member of the American Law Institute and is the Institutional Representative for
the American Constitution Society at the European Law Institute.  Mr. Burns has also chaired
the Insurance Coverage Litigation Committee of the American Bar Association.  In 2015,
Senator Tammy Baldwin forwarded Mr. Burns' name to President Obama as one of her choices
to serve on the United States Court of Appeals for the Seventh Circuit.  Additional information
about Burns Bowen Bair can be found in its Firm Resume, a copy of which is attached as Exhibit

18

C hereto.

### 3. The LLB Team Possesses Significant Expertise in Complex Litigation.

Insurance bad faith and coverage disputes, central to this litigation, are specialized practice areas in which Proposed Interim Co-Lead Counsel have significant experience. As detailed above, the LLB Team has extensive experience and expertise in complex litigation, including substantial subject matter knowledge and experience with respect to the issues and the law applicable to the instant claims. The LLB Team has also conducted substantial research and analysis specific to business interruption claims arising out of the COVID-19 pandemic, in connection with this case and other litigation presently pending against other insurers.

### 4. The LLB Team Has and Will Continue to Commit the Necessary Resources to Adequately Represent this Class.

To date, the LLB Team has invested considerable time and resources to support the interests of the proposed class. Specifically, the LLB Team has retained highly regarded experts in their respective fields in order to support the prosecution of this case. Of note, the LLB Team has retained and is working closely with Professor Tom Baker, William Maul Measey Professor of Law at the University of Pennsylvania Carey Law School. Professor Baker is a highly regarded insurance expert, a leading insurance law and policy scholar, and the Reporter for the American Law Institute's Restatement of the Law, Liability Insurance.[12] In addition to its collaboration with Professor Baker, the LLB Team has engaged a world-renowned epidemiologist, an industry leading economic consulting firm, and a former insurance industry insider who served as Chief Executive Officer of one of the largest insurance companies in the United States. The LLB Team

---

[12] https://www.law.upenn.edu/cf/faculty/thbaker/

19

will continue to commit resources and effort to this case as they have committed to their other, successful class actions discussed above.

## IV.    CONCLUSION

Given their extensive work investigating and formulating the case theory, structure, and claims in this unique action, their experience in handling complex litigation and commercial insurance cases, their knowledge of the applicable law, and the resources that they have and will continue to commit to this action, the LLB Team readily satisfies Rule 23(g)'s interim class counsel selection criteria and is well-situated to adequately represent the interests of the proposed classes.  The LLB Team therefore respectfully requests that the Court grant its application for Adam J. Levitt of DiCello Levitt Gutzler LLC, W. Mark Lanier of The Lanier Law Firm, and Timothy W. Burns of Burns Bowen Bair LLP, to serve as Interim Class Counsel.

Dated:  October 15, 2020

Respectfully submitted,

*/s/ Adam J. Levitt*
Adam J. Levitt
Amy E. Keller
Daniel R. Ferri
Mark Hamill
Laura E. Reasons
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
dferri@dicellolevitt.com
mhamill@dicellolevitt.com
lreasons@dicellolevitt.com

Mark Lanier*
Alex Brown*
Skip McBride*

20

**THE LANIER LAW FIRM PC**
10940 West Sam Houston Parkway North
Suite 100
Houston, Texas 77064
Telephone: 713-659-5200
WML@lanierlawfirm.com
alex.brown@lanierlawfirm.com
skip.mcbride@lanierlawfirm.com

Timothy W. Burns
Jeff J. Bowen*
Jesse J. Bair*
Freya K. Bowen*
**BURNS BOWEN BAIR LLP**
One South Pinckney Street, Suite 930
Madison, Wisconsin 53703
Telephone: 608-286-2302
tburns@bbblawllp.com
jbowen@bbblawllp.com
jbair@bbblawllp.com
fbowen@bbblawllp.com

*Plaintiff's Proposed Interim Class Counsel*

*/s/ Kenneth P. Abbarno*
Mark A. DiCello
Kenneth P. Abbarno
Mark Abramowitz
**DiCELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Mentor, Ohio 44060
Telephone: (440) 953-8888
madicello@dicellolevitt.com
kabbarno@dicellolevitt.com
mabramowitz@dicellolevitt.com

Douglas Daniels*
**DANIELS & TREDENNICK**
6363 Woodway, Suite 700
Houston, Texas 77057
Telephone: (713) 917-0024
douglas.daniels@dtlawyers.com

*Additional Counsel for Plaintiff and the Proposed Class*

\* Applications for admission *pro hac vice* to be filed

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing was filed electronically using the Court's CM/ECF service, which will send notification of such filing to all counsel of record on this 15th day October 2020.

*/s/ Kenneth P. Abbarno*
Kenneth P. Abbarno
**DICELLO LEVITT GUTZLER LLC**