# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| TROY STACY ENTERPRISES, INC., individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>THE CINCINNATI INSURANCE COMPANY,<br><br>        Defendant. | Case No. 1:20-cv-00312-MWM |
| SWEARINGEN SMILES LLC AND ELEISHA J. NICKOLES DDS, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>THE CINCINNATI INSURANCE COMPANY, THE CINCINNATI CASUALTY COMPANY, AND THE CINCINNATI INDEMNITY COMPANY,<br><br>        Defendants. | Case No. 1:20-cv-00517-MWM |

| | |
|---|---|
| REEDS JEWELERS OF NIAGARA FALLS, INC., individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>   v.<br><br>THE CINCINNATI INSURANCE COMPANY,<br><br>                Defendant. | Case No. 1:20-cv-649-MWM |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO CONSOLIDATE ACTIONS**

Plaintiff Troy Stacy Enterprises Inc. ("Troy Stacy") is moving to consolidate this lawsuit with two other putative nationwide class actions filed against defendant The Cincinnati Insurance Company ("Cincinnati")— *Swearingen Smiles LLC v. The Cincinnati Insurance Company, et al.*, No. 1:20-cv-00517-MWM (S.D. Ohio July 2, 2020) and *Reeds Jewelers of Niagara Falls, Inc. v. Cincinnati Insurance Company*, No. 1:20-cv-00649-MWM (S.D. Ohio Aug. 21, 2020)—a motion now joined by the plaintiffs in those actions, Swearingen Smiles, LLC ("Swearingen") and Reeds Jewelers of Niagara Falls Inc. ("Reeds Jewelers").[1]

But despite the superficial similarity that the three cases involve claims for insurance coverage arising out of the COVID-19 pandemic, Troy Stacy has not satisfied its burden to show that "the specific risks of prejudice and possible confusion" of consolidation are "overborne by the risk of inconsistent adjudications of common factual and legal issues," or that consolidation would

---

[1] The Motion also sought to consolidate *Taste of Belgium LLC v. The Cincinnati Ins. Co., et al.*, No. 1:20-cv-357, but that case was voluntarily dismissed on October 19, 2020.

serve the interests of justice while also improving judicial efficiency. *Borden v. Coll.*, 2016 WL 5791649, at *1 (S.D. Ohio Oct. 4, 2016).

In reality, if even if Plaintiffs' claims do survive the pending motions to dismiss—which a growing consensus of decisions nationwide make clear they should not[2]—the prevalence of individual issues of fact and law (such as the plaintiffs' different locations, different experiences with COVID-19, widely varied business types subjecting them to different government orders, and different facts regarding their business histories, operations, and finances) makes consolidation inappropriate. Nor is consolidation necessary given that these cases are already pending in the same Court and before the same judge, who can just as easily perform what little coordination might be necessary without formally consolidating these cases. Thus, the Court should deny Troy Stacy's motion to consolidate.

## LAW AND ARGUMENT

**I.     Plaintiffs Have Not Met Their Burden To Justify Consolidating Cases.**

"The moving party bears the burden of proof" in a motion for consolidation under Fed. R. Civ. P. 42(a). *Farahmand v. Rumsfeld*, 2002 WL 31630709, at *1 (E.D. Pa. Nov. 20, 2002). The goal of Rule 42(a) "is to promote economy in the administration of justice." *J4 Promotions, Inc. v. Splash Dogs, LLC*, 2010 WL 3063217, at *1 (S.D. Ohio Aug. 3, 2010) (citation omitted); *see also Borden*, 2016 WL 5791649, at *1 ("The underlying objective [of Rule 42(a)] is to administer the court's business with expedition and economy while providing justice to the parties.") (quotations omitted).

---

[2] These cases make clear that, even where the virus is present, there is no coverage. (*See* Mot. to Dismiss, *Troy Stacy* ECF No. 13; Reply in Supp. of Mot. to Dismiss, *Troy Stacy* ECF No. 22; Mot. to Submit Supp. Authority, *Troy Stacy* ECF No. 23; Mot. to Submit Add'l Supp. Authority, *Troy Stacy* ECF No. 32.)

Thus, "[w]hile the existence of common issues is a prerequisite for consolidation, their mere presence does not compel consolidation." *Farahmand*, 2002 WL 31630709, at *1 (citation omitted). Rather, the Court must balance "the specific risks of prejudice and possible confusion" that would result from consolidating different cases against the "risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Borden*, 2016 WL 5791649, at *2 (quoting *Hendrix v. Raybestos-Manhatten, Inc.*, 776 F.2d 1492, 1496 (11th Cir. 1985)).

Troy Stacy's motion makes no attempt to address these issues, which is not surprising because none of them support consolidation here. Accordingly, for the reasons below, the Court should deny Troy Stacy's motion for consolidation.

## II. The Prevalence of Individual Issues Makes Consolidation Inappropriate.

"A motion to consolidate may be denied if the common issue is not a principle one, if it will cause delay in one of the cases, or will lead to confusion or prejudice in the trial of a case." *Farahmand*, 2002 WL 31630709, at *2. Similarly, "[w]here the evidence in one case is not relevant to the issues in the other, consolidation would create a likelihood of prejudice by confusing the issues." *Id. See also U.S. ex rel. Boise v. Cephalon, Inc.*, 2014 WL 6676629, at *2 (E.D. Pa. Nov. 25, 2014) (same); *Henderson v. National R.R. Passenger Corp.*, 118 F.R.D. 440, 441 (N.D. Ill. 1987) (declining to consolidate cases where, "[a]lthough certain common issues of fact may exist in both actions, the variety of individual issues predominate."); *Servants of Paraclete, Inc. v. Great Am. Ins. Co.*, 866 F. Supp. 1560, 1573 (D.N.M. 1994) (declining motion to consolidate where, "in

4

the cases sought to be consolidated, individual questions of law and fact may well predominate over common ones").

Here, the "common" issues Plaintiffs allege are that Cincinnati uses "substantially the same Cincinnati policy forms and provisions" and "all [three] complaints contain many of the same factual allegations regarding the COVID-19 pandemic, the requirements for coverage under the policies, the effect of the pandemic and closure orders on their businesses, class allegations, and how coverage was triggered." (Mem. in Supp., *Troy Stacy* ECF No. 29, 7.) But these superficial similarities are substantially outweighed by the number of individualized questions of law and fact that would arise and predominate if Plaintiffs' claims survive dismissal.

Which policies apply to which Plaintiffs is not in dispute; nor is the existence or content of government orders regulating the operation of certain businesses due to the spread of COVID-19. What may very well be in dispute, though only if the Court denies Cincinnati's motions to dismiss, are a plethora of other individualized issues of fact and law, such as: (1) these are different insureds; (2) they have different types of businesses; (3) different government orders with different provisions in the different municipalities and states are involved; (4) there are different civil restrictions for different types of businesses; (5) there are potential differences in the alleged direct physical loss or damage alleged at each location; [3] (6) the facts may differ regarding whether the virus was ever present on each insured premises; (7) the facts will likely differ regarding each insured's and its employees' and customers' exposure to the virus; (8) there will be different financial and alleged loss facts for each insured; (9) there will be different facts regarding government payments and loans received by each insured; (10) facts will differ concerning the

---

[3] Cincinnati has pending motions to dismiss all these complaints on the basis that, as a matter of law, they do not allege the requisite direct physical loss or damage to their properties. Those motions should be granted and in that event, the consolidation issue would be eliminated.

5

regulation of and any temporary closures of each insured's business; (11) there will be different facts regarding when full business was resumed; (12) facts may differ regarding each insureds' particular response to the government orders; (13) there will be differences in the actions various plaintiffs took, or did not take, to mitigate their alleged damages; and (14) there will be differences in which state's substantive law will apply.

Specifically, while all cases are filed in the Southern District of Ohio, the plaintiffs are located in different states, different cities, and different counties, and operate fundamentally different types of businesses. For example, the *Swearingen* plaintiffs operate dentistry practices in East Liverpool, Ohio (Columbiana County) and Wheeling, West Virginia. (*Swearingen* Am. Compl., Ex. A, ¶¶ 6-7.). On the other hand, Troy Stacy operates a craft beer pub, vinyl record shop, and live music venue, known as Craft & Vinyl, located in Columbus, Ohio, which is in Franklin County. (*Troy Stacy* Compl., Ex. B, ¶ 1.) And Reeds Jewelers brings two additional states's substantive laws and COVID-19 orders into the mix, as well as and another fundamentally different business—namely, seven jewelry and retail watch outlets in six different New York cities across five counties as well as a store in Duxbury, Massachusetts in Plymouth County.[4] (*Reeds Jewelers* Compl., Ex. C, ¶ 3.).

So, not only will these cases involve government orders from at least four different states, nine different counties, and ten different cities, but those orders may apply differently based on the different types of business conducted by the various Plaintiffs. The Plaintiffs operate businesses across the wholly distinct industries, from healthcare, to food and beverage, to

---

[4] According to Reeds Jewelers' company website, it operates jewelry stores in Amherst, NY; Lakewood, NY; Niagara Falls, NY; Orchard Park, NY; Dewitt, NY; and Perinton, NY. *See* Reed Jewelers, https://reedsjewelers.com (last visited 10/31/2020). These cities span the following five counties in New York: Erie, Chautauqua, Niagara, Onondaga, and Monroe.

entertainment, to retail sales. Moreover, Plaintiffs would be attempting to prove the presence of the COVID-19 virus at some or all of those various locations and in these various communities. Consolidation would do nothing to ease the burden on the Court or the parties with respect to these issues; if anything, it would cause further delay and confusion.

**III.     The Existence of Similar Causes of Action Does Not Justify Consolidation.**

Plaintiffs argue that these cases involve "duplicate claims" for breach of contract and declaratory judgment. (Mem. in Supp., *Troy Stacy* ECF No. 29, 7). But cases are duplicative only "if the issues 'have such an identity that a determination in one action leaves little or nothing to be determined in the other.'" *De Angelis v. Nat'l Enter. Grp., LLC*, 2019 WL 1024954, at *4 (S.D. Ohio Mar. 4, 2019) (quoting *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997)). Here, a determination of the many individualized issues outlined above will not be determinative case to case. Thus, how state how state and local governmental closure orders affected a dental practice in West Virginia will not determine anything about how separate state and local government closure orders affected a jewelry store in Massachusetts. Nor is there any overlap between determinations as to whether and to what extent the COVID-19 virus was present at Plaintiffs' various business locations, or whether—even if present—the virus caused any direct physical loss to those properties. Such matters would likely be the subject of complex, expert-intensive testimony unique to the specific facts of each property and each Plaintiff.

Plaintiffs' motion remarks in conclusory fashion that "[c]ourts across the country . . . regularly consolidate cases involving insurance disputes arising out of the same underlying facts." (Mem. in Supp., *Troy Stacy* ECF No. 29, 6.). But the analysis does not end with this sound bite. Plaintiff points to cases where the consolidated cases arose out of the same underlying factual incident. In *Earwood v. Essex Ins. Co.*, the plaintiff moved to consolidate "two separately filed yet

7

inextricably intertwined cases" that arose from a boating accident where the plaintiff's wife died. 2016 WL 9000041, at *1 (N.D. Ga. Oct. 12, 2016). In *Owners Ins. Co. v. Dorsey*, plaintiffs sought to consolidate two cases "aris[ing] out of a home construction project" gone wrong to repair improperly compacted material. 2015 WL 13203448, at *1 (S.D. Ill. July 23, 2015).

In contrast, *Troy Stacy*, *Swearingen*, and *Reeds Jewelers* do not arise out of a singular incident confined to a specific time or location. Rather, these cases possess only the superficial factual commonality that the Plaintiffs are alleging losses suffered as a result of the COVID-19 pandemic and related government orders. (Mem. in Supp., *Troy Stacy* ECF No. 29, 6-7.) A pandemic is far more similar to a natural disaster. While there may be a large number of businesses affected by the disaster, how each business was affected differs.

As one court explained in the context of insureds seeking coverage after a hurricane, "[e]ach case necessarily involves a different property, different insureds, different witnesses, different proofs of loss, and different damages." *In re Florida Puerto Rico and U.S. Virgin Islands 2016 and 2017 Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d 1367, 1368 (MDL 2018) (denying centralization of pretrial proceedings). "The very nature of the cases ensures that unique issues concerning each plaintiff's loss, claim, investigation, and claim handling will predominate, and will overwhelm any efficiencies that centralization might achieve." *Id.* at 1368-69.

While all the Plaintiffs here are claiming insurance coverage from losses sustained during the COVID-19 pandemic, each of their cases involve different properties, different witnesses, different proofs of loss, and different economic losses. Again, there is no benefit to consolidating these cases now, with motions to dismiss pending, given the likelihood that these individualized issues would dominate the remaining proceedings should Plaintiffs' claims survive Cincinnati's motions to dismiss.

Finally, Plaintiffs cite to court decisions where motions to consolidate were not even opposed. *See RLI Ins. Co. v. Fifth Third Bancorp.*, 2015 WL 13021894, at *2 (S.D. Ohio Feb. 18, 2015) (approving motion to consolidate for purposes of discovery because "[a]ll parties apparently agree that consolidation is appropriate at least for discovery" and denied the motion to consolidate as to trial); *K.R. Enterprises, Inc. v. Ohio Security Ins. Co.*, 2019 WL 8723171, at *1 (S.D. W. Va. Feb. 1, 2019) (approving unopposed motion to consolidate). These cases are, of course, of no import here because Cincinnati vigorously opposes consolidation.

**III.    The Existence of Similar Legal Theories Does Not Justify Consolidation.**

For the same reasons discussed above, the fact that the Plaintiffs are asserting "similar legal theories is not sufficient to warrant consolidation," because "those theories rest upon disparate factual allegations giving rise to the claims in each action." *U.S. ex rel. Boise*, 2014 WL 6676629, at *2 (E.D. Pa. Nov. 25, 2014). *See also VAL Floors v. 1419 Tower, LP*, 2009 WL 1977840, at *3 (E.D. Pa. 2009) (denying motion to consolidate despite the cases "turn[ing] on similar questions of contractual interpretation under Pennsylvania law"). And even where "there are many common questions of law and fact between the two cases," consolidation is "inappropriate" where the differences are significant. *Easterday v. Federated Mut. Ins. Co.*, No. CIV.A. 14-1415, 2015 WL 1312684, at *5 (E.D. Pa. Mar. 24, 2015). As described above, that is absolutely the case here.

**IV.    Plaintiffs Failed to Show Judicial Efficiency Favors Consolidation.**

Troy Stacy argues that "cost effectiveness and judicial efficiency favor consolidation" because the cases are in similar stages of litigation. (Mem. in Supp., *Troy Stacy* ECF No. 29, 8.) But all three cases are already pending before the same judge. And it is well-established that merely "[b]ecause the [cases seeking consolidation] are pending before the same judge, they need not be consolidated to proceed in an efficient manner. As this Court has found before, '[t]he Court can .

9

. . . coordinate discovery even without consolidation.'" *De Angelis*, 2019 WL 1024954, at *6 (quoting *Roxane Labs., Inc. v. Abbott Labs.*, 2013 WL 5217571, at *3 (S.D. Ohio Sept. 16, 2013)). Any efficiencies to be gained from consolidation at this point in the case can be fully realized through informal coordination. As Troy Stacy points out, the cases are already procedurally aligned, with motions to dismiss pending (two of which are fully briefed and ripe for decisions). To the extent there are additional efficiencies to be found through coordination of briefing schedules or, if needed, discovery, the Court and the parties can easily accomplish that here without consolidation.

Plaintiffs' concern about "potential inconsistent rulings" is also unwarranted because all three cases are presiding before the same judicial officer. "These cases pending before the same judicial officers also minimizes the risk of inconsistent results and lessens the burden on the Court. Therefore . . . the efficiency interests in consolidation are low." *Id.*

Indeed, "if the savings to the judicial system are slight, the risk of prejudice to a party must be viewed with even greater scrutiny." *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993). As discussed, the number of individual factual issues coupled with the large number of pandemic-affected businesses in the potential class makes consolidating these cases even more confusing to the jury. Where efficiency interests are low and risks for confusion are high, consolidation is inappropriate. That is the case here.

## CONCLUSION

For all of these reasons, Troy Stacy's Motion for Consolidation (*Troy Stacy* ECF No. 28) should be denied.

Dated: November 5, 2020

Respectfully submitted by:

**DEFENDANTS, THE CINCINNATI INSURANCE COMPANY, THE CINCINNATI CASUALTY COMPANY, AND THE CINCINNATI INDEMNITY COMPANY**

By its Counsel:

*s/ Michael K. Farrell*
Michael K. Farrell (Ohio Bar No. 0040941)
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Phone 216-621-0200
Fax 216-696-0740
mfarrell@bakerlaw.com
Rodger L. Eckelberry (Ohio Bar No. 0071207)
BAKER & HOSTETLER LLP
200 S. Civic Center Dr., Suite 1200
Columbus, OH 43215-4260
Telephone: 614.228.1541
Facsimile: 614.462.2616
reckelberry@bakerlaw.com

Daniel G. Litchfield (*application for admission pending*)
Laurence Tooth (*admitted pro hac vice pending*)
303 West Madison Street
Suite 300
Chicago, IL 60606
T: 312.781.6669 | F: 312.781.6630
Litchfield@LitchfieldCavo.com
Tooth@LitchfieldCavo.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed electronically on November 5, 2020. Service of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the system's email filing confirmation.

*/s/ Michael K. Farrell*
Attorney for Defendants